# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DESKTOP METAL, INC., | ) | |
| *Plaintiff and Counterclaim Defendant,* | ) | |
| v. | ) | **Civil Action No. 1:18-CV-10524-WGY** |
| MARKFORGED, INC. AND MATIU PARANGI, | ) | |
| *Defendants and Counterclaim Plaintiff (Markforged, Inc.),* | ) | **Jury Trial Demanded** |
| v. | ) | |
| RICARDO FULOP, JONAH MYERBERG, BOSTON IMPACT LLC, and AMY BUNTEL, | ) | |
| *Third-Party Defendants.* | ) | |

## DEFENDANT MARKFORGED, INC.'S ANSWER, AFFIRMATIVE AND OTHER DEFENSES, AND COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Defendant Markforged, Inc. ("Markforged") hereby answers the Complaint of Desktop Metal, Inc. ("Desktop Metal"). Except as specifically admitted below, Markforged denies the allegations of the Complaint. To the extent that the opening paragraph or any of the headings of the Complaint require a response, Markforged denies such allegations.

## NATURE OF THE ACTION

1. Markforged denies that Desktop Metal has asserted any valid claims to protect any valid intellectual property, trade secrets, and/or other proprietary information. Markforged admits that Desktop Metal is based in Burlington, Massachusetts. Markforged is without knowledge or

information to form a belief as to the truth of the remaining allegations of paragraph 1 and therefore denies the allegations.

## PARTIES

2.    Admitted.

3.    Admitted.

4.    Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 4 and therefore denies the allegations.

## JURISDICTION AND VENUE

5.    Paragraph 5 states a legal conclusion to which no response is required.

6.    Paragraph 6 states a legal conclusion to which no response is required.

7.    Paragraph 7 states a legal conclusion to which no response is required.  To the extent a response is required, paragraph 7 is directed not to Markforged but to another  defendant, and Markforged therefore is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations.

8.    Paragraph 8 states a legal conclusion to which no response is required.  To the extent a response is required and to the extent paragraph 8 is directed to Markforged, Markforged admits that it is a resident of Massachusetts, and has a regular and established place of business in Massachusetts.  Markforged will not contest venue in this judicial district for purposes of this action only.

## PATENTS-IN-SUIT

9.    Markforged denies the allegations of paragraph 9, and specifically denies that the '118 patent was legally issued to Desktop Metal, except that Markforged admits that, (a) on its face, the issue date of the '118 patent is November 14, 2017; (b) on its face, the title of the '118

patent is "Fabricating Multi-Part Assemblies"; and (c) a purported copy of the '118 patent is attached to the Complaint as Exhibit 1.

10.     Markforged denies the allegations of paragraph 10, and specifically denies that the '839 patent was legally issued to Desktop Metal, Inc., except that Markforged admits that, (a) on its face, the issue date of the '839 patent is December 5, 2017; (b) on its face, the title of the '839 patent is "Fabricating an Interface Layer for Removable Support"; and (c) a purported copy of the '839 patent is attached to the Complaint as Exhibit 2.

11.     The '118 and '839 patents are collectively referred to herein as the "patents-in-suit" or the Asserted Patents.

## DESKTOP METAL'S HISTORY AND INTERACTION WITH MARKFORGED

12.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 12 and therefore denies the allegations.

13.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 13 and therefore denies the allegations.

14.     Markforged denies that "in the sprint of 2015, Mr. Fulop began the process of winding up his activities at North Bridge." Markforged is without knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 14 and therefore denies the allegations.

15.     Denied.

16.     With respect to the first sentence of paragraph 16, Markforged is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations. With respect to the second and third sentences of paragraph 16, denied.

17.     Markforged denies that the letter referenced in paragraph 17 "was intended to interfere with the financing of Desktop Metal." Markforged is without knowledge or information

- 3 -

to form a belief as to the truth of the remaining allegations of paragraph 17 and therefore denies the allegations.

18. Denied.

19. Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 19 and therefore denies the allegations.

20. Denied, except that Markforged admits that it announced its Metal X printer for 3D printing metal in January 2017 at CES 2017.

21. Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 21 and therefore denies the allegations.

22. Markforged denies that the patents-in-suit are valid and denies that they were legally issued. Markforged is without knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 22 and therefore denies the allegations, except that Markforged admits that the patents-in-suit purport, on their faces, to have issued in November and December 2017.

23. The Exhibits and Markforged website speak for themselves and are the best evidence of the language contained therein.

24. The Markforged webinar speaks for itself and is the best evidence of the language contained therein.

25. Denied.

## COUNT I
### (PURPORTING TO ALLEGE INFRINGEMENT OF '839 PATENT)
*(Markforged)*

26. Markforged re-alleges and incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.

27. Denied.

28.     Denied.

29.     Denied, except that Markforged admits that the image purports to be the same or similar to an image that appears in Exhibit 3, which speaks for itself.

30.     Denied, except that Markforged admits that the image purports to be a part of a webinar from the Markforged website, which speaks for itself.

31.     Denied, except that Markforged admits that the image purports to be the same or similar to an image that appears in Exhibit 3, which speaks for itself.

32.     Denied, except that Markforged admits that the image purports to be a part of a webinar from the Markforged website, which speaks for itself.

33.     Denied, except that Markforged admits that the some (but not all) of the quoted language appears in Exhibits 3 and 4, which speak for themselves.

34.     Denied.

35.     Denied, except that Markforged admits that it sells the Metal X print system and that its website contains certain of the quoted language.  Markforged's website speaks for itself.

36.     Denied, except that Markforged admits that it sells the Metal X print system.

37.     Denied.

38.     Paragraph 38 states a legal conclusion to which no response is required.  To the extent a response is required, denied.

39.     Denied.

## COUNT II
### (PURPORTING TO ALLEGE INFRINGEMENT OF '118 PATENT)
*(Markforged)*

40.     Markforged re-alleges and incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.

41.     Denied.

42.     Denied.

43.     Denied, except that Markforged admits that the image purports to be a part of a webinar from the Markforged website, which speaks for itself.

44.     Denied, except that Markforged admits that the image purports to be the same or similar to an image that appears in Exhibit 3, which speaks for itself.

45.     Denied, except that Markforged admits that the image purports to be the same or similar to an image that appears in Exhibit 3, the quoted language appears in Exhibit 3, and Exhibit 3 speaks for itself.

46.     Denied, except that Markforged admits that the image purports to be the same or similar to an image that appears in Exhibit 3, which speaks for itself.

47.     Denied, except that Markforged admits that the some (but not all) of the quoted language appears in Exhibits 3 and 4, which speak for themselves.

48.     Denied.

49.     Denied, except that Markforged admits that it sells the Metal X print system and that its website contains certain of the quoted language.  Markforged's website speaks for itself.

50.     Denied, except that Markforged admits that it sells the Metal X print system.

51.     Denied.

52.     Paragraph 52 states a legal conclusion to which no response is required.  To the extent a response is required, denied.

53.     Denied.

**DEFENDANTS' ACTS OF TRADE SECRET MISAPPROPRIATION, UNFAIR AND
DECEPTIVE BUSINESS PRACTICES AND BREACH OF CONTRACT**

54.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 54 and therefore denies the allegations.

55.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 55 and therefore denies the allegations.

56.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 56 and therefore denies the allegations.

57.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 57 and therefore denies the allegations.

58.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 58 and therefore denies the allegations.

59.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 59 and therefore denies the allegations.

60.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 60 and therefore denies the allegations.

61.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 61 and therefore denies the allegations.

62.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 62 and therefore denies the allegations.

63.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 63 and therefore denies the allegations.

64.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 64 and therefore denies the allegations.

65.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 65 and therefore denies the allegations, except that Markforged admits it announced its Metal X printer for 3D printing metal in January 2017 at CES 2017.

66.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 66 and therefore denies the allegations.

67.     Denied.

68.     Denied.

## COUNT III
## (PURPORTING TO ALLEGE VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016 (18 U.S.C. § 1836))
*(Mr. Parangi, Markforged)*

69.     Markforged re-alleges and incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.

70.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 70 and therefore denies the allegations.

71.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 71 and therefore denies the allegations.

72.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 72 and therefore denies the allegations.

73.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 73 and therefore denies the allegations.

74.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 74 and therefore denies the allegations.

75.     Markforged denies that it ever acquired or received Desktop Metal's trade secrets. Markforged is without knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 75 and therefore denies the allegations.

76.     Denied.

77.     Paragraph 77 states a legal conclusion to which no response is required.  To the extent a response is required and to the extent paragraph 77 is directed to Markforged, Markforged denies the allegations.  To the extent paragraph 77 is directed to another defendant, Markforged is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations.

78.     Paragraph 78 states a legal conclusion to which no response is required.  To the extent a response is required and to the extent paragraph 78 is directed to Markforged, Markforged denies the allegations.  To the extent paragraph 78 is directed to another defendant, Markforged is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations.

## COUNT IV
### (PURPORTING TO ALLEGE TRADE SECRET MISAPPROPRIATION
### (M.G.L. C. 93, § 42))
*(Mr. Parangi, Markforged)*

79.     Markforged re-alleges and incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.

80.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 80 and therefore denies the allegations.

81.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 81 and therefore denies the allegations.

82.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 82 and therefore denies the allegations.

83.     Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 83 and therefore denies the allegations.

84.     Markforged denies that it ever acquired or received Desktop Metal's trade secrets. Markforged is without knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 84 and therefore denies the allegations.

85.     Denied.

86.     Paragraph 86 states a legal conclusion to which no response is required.  To the extent a response is required, denied.

## COUNT V
## (PURPORTING TO ALLEGE UNFAIR OR DECEPTIVE TRADE PRACTICES (M.G.L. C. 93A, § 11))
### *(Mr. Parangi, Markforged)*

87.     Markforged re-alleges and incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.

88.     Paragraph 88 states a legal conclusion to which no response is required.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 88 and therefore denies the allegations.

89.     Paragraph 89 states a legal conclusion to which no response is required.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 89 and therefore denies the allegations.

90.     Paragraph 90 states a legal conclusion to which no response is required.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 90 and therefore denies the allegations.

91.     To the extent paragraph 91 is directed to Markforged, Markforged denies the remaining allegations.  To the extent paragraph 91 is directed to another defendant, Markforged is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations.

92.     Denied.

93.     Paragraph 93 states a legal conclusion to which no response is required.  To the extent a response is required and to the extent paragraph 93 is directed to Markforged, Markforged denies the allegations.  To the extent paragraph 93 is directed to another defendant, Markforged is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations.

94.     Paragraph 94 states a legal conclusion to which no response is required.  To the extent a response is required and to the extent paragraph 94 is directed to Markforged, Markforged denies the allegations.  To the extent paragraph 94 is directed to another defendant, Markforged is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations.

95.     Paragraph 95 states a legal conclusion to which no response is required.  To the extent a response is required and to the extent paragraph 95 is directed to Markforged,  Markforged denies the allegations.  To the extent paragraph 95 is directed to another defendant, Markforged is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations.

## COUNT VI
## (PURPORTING TO ALLEGE BREACH OF CONTRACT (NDA))
### *(Mr. Parangi)*

96.     Markforged re-alleges and incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.

97.     Paragraphs 97 through 106 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 97 and therefore denies the allegations.

98.     Paragraphs 97 through 106 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 98 and therefore denies the allegations.

99.     Paragraphs 97 through 106 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 99 and therefore denies the allegations.

100.     Paragraphs 97 through 106 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 100 and therefore denies the allegations.

101.     Paragraphs 97 through 106 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 101 and therefore denies the allegations.

102.    Paragraphs 97 through 106 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  Paragraph 102 also states a legal conclusion to which no response is required.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 102 and therefore denies the allegations.

103.    Paragraphs 97 through 106 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  Paragraph 103 also states a legal conclusion to which no response is required.  To the extent a response is required, Markforged denies that it ever acquired or received Desktop Metal's "Proprietary Information."  Markforged is without knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 103 and therefore denies the allegations.

104.    Paragraphs 97 through 106 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 104 and therefore denies the allegations.

105.    Paragraphs 97 through 106 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 105 and therefore denies the allegations.

106.    Paragraphs 97 through 106 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  Paragraph 106 also states a legal conclusion to which no response is required.  To the extent a response is required, Markforged

is without knowledge or information to form a belief as to the truth of the allegations of paragraph 106 and therefore denies the allegations.

## COUNT VII
## (PURPORTING TO ALLEGE BREACH OF CONTRACT (NON-COMPETITION AND NON-SOLICITATION AGREEMENT))
### *(Mr. Parangi)*

107.    Markforged re-alleges and incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.

108.    Paragraphs 108 through 114 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  Paragraph 108 also states a legal conclusion to which no response is required.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 108 and therefore denies the allegations.

109.    Paragraphs 108 through 114 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 109 and therefore denies the allegations.

110.    Paragraphs 108 through 114 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 110 and therefore denies the allegations.

111.    Paragraphs 108 through 114 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  Paragraph 111 also states a legal conclusion to which no response is required.  To the extent a response is required and to the extent paragraph 111 is directed to Markforged, denied.  To the extent paragraph 111 is directed

to another defendant, Markforged is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations.

112.     Paragraphs 108 through 114 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 112 and therefore denies the allegations.

113.     Paragraphs 108 through 114 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 113 and therefore denies the allegations.

114.     Paragraphs 108 through 114 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  Paragraph 114 also states a legal conclusion to which no response is required.  To the extent a response is required, Markforged is without knowledge or information to form a belief as to the truth of the allegations of paragraph 114 and therefore denies the allegations.

### COUNT VIII
### (PURPORTING TO ALLEGE BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)
*(Mr. Parangi)*

115.     Markforged re-alleges and incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.

116.     Paragraphs 116 through 118 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  Paragraph 116 also states a legal conclusion to which no response is required.  To the extent a response is required, Markforged

is without knowledge or information to form a belief as to the truth of the allegations of paragraph 116 and therefore denies the allegations.

117.     Paragraphs 116 through 118 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  Paragraph 117 also states a legal conclusion to which no response is required.  To the extent a response is required and to the extent paragraph 117 is directed to Markforged, denied.  To the extent paragraph 117 is directed to another defendant, Markforged is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations.

118.     Paragraphs 116 through 118 purport to state a claim against another defendant, and not against Markforged, and do not, therefore, require a response.  Paragraph 118 also states a legal conclusion to which no response is required.  To the extent a response is required and to the extent paragraph 118 is directed to Markforged, denied.  To the extent paragraph 118 is directed to another defendant, Markforged is without knowledge or information to form a belief as to the truth of the allegations and therefore denies the allegations.

## PRAYER FOR RELIEF

Markforged denies that Desktop Metal is entitled to the judgment and relief requested in the Prayer for Relief set forth in the Complaint.

## REQUEST FOR JURY TRIAL

Markforged demands a trial by jury on all issues so triable.

## AFFIRMATIVE & OTHER DEFENSES

Markforged hereby asserts the following affirmative and other defenses without undertaking or otherwise shifting any applicable burdens of proof.  Markforged incorporates the facts and allegations in its Answer, Affirmative Defenses and Other Defenses, and Counterclaims and Third-Party Complaint into each of its defenses.  Markforged reserves the right to assert additional defenses and/or amend these defenses, as warranted by facts learned through investigation and discovery.

### FIRST DEFENSE

Desktop Metal's claims are barred in whole or in part because Markforged has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the Asserted Patents, either literally or under the doctrine of equivalents, and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

### SECOND DEFENSE

Desktop Metal's claims are barred in whole or in part because one or more claims of the Asserted Patents are invalid for failure to comply with one or more of the requirements of the Patent Laws of the United States, 35 U.S.C. §§ 100, et seq., including, but not limited to, §§ 101, 102, 103, and/or 112.  The invalidity of certain asserted claims is demonstrated, for example, by at least prior art references US 2015/0197862 A1 and US 2015/0306664 A1.

### THIRD DEFENSE

Desktop Metal's claims are barred in whole or in part by reason of estoppel.

Desktop Metal is estopped from construing any valid claim of the Asserted Patents to be infringed or to have been infringed, either literally or by application of the doctrine of equivalents,

by any product made, used, imported, sold, or offered for sale by Markforged in view of prior art and/or because of admissions, representations, and/or statements made to the Patent Office during prosecution of any application leading to the issuance of the Asserted Patents or any related patent, because of disclosure or language in the specifications of the Asserted Patents, and/or because of limitations in the claims of the Asserted Patents.

## FOURTH DEFENSE

Desktop Metal's claims are barred in whole or in part because Markforged has a license to the Asserted Patents.  In or about January 2016, a Desktop Metal employee ordered a Markforged Mark One 3D printer to her home at the apparent direction of Desktop Metal, Mr. Fulop and Mr. Myerberg.  *See* Markforged's Countercl. & Third-Party Compl. ¶¶ 178-183.  On information and belief, Desktop Metal used the Markforged printer to develop the inventions of the Asserted Patents, which are derived from and/or improve upon the intellectual property of Markforged. Under the Terms of Service and Software End User License Agreement, to which Desktop Metal and its employee agreed at the time of the sale, Desktop Metal has granted to Markforged a fully paid-up, royalty-free, worldwide, non-exclusive, irrevocable, transferable license in, under, and to the Asserted Patents.

## FIFTH DEFENSE

The Asserted Patents are unenforceable due to inequitable conduct by the inventors, prosecuting attorneys, or both, in failing to discharge their duty of candor to the United States Patent and Trademark Office ("USPTO").  On information and belief, Desktop Metal's patent prosecution counsel, the inventors of the Asserted Patents, or both, knowingly omitted or made affirmative misrepresentations of material information to the USPTO with a specific intent to deceive the USPTO.

For example, Desktop Metal, its prosecuting attorneys, or the inventors of the Asserted Patents did not disclose material prior art references such as US 2015/0197862 A1 and US 2015/0306664 A1 in the course of prosecuting the '839 patent.  The applicant, Desktop Metal, disclosed these references in the '118 patent prosecution here, showing that Desktop Metal knew of these two references.  In particular, at least the prosecuting attorneys of the '839 patent knew of these two references.  Moreover, Desktop Metal's disclosure of the references in the course of prosecution of the '118 patent indicates that Desktop Metal, and its prosecuting attorneys, knew the two references were material.  In light of Desktop Metal's conspicuous failure to disclose these references in the course of the '839 patent prosecution here, on information and belief, Desktop Metal deliberately withheld these references in the course of prosecuting the '839 patent.

In addition, at least two of the inventors of the Asserted Patents, Ric Fulop and Jonah Myerberg, had extensive knowledge of Markforged commercially available 3D-printing products that constituted prior art to both of the patents-in-suit.  Mr. Fulop and Mr. Myerberg failed to disclose Markforged products as prior art.  Mr. Fulop and Mr. Myerberg worked directly with Markforged's printers and they thus knew of these devices, which were prior art fused filament fabrication (or "FFF") systems for the fabrication of high-strength parts.  According to the Asserted Patents, the claimed inventions relate to the use of FFF systems, like Markforged's systems, for the manufacture of high-strength parts.  On information and belief, Mr. Fulop and Mr. Myerberg knew the Markforged prior art was material because such art would render one or more claims of the Asserted Patents unpatentable.  On information and belief, Mr. Fulop and Mr. Myerberg deliberately withheld information on Markforged prior art products.

**SIXTH DEFENSE**

Desktop Metal is not entitled to injunctive relief or enhanced damages because it failed to plead the required elements for such relief, and because Desktop Metal has an adequate remedy at law for any alleged injury.  Markforged's actions in defending this action do not give rise to a finding of exceptional case under 35 U.S.C. § 285 and do not merit a finding of enhanced damages pursuant to M.G.L. c. 93A, § 11 or M.G.L. c. 93, § 42 or 18 U.S.C. § 1836.

**SEVENTH DEFENSE**

Desktop Metal's claims are barred in whole or in part by 35 U.S.C. §§ 286, 287 or 288.

**EIGHTH DEFENSE**

One or more of Desktop Metal's claims are barred by the doctrine of unclean hands.  It is a well-settled equitable doctrine that one who comes into equity must come with clean hands.  As set forth herein, Desktop Metal has acted in bad faith with respect to the matters at issue in this case.  As just one example, Desktop Metal acquired the information it used to file and obtain the Asserted Patents as the result of a series of unlawful and deceptive acts.  *See generally,* Markforged's Countercl. & Third-Party Compl.  Therefore, Desktop Metal's requests for equitable relief should be denied.

**NINTH DEFENSE**

Desktop Metal's claims are barred because it has not suffered any damage as a result of the allegations in the Complaint.  In the alternative, if Desktop Metal has been harmed as alleged (and denied), the harm was caused in whole or in part by Desktop Metal's own actions or inactions and Desktop Metal, therefore, is not entitled to relief.

**TENTH DEFENSE**

Desktop Metal's claims are barred by the doctrines of laches and estoppel.

**ELEVENTH DEFENSE**

Desktop Metal's claims are barred because its claims are frivolous, brought in bad faith and/or are brought for an improper purpose and/or were brought without reasonable inquiry.

**TWELFTH DEFENSE**

Desktop Metal's claims are barred in whole or in part because it is unable to establish that Markforged caused any of the harm for which it is seeking redress.

**THIRTEENTH DEFENSE**

Desktop Metal may not recover on its claim, in whole or in part, because it has waived any rights or claims it may have against Markforged.

**FOURTEENTH DEFENSE**

Desktop Metal may not recover on its claim, in whole or in part, because it failed to mitigate any damages claims it may have against Markforged.

**FIFTEENTH DEFENSE**

Desktop Metal's Complaint fails to state a claim upon which relief can be granted.

**SIXTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, under the doctrine of *in pari delicto*.

**SEVENTEENTH DEFENSE**

Plaintiff's claims alleging misappropriation of trade secrets are barred, in whole or in part, because the information allegedly misappropriated was readily ascertainable by proper means.

**EIGHTEENTH DEFENSE**

Plaintiff's claims alleging misappropriation of trade secrets are barred, in whole or in part, because Plaintiff did not take proper efforts to keep the information secret.

## TWENTIETH DEFENSE

Plaintiff's claims against Markforged alleging misappropriation of trade secrets and unfair competition are barred, in whole or in part, because Markforged did not obtain any purported trade secrets or confidential information by improper means.

## TWENTY-FIRST DEFENSE

Plaintiff's claims against Markforged alleging misappropriation of trade secrets and unfair competition are barred, in whole or in part, because Markforged has not used and is not using any of Plaintiffs' alleged trade secrets or confidential information.

## TWENTY-SECOND DEFENSE

Plaintiff's claims alleging misappropriation of trade secrets are barred, in whole or in part, by Markforged's independent development.

## TWENTY-THIRD DEFENSE

Plaintiff's claims alleging misappropriation of trade secrets are barred, in whole or in part, because the alleged trade secrets or confidential information lack independent economic value.

## TWENTY-FOURTH DEFENSE

Plaintiff's claims alleging misappropriation of trade secrets are barred, in whole or in part, because Plaintiff's alleged trade secrets have not been in continuous use.

## TWENTY-FIFTH DEFENSE

Plaintiffs' claims alleging misappropriation of trade secrets and unfair competition are barred, in whole or in part, to the extent they are preempted by federal law.

## RESERVATION OF RIGHTS

Markforged reserves the right to add defenses or amend the existing defenses.

## COUNTERCLAIMS & THIRD-PARTY COMPLAINT

Defendant/Counterclaim Plaintiff Markforged, Inc. ("Markforged" or the "Company"), by and through its undersigned attorneys, Quinn Emanuel Urquhart & Sullivan LLP, for its counterclaims against Plaintiff/Counterclaim Defendant, Desktop Metal, Inc. ("Desktop Metal") and claims against Third-Party Defendants Ricardo Fulop, Jonah Myerberg, Boston Impact LLC ("Boston Impact"), and Amy Buntel, hereby state as follows.

## NATURE OF THE ACTION

119.    Desktop Metal has had the temerity to sue Markforged even though it is the product of the unscrupulous and deceptive conduct of Ric Fulop and his long-time friend and business partner Jonah Myerberg.  Fulop joined Markforged at virtually the beginning, providing key financing from his firm and becoming a Director in June 2013.  But Fulop made himself into more than just a Director:  he infiltrated the very heart of Markforged, and maneuvered his way into a position as a trusted advisor and confidant of Greg Mark, Markforged's Founder and CEO.  Fulop accomplished this by spending innumerable hours at Markforged's premises, traveling with Markforged executives to visit other potential investors and customers, flying Mr. Mark on his private jet, discussing and advising on confidential business plans and strategies with Mr. Mark and other Board members, and generally building himself into Mr. Mark's right-hand man. However, unbeknownst to Markforged, Fulop was actually stealing Markforged's business strategies and know-how, to form his own competitive company—which he ultimately did—called Desktop Metal.  In the course of his Machiavellian conduct, Fulop "planted" a long-time friend and business partner, Myerberg, as a purported "beta tester" for Markforged, but whose real function was to learn the technical side of Markforged's business while Fulop was learning the

business side.  Fulop even took the name "Desktop Metal" from the original Markforged's business slogan.

120.    Fulop then caused Desktop Metal to "jump in front of" Markforged in a race to the patent office that he never disclosed to Markforged was even occurring.  He did the same with his theft of Markforged's confidential customer lists, business niche and plans, technical information, and financing opportunities—diverting them to his own company, all the while pretending to be a trusted Director and founding investor in Markforged.

121.    Indeed, once ensconced at Desktop Metal, Fulop continued to engage in unfair acts and conduct, taking key employees and prospects from Markforged, falsely disparaging Markforged in the marketplace as a manufacturer of cheap plastic 3D printers, and even causing Third-Party Defendant and employee of Desktop Metal, Amy Buntel, to engage in the ruse of purchasing a Markforged 3D printer and having it shipped to her home so that Fulop, Myerberg, and others at Desktop Metal could disassemble, analyze and use it in order to prepare their own patent applications based on Markforged's product and technology.

122.    Fulop breached his fiduciary duty to Markforged as a Director and founding investor through his firm, and he, his new company Desktop Metal, and his cohorts Myerberg and Buntel, engaged in acts and conduct in the Commonwealth of Massachusetts that are in flagrant violation of Chapter 93A.  That is why Markforged has now sued them by way of these claims.

## **PARTIES**

123.    Markforged is a Delaware corporation, with its corporate headquarters in Watertown, Massachusetts.

124.    Desktop Metal is a Delaware corporation, with a principal place of business in Burlington, Massachusetts.

125.    Third-Party Defendant Ricardo Fulop is a natural person who, on information and belief, resides at 38 Adams Street, Lexington, MA 02420.

126.    Third-Party Defendant Jonah Myerberg is a natural person who, on information and belief, resides at 98 Bedford Street, Lexington, MA 02420.

127.    Third-Party Defendant Boston Impact is a Massachusetts corporation, with a principal place of business in Lexington, Massachusetts.  Myerberg is the Owner and President of Boston Impact.

128.    Third-Party Defendant Amy Buntel is a natural person who, on information and belief, resides at 34 Highland Avenue, North Chelmsford, MA 01863.

## JURISDICTION & VENUE

129.    This is an action for trade secret misappropriation under the Defend Trade Secrets Act of  2016 (18 U.S.C. § 1836 *et seq.*), and state and common law claims for breach of fiduciary duty, tortious interference with contractual relations and prospective contractual relations, breach of contract, unjust enrichment, trade secret misappropriation, civil conspiracy, and unfair trade practices.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1367(a).

130.    This Court has personal jurisdiction over Desktop Metal.  Desktop Metal maintains its principal place of business in Massachusetts.  Furthermore, Desktop Metal transacts business in Massachusetts, has caused tortious injury to Markforged in Massachusetts, has an interest in using or possessing real property in Massachusetts, and contracts to supply services or things in Massachusetts.

131.    This Court has personal jurisdiction over Ric Fulop.  On information and belief, Ric Fulop resides in Massachusetts.  Furthermore, Fulop has transacted business with Markforged

and Desktop Metal in Massachusetts, has served as a founding investor and Director of Markforged and as the Founder and CEO of Desktop Metal in Massachusetts, has caused tortious injury to Markforged in Massachusetts, and on information and belief has an interest in using or possessing real property in Massachusetts.

132.    This Court has personal jurisdiction over Jonah Myerberg.  On information and belief, Jonah Myerberg resides in Massachusetts.  Furthermore, Myerberg has transacted business with Desktop Metal and Markforged in Massachusetts, has served as a Co-Founder and Chief Technology Officer of Desktop Metal in Massachusetts and as the Owner and President of Boston Impact in Massachusetts, has caused tortious injury to Markforged in Massachusetts, and on information and belief has an interest in using or possessing real property in Massachusetts.

133.    This Court has personal jurisdiction over Boston Impact.  Boston Impact maintains its principal place of business in Massachusetts.  Furthermore, Boston Impact transacts business in Massachusetts, has caused tortious injury to Markforged in Massachusetts, has an interest in using or possessing real property in Massachusetts, and contracts to supply services or things in Massachusetts.

134.    This Court has personal jurisdiction over Amy Buntel.  On information and belief, Amy Buntel resides in Massachusetts.  Furthermore, Buntel has transacted business with Markforged in Massachusetts, is an employee at Desktop Metal in Massachusetts, has breached a contract with Markforged in Massachusetts and subject to Massachusetts law, has caused tortious injury to Markforged in Massachusetts, and on information and belief has an interest in using or possessing real property in Massachusetts.

135.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).  Ric Fulop, Jonah Myerberg, and Amy Buntel are residents of Massachusetts, a substantial part of the

events giving rise to the claims alleged herein occurred in Massachusetts, Desktop Metal has a regular and established place of business in Massachusetts, and Boston Impact has a regular and established place of business in Massachusetts.

## FACTUAL ALLEGATIONS

### A.   Markforged's Founding

136.   Greg Mark is the CEO and Founder of Markforged.  He has a Bachelors and Masters in Aeronautics and Astronautics from MIT.  In 2013, Mr. Mark targeted the development of a new, breakthrough product in 3D printing—a high-strength desktop 3D printer that could print materials as strong as metal—and ultimately metal itself—based on composite technologies that would be small enough to fit on engineers' desktops, and available at an attractive price point that was accessible to small-to-medium-sized engineering firms and other similarly sized businesses.

137.   Mr. Mark's concept constituted a unique niche that nobody in the 3D printing industry had addressed in the marketplace.  "Industrial" quality printers—printing strong, durable, tough parts—were simply not accessible to smaller firms.  The marketplace was filled with very high end 3D printers that sold at price points of $1 million or more, and as such, were mainly accessible only to Fortune 500 companies.  At the other end of the spectrum were cheap, underperforming plastic 3D printers at price points of $5,000 or less, but which were not suitable for most engineering and manufacturing activities.  High-strength composite printers of the type Mr. Mark imagined and developed did not exist at any price point.

138.   In pursuit of his vision, Mr. Mark founded in his kitchen what was soon to become a new company, named Markforged—the first part of the name coming from Mr. Mark himself, and the word "forged" indicating the printing of product using high strength materials.

139.   Mr. Mark then began to search for investor funding in order to develop the Markforged niche.  In early 2013, Mr. Mark met the Third-Party Defendant, Ric Fulop.  At the time, Fulop was a General Partner of North Bridge Venture Partners ("North Bridge"), a large venture capital firm located in Massachusetts, known for investing in early stage or "seed" companies.  In discussions centering around a potential investment, Fulop became quite interested in the Markforged niche concept.  Fulop represented to Mr. Mark that although he did not have any experience in or technical knowledge about 3D printing, he had over fifteen years of hands-on experience in successfully funding ventures from "seed" to IPO.  Because of his professed belief in the Markforged business plan, Fulop caused his firm North Bridge to become a founding investor in Markforged.  Fulop joined the Markforged Board of Directors in June 2013.

140.   Shortly thereafter, Fulop introduced Markforged to Antonio Rodriguez, a General Partner of Matrix Partners ("Matrix"), another large venture capital firm in Cambridge, MA, also specializing in "seed" ventures.   Unlike Fulop, Mr. Rodriguez brought to the table specific experience in both the 2D and 3D printing space, and he too was interested in the novel niche concept that Mr. Mark was in the process of developing.

141.   After conducting due diligence, Fulop and Rodriguez, through North Bridge and Matrix, respectively, became the founding investors of Markforged, providing equal amounts of seed funding.  Mr. Rodriguez joined Mr. Mark and Fulop on Markforged's Board of Directors in June 2013.

**B.**   **Markforged's Product Development**

142.   After substantial research, testing, and analysis, in or about January 2014, Markforged introduced its revolutionary "Mark One" 3D printer to the market.  The Mark One is a composite 3D printer made in Mr. Mark's vision: a printer using high-strength materials as strong

as metal at an accessible price point, achieving unparalleled strength, stiffness and durability, by using composite parts (*i.e.*, carbon fiber) that were as strong as metal.  Markforged marketed the Mark One with the descriptive slogan:

> "*Parts as strong as metal*
> *Printed at your desktop*"

143.    At the time that Markforged released the Mark One, Fulop publicly proclaimed the new 3D printer as a "big breakthrough."[1]  And Fulop was right: nobody else in the market had a high strength, durable printer that could create parts as strong as metal within the same—or even similar—niche that Markforged had targeted from the beginning.

144.    In keeping with Mr. Mark's vision for Markforged, the Company continued to work on the development of composite build technology in its 3D print system.  Accordingly, in or about February 2016, Markforged released its second-generation 3D printer to the market, named the "Mark Two," which offered more detailed 3D printing capabilities, again using high strength composite materials as strong as metal, and selling at an accessible price point.  In June 2016, Markforged introduced Onyx, a material that printed a composite of embedded micro-carbon pieces in plastic.

145.    In January 2017, Markforged introduced its newest composite build 3D printer, the "Metal X."  As its name suggests, in the same way the Mark One and Two machines printed carbon fiber and micro-carbon embedded in plastic, the next generation Metal X printed micro-metal embedded in plastic.  Resulting parts—printed with key print head components like those used for the Mark One and Two—were sinterable into fully functional 3D metal parts.  Indeed, the Metal

---

[1]  S. Kirsner, *With $1.1 million in bank, Markforged prepares to deliver first-of-its-kind 3D printer*, THE BOSTON GLOBE | BETA BOSTON (Mar. 7, 2014), *available at* http://www.betaboston.com/news/2014/03/07/with-1-1-million-in-funding-markforged-prepares-to-start-delivering-first-of-a-kind-3d-printer/.

X was the culmination and natural extension of Markforged's technology and business strategy: to develop and market a state of the art 3D metal printer that was high strength, durable, and able to fit on an engineer's desktop, and yet at an attractive and accessible price point.

**C.      Fulop Enjoyed Full and Unfettered Access to Markforged's Confidential and Proprietary Information as a Founding Investor and Director**

146.    Fulop was a Director at Markforged during the period June 2013 through September 2015.  Moreover, as a partner of North Bridge, he convinced that firm to become a founding investor in the Company.

147.    As a founding investor through his firm and one of only three members of Markforged's Board of Directors, Fulop was entrusted with full and unfettered access to Markforged's confidential and proprietary information.  Fulop arranged for Mr. Mark to move his operations out of his kitchen and into Fulop's office space at North Bridge in 2013, where he was regularly on site.  He continued to frequent Markforged's premises once they had space of their own.  Fulop took full advantage of that access, spending substantial amounts of time at the Company, where he fully familiarized himself with Markforged's activities, strategies and technologies.  Indeed, Fulop presented himself as a particularly interested and inquisitive investor and Director who was continually asking for detailed information about the Company's strategies, technologies, and plans for product development.  Markforged trusted Fulop and fully shared with him its business and financial plans and its strategies for product development, including its plans to expand upon the business niche it had already entered and was continuing to develop.

148.    Fulop also received Markforged's Board of Director presentation decks, which were replete with confidential information, including customer lists, channel distributors, suppliers, hiring strategies, technical know-how, financing rounds and financing schedules, investor and

potential investor names and identities, plans and timing for product development, and analyses of the strengths and weaknesses of new product development and the market.

149.    In his capacity as a director and partner of a founding investor, Fulop received specific confidential information relating to, among other things:

(a)    Markforged's customer lists and channel information;

(b)    Markforged's key accounts by industry;

(c)    Markforged's materials suppliers and rankings of those suppliers, including the pros and cons of each;

(d)    Markforged's channel resellers;

(e)    Markforged's assessment of contract manufacturers;

(f)    Markforged's key hiring strategy;

(g)    Markforged's strategy, timing, and target investors for its Series B fundraising; and

(h)    Markforged's confidential and proprietary technology, including Markforged's technical trade secrets, Markforged's non-published patent applications, and Markforged's future patent strategy.

150.    The Markforged Board of Director presentation decks Fulop received were labeled "©MARKFORGED, INC. STRICTLY PRIVATE AND CONFIDENTIAL," and were disseminated only to Markforged's Board members and certain key employees and counsel.  Fulop also sought and received insider information in connection with Markforged's business plans and strategies during confidential discussions with Mr. Mark and potential investors and business partners, as well as during closed Board meetings, on-site visits at Markforged with Mr. Mark and key engineers, and through regular email correspondence that contained confidential and proprietary information.

151.    Markforged maintained the confidentiality and secrecy of the aforementioned information by taking measures to guard the secrecy of the information and restrict the extent to

which the information was known outside the four walls of Markforged's business.  Markforged

protected this information by, among other things, limiting access to its offices, and by password

protecting its computers and networks.  None of the information was publicly available, and it

would not otherwise have been accessible to Fulop but for his positions as a founding investor

through North Bridge and a Director at Markforged.

152.    Fulop has attempted to justify his unfair and deceptive acts and conduct by claiming

(incorrectly) that the business at Desktop Metal is centered on metal printing, while Markforged

business is centered only on composite low-grade printing.  However, as Fulop well knows, at all

times material hereto, Markforged intended as part of its business strategy to expand into metal

printing (and it did)—an intention that was fully shared with Fulop when he was a Director and

founding investor in the Company.  Indeed, as Fulop also knows, Markforged filed patent

applications early on in connection with a 3D print system that included metals and ceramics.

Furthermore, Fulop and his new company Desktop Metal compete with Markforged, based on

Markforged's business niche, strategies and technologies, whether Markforged intended to expand

into metal printing or not (which it did).

**D.      Fulop Concealed that He Was Actively Engaged in Unfair and Deceptive Conduct
Towards Markforged at the Very Time He Was a Founding Investor and Director**

153.    At the same time that he was obtaining confidential and proprietary information

from Markforged about its business strategies and product development activities, Fulop was

actively—but surreptitiously—engaged in usurping Markforged's business to his own advantage.

Fulop's perfidy culminated in his incorporation of a new competitive enterprise named Desktop

Metal on August 25, 2015—while he was still a Markforged Director and a founding investor

through North Bridge.  Mr. Fulop stole the Markforged business roadmap of occupying and

promoting a unique niche in the marketplace for 3D printers, and also took Markforged's strategy

of developing next generation 3D metal printers.  Fulop even took the name of his new company, "Desktop Metal," from the original Markforged business slogan, as follows:

"*Parts as strong as **metal***
*Printed at your **desktop***"

154.    At the same time that Fulop was engaged in starting up a competitive company to Markforged, Fulop was in the process of leaving his partnership at North Bridge, too.  Accordingly, Fulop concealed his activities from both Markforged <u>and</u> North Bridge and waited for Desktop Metal's entry into the 3D marketplace until he left his firm.

155.    While a Director at Markforged, Fulop "jumped in front of" Markforged both in terms of filing for a patent and in approaching the financial investor community for financing of his new company. Using Markforged's business plans, insider information and know-how, Fulop apparently was able to obtain almost a third of a billion dollars in outside investments.  Fulop then began contacting Markforged's customers using the customer lists that Markforged had provided him during the time that he was a Markforged Director.

156.    Fulop now brazenly boasts on the website of his new company Desktop Metal about his unfair and deceptive conduct—during the same time that he was a Director and a principal founding investor in Markforged—stating: "In 2013 [I] began collaborating with world leading experts in material science, engineering and 3D printing . . . to form the basis for Desktop Metal's technology."[2]

---

[2]   Desktop Metal, "About Us," *available at* https://www.desktopmetal.com/company/about/ (last visited Apr. 20, 2018).

**E.      Fulop Secretly Planted a Long-Time Friend and Business Partner Named
Jonah Myerberg at Markforged to Obtain Markforged Technical Know-How**

157.    One of the important steps that Fulop took to surreptitiously obtain key technical know-how from Markforged was to introduce one of his long-time friends and business partners, Jonah Myerberg, to Markforged, and to secure a position for Myerberg as a "beta tester" where he would have access to Markforged's technical know-how and other proprietary information. Myerberg was Fulop's right-hand man at Fulop's prior endeavor, a company called A123 Systems, which had soared in value for a time but then crashed and burned, ending up in bankruptcy.

158.    On the basis of Fulop's recommendation and advice, Markforged retained Myerberg as a beta tester for its 3D printers in July 2014, through Myerberg's company Boston Impact.  Because Markforged would have to provide Myerberg with certain confidential and proprietary information in order for him to conduct the beta testing, Markforged caused Myerberg, through his company Boston Impact, to sign a Non-Disclosure Agreement (the "NDA").  Boston Impact was a signatory to the NDA, which Jonah signed on its behalf as President of Boston Impact.  The NDA required that Boston Impact, maintain in strict confidence all the confidential information he received from Markforged—including but not limited to product designs, roadmaps, techniques, schematics, and processes.[3]

159.    Myerberg was on site at Markforged multiple times in 2014, meeting with Mr. Mark and Markforged's other top engineers and product developers, purportedly in connection with his beta testing.  In truth, Myerberg had been planted at the Company by Fulop to familiarize himself with proprietary information so that Fulop and Myerberg could use the information in forming their new company.

---

[3]  Exhibit A, Markforged, Inc. Mutual Non-Disclosure Agreement (July 22, 2014), by and between Markforged, Inc. and Boston Impact LLC.

160.    In pursuit of that, Myerberg requested and received information relating to Markforged's specific technical know-how and processes that went beyond the scope of his role as a beta tester.  But Markforged trusted Myerberg and based on Fulop's assurances, Markforged provided Myerberg with substantial amounts of its confidential and proprietary information, including walking Myerberg through, in detail, the method and manner in which the Markforged 3D printers worked.

161.    In retrospect, Markforged now realizes that Myerberg was requesting a broad swath of confidential information because he was using it to assist Fulop in developing what became Desktop Metal.  Markforged's understanding has been confirmed by Myerberg's own public admission that he was working with Fulop as early as 2014 to develop a new company to enter the same niche space occupied by Markforged for printing 3D metal parts.[4]  Neither Fulop nor Myerberg disclosed to Markforged at any time their plans, which were designed to harm Markforged.

162.    Based in material part on the information that both he and Fulop obtained from Markforged, Myerberg became a Co-Founder and Chief Technology Officer of Desktop Metal in 2015.

163.    In addition to Myerberg's collection of technical information from Markforged, Fulop also actively solicited and collected technical know-how while serving on Markforged's Board of Directors.  For example, in July 2015, Fulop requested information from Markforged about the wattage, when excluding the heat element, of its 3D printers.  When Markforged asked

---

[4] M. Molitch-Hou, *Desktop Metal's CTO on the Next Generation of Metal 3D Printing*, engineering.com (June 12, 2017), *available at* https://www.engineering.com/3DPrinting/3DPrintingArticles/ArticleID/15063/Desktop-Metals-CTO-on-the-Next-Generation-of-Metal-3D-Printing.aspx.

Fulop why he was interested in that type of technical information, Fulop deflected by stating that he was "personally curious."  However, as Fulop knew but failed to disclose to Markforged, he wanted that power usage information for his new company, because this information is important to designing a 3D printer that can be safely used in a desktop office space with standard electrical capabilities.

164.    While still a Director, Fulop repeatedly engaged in other unfair and deceptive conduct towards Markforged by asking for and receiving Markforged's technical know-how in an apparent effort to collect Markforged proprietary technical information for use by Desktop Metal. Fulop sought and obtained information from Markforged about thermal breaks Markforged used in its 3D printers, key technical know-how Markforged obtained through extensive trial and error. Fulop also obtained information on in the effective extrusion of 3D composites and metals, and his partner Myerberg's learning about the functions of the Markforged 3D printer from the proverbial head to toe while he was posing as merely a beta tester, and sharing that information with Fulop.

165.    On information and belief, Desktop Metal obtained and misused Markforged confidential and proprietary information that had been misappropriated by Fulop, Myerberg, Boston Impact and others.  Desktop Metal did so in order to accelerate its efforts to compete—and indeed did accelerate its efforts to compete—with Markforged in the marketplace.

166.    Moreover, on information and belief, Desktop Metal used Markforged proprietary information when filing patent applications for Desktop Metal.  This included disclosing Markforged proprietary information in the patent applications that led to the Asserted Patents in this case.  Examples of Markforged proprietary information incorporated into Desktop Metal's patent applications includes:  (i) the use of a heat drive wheel to head a build material to a working

temperature; (ii) the use of soft rollers to feed the printhead; (iii) the use of ultrasonic disruption to increase Z-layer strength and obtain better layer-to-layer adhesion; (iv) dynamically monitoring deposited layers to assess printer performance; and (v) the use of nozzle material choice, including high-hardness materials, to solve nozzle wear issues.

**F.    Fulop Used His Position as a Markforged Board Member to Solicit Key Hires to Work for Desktop Metal Instead**

167.    Fulop used the information that he was able to obtain because of his position as a Director and partner of a founding investor to harm Markforged and enhance his own ability to start a competitive company.  For example, Fulop learned that one of Markforged's "dream" hiring targets was an individual named Rick Chin, who was experienced in product management.  Fulop knew not only that Markforged had targeted Mr. Chin as a key hire, but he was also privy to confidential information about the amount of compensation that Markforged was offering to Mr. Chin, as well as Mr. Chin's counteroffers.  In August of 2015, while a Markforged Board member, Fulop falsely represented to Markforged that Mr. Chin had been hired by "another North Bridge company" and was no longer available.  In truth, Fulop failed to disclose that he was at that same time negotiating with Mr. Chin to retain him for product management and development at Desktop Metal, taking the opportunity of hiring Mr. Chin for himself

168.    As a result of Fulop's unfair and deceptive conduct, Mr. Chin turned down Markforged's offer and became a Co-Founder and Vice President of Software Development at Desktop Metal in 2015.

169.    Another example of Fulop's using information that he obtained as a Director to benefit his new company Desktop Metal involved an individual named Matt Verminski, who was flagged in Markforged's Board decks as a potential hire.  Fulop learned about Verminski from the information he received as a Director at Markforged and then hired Verminski in 2015 for the

position of Vice President of Engineering at his new company, without disclosing that to

Markforged, and taking the opportunity of hiring Mr. Verminski for himself.  Mr. Verminski is

now an inventor on Desktop Metal patents at issue in this litigation.

**G.    Fulop Used His Position as a Markforged Board Member to Secure Desktop Metal's Financing in Advance of Markforged's Fundraising Efforts**

170.    As a Markforged Director and partner of a founding investor, Fulop was also privy

to confidential meetings between Markforged and potential investors, which he then used to his

own advantage.  For example, in September 2014, Markforged had a meeting with General Electric

Ventures, an investment firm that expressed interest in a next generation 3D printer using metal in

the very business niche then occupied exclusively by Markforged.  Fulop subsequently used that

information—while still a member of the Markforged Board—to obtain financing from General

Electric Ventures for his own company, Desktop Metal, to the detriment of Markforged, and

without disclosing his actions to Markforged.

171.    Fulop also surreptitiously solicited funding for Desktop Metal while he was still a

Director at MarkForged.  Indeed, Fulop obtained information as a Board member relating to the

timing and substance of a key Series B fundraising effort by Markforged set to kick off in

September 2015, which he then used to jump in front of Markforged in soliciting financing for his

new company, Desktop Metal, all while still a member of the Markforged Board.

172.    Fulop also took advantage of his position as a Director and partner of a founding

investor to obtain samples of Markforged's printed parts, such as a 3D printed motorcycle brake,

which Fulop then used in connection with his own fundraising efforts on behalf of his new

company, without disclosing to Markforged such use.

173.    Fulop even used his knowledge about Markforged's technologies and the status of its pursuit of patents to jump in front of Markforged in a surreptitious race to the patent office that he never disclosed to Markforged was in process.

**H.    Fulop Lied to Markforged and Others About His Competitive Venture**

174.    In September 2015, Fulop—while still a Markforged Board member—approached the other founding investor in Markforged, Antonio Rodriguez at Matrix, and requested that Matrix participate in the funding of Desktop Metal.    When word of Fulop's overtures got back to Markforged, Mr. Mark confronted Fulop about the nature of his activities.    Although he was a Director and partner of a principal founding investor, Fulop lied to Mr. Mark, telling him that he was merely considering investing at the seed level in a 3D metal printing company that was in a different business.    After Mr. Mark at Markforged continued to pursue the issue, Fulop finally admitted that he was starting a new company in the 3D printer market, but Fulop assured Mr. Mark that the company would be developing and marketing 3D printers that were "10-30X more expensive" than Markforged's products, and he told Markforged that in no way would his company be competing in the Markforged niche market space.    Fulop made the same representations to Mr. Rodriguez at Matrix and to North Bridge.    In fact, Fulop's statements and reassurances to Mr. Mark and others were completely untrue, as Fulop well knew at the time.

175.    Markforged subsequently learned that while Fulop was still a Director and founding investor through his firm, Fulop was actually (and incorrectly) representing to the marketplace and potential investors in his business presentations that Markforged was a cheap, low-strength, plastic 3D printing company, while his new company, Desktop Metal, would be selling a high-strength printer that would be efficient, small enough to fit on engineers' desktops, and available at an accessible price point—the very niche that Markforged has occupied since its inception.    Indeed, Desktop Metal products were marketed at approximately $60,000 (or $5,000

per month)—in direct competition with Markforged's market segment for high-strength, relatively low cost printers.

**I.**     **Fulop Continued to Improperly Infiltrate Markforged**

176.    On or about September 30, 2015,  Fulop was removed from Markforged's Board because: (a) he was no longer a partner at North Bridge; and (b) of his suspected unfair and deceptive acts and conduct.

177.    But even after Fulop was removed from Markforged's Board, he continued to infiltrate Markforged's business in order to gain know-how and insider knowledge for his new company, Desktop Metal.

178.    For example, on or about January 12, 2016, at Fulop's and Myerberg's apparent instruction, Desktop Metal's "Start-Up Office Facilitator," Amy Buntel ordered a Markforged Mark One 3D printer to her home.  Buntel did not disclose her affiliation with Desktop Metal, instead using her own personal information and the email address "AmyBsPrinter@gmail.com" to place the order.

179.    Fulop and Myerberg directed and caused Buntel to order the Markforged printer so that Desktop Metal could disassemble, reverse engineer, analyze and use it in order to copy and utilize more completely Markforged's proprietary engineering methodologies and print metal, and which in fact they did.

180.    Markforged's Terms of Service—to which Buntel and her Organization (i.e., Desktop Metal) agreed in order to make the purchase—expressly prohibit jeopardizing, encumbering, limiting, or interfering in any manner with Markforged's  ownership of the printer's

technology and software, as well as any direct or indirect modification, adaptation, disassembly, or analysis of the machine.[5]

181.    The Terms of Service provide a "fully paid-up, royalty-free, worldwide, non-exclusive, irrevocable, transferable right and license in, under, and to any patents and copyrights enforceable to any country, issued to, obtained by, developed by or acquired by You [Buntel or her Organization (i.e., Desktop Metal)] that incorporate, are derived from and/or improve upon the Intellectual Property of MarkForged; are developed using the Service(s), Products or Software; and are directed to 3D printing equipment or software, uses thereof, or printing materials thereof."[6] The Terms of Service further provide indemnification for Markforged, including all expenses and reasonable attorneys fees, for any claim, suit or proceeding in connection with a breach of the Terms.[7]

182.    As a Director, Fulop was intimately familiar with Markforged's Terms of Service and the Board's decision to include these restrictions in the Terms.  He attempted to personally circumvent those Terms by putting Buntel up to the task instead of his or his company doing it directly.

183.    A few months after Fulop and Myerberg's ruse using Ms. Buntel, on April 14, 2016, Desktop Metal filed its first provisional patent application for metal injection molding, which described a 3D printer just like Markforged's, using metal composites.

184.    Additionally, on or about September 2016, Fulop hired away one of Markforged's engineers, Myles Cooper.  Cooper had substantial knowledge of Markforged's technical know-

---

[5]   Exhibit B, Markforged, Inc. EIGER.IO Terms of Service and EIGER Software End User License Agr. (Jan. 2016) at § 3 "Restrictions" & § 5 "Markforged Proprietary Rights."

[6]   *Id.* at § 5.2 "License" & p. 1 (defining "You" as "you or your Organization").

[7]   *Id*. at § 6 "Indemnification and Warranties."

how, including how its printers were designed and operated, as well as the various content applications for the printers.  Cooper also had access to Markforged's engineering and design documents, including mechanical, electrical, and software design files, source code, as well as business and technical evaluations, testing, and performance.

185.    Cooper executed a Non-Competition and Non-Solicitation Agreement (the "Non-Disclosure Agreement") with Markforged on June 1, 2016.[8]  Desktop Metal's hiring Cooper caused a breach of his agreement with Markforged.  Cooper's Non-Competition Agreement required that Cooper "not directly or indirectly [e]ngage or assist the others in engaging in any business or enterprise . . . that is competitive with [Markforged's] business . . . ."[9]  The terms of the agreement were in effect for one year, through June 1, 2017.[10]

## COUNT I
### (Violation of the Defend Trade Secrets Act of 2016 (18. U.S.C. § 1836))
### (*Ric Fulop*)

186.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

187.    Markforged is the owner of trade secrets that Ric Fulop misappropriated.  These trade secrets relate to 3D printing high-strength parts on a desktop, which are used in, or intended for use in, interstate or foreign commerce.

188.    As a Markforged Director and partner in a founding investor of Markforged, Ric Fulop was under a fiduciary duty not to use or disclose Markforged's confidential or proprietary information, including all trade secrets.

---

[8]  Exhibit C, Markforged, Inc. Non-Competition and Non-Solicitation Agreement (June 1, 2016), by and between Markforged, Inc. and Myles Cooper.

[9]  *Id.* § 1(a)–(c).

[10]  *Id.*

189.     Markforged's confidential and proprietary information includes trade secrets.

190.     Markforged took reasonable measures to protect and maintain the secrecy of its trade secrets and confidential and proprietary information, including but not limited to, having its employees and any entities or individuals that performed work on its behalf sign confidentiality and non-disclosure agreements prohibiting removal of any materials containing confidential, proprietary information from its premises except in the pursuit of Markforged's business, limiting access to its offices, limiting access to its computer systems, and marking Board decks containing confidential, proprietary information with: "©MARKFORGED, INC. STRICTLY PRIVATE AND CONFIDENTIAL."

191.     Markforged has expended significant resources to develop its trade secrets and other confidential and proprietary information, to offer a unique and revolutionary way to 3D print high-strength parts on a desktop.   Markforged's trade secrets and confidential and proprietary information, derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.   These trade secrets and confidential, proprietary information are highly valuable to Markforged and to any other person or entity that wants to enter the field of 3D printing high-strength parts in a desktop environment.

192.     Ric Fulop knew, or had reason to know, that he had acquired trade secrets from Markforged through improper means, and disclosed Markforged's trade secrets to Desktop Metal and others, in direct violation of his fiduciary obligations to Markforged.

193.     As a direct and proximate result of Ric Fulop's misappropriation of Markforged's trade secrets and other confidential and proprietary information, Markforged has suffered and will continue to suffer irreparable harm and other damages, including but not limited to, loss of value

of its trade secrets.  Markforged is therefore entitled to civil seizure of property, injunctive relief, monetary damages for its actual losses, and monetary damages for unjust enrichment where damages for its actual losses are not adequately addressed.

## COUNT II
### (Violation of the Defend Trade Secrets Act of 2016 (18. U.S.C. § 1836))
### (*Jonah Myerberg, Boston Impact*)

194.   The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

195.   Markforged is the owner of trade secrets that Jonah Myerberg and Boston Impact misappropriated.  These trade secrets relate to 3D printing high-strength parts on a desktop, which are used in, or intended for use in, interstate or foreign commerce.

196.   Boston Impact agreed not to use or disclose Markforged's confidential or proprietary information, including all trade secrets.  At all relevant times, Myerberg was the Owner and President of Boston Impact.

197.   Markforged's confidential and proprietary information includes trade secrets.

198.   Markforged took reasonable measures to protect and maintain the secrecy of its trade secrets and confidential and proprietary information, including but not limited to, having its employees and any entities or individuals that performed work on its behalf sign confidentiality and non-disclosure agreements prohibiting removal of any materials containing confidential, proprietary information from its premises except in the pursuit of Markforged's business, limiting access to its offices, limiting access to its computer systems, and marking Board decks containing confidential, proprietary information with: "©MARKFORGED, INC. STRICTLY PRIVATE AND CONFIDENTIAL."

199.     Markforged has expended significant resources to develop its trade secrets and other confidential and proprietary information, to offer a unique and revolutionary way to 3D print high-strength parts on a desktop.  Markforged's trade secrets and confidential and proprietary information, derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  These trade secrets and confidential, proprietary information are highly valuable to Markforged and to any other person or entity that wants to enter the field of 3D printing high-strength parts in a desktop environment.

200.     Jonah Myerberg and Boston Impact knew, or had reason to know, that they had acquired trade secrets from Markforged through improper means, and disclosed Markforged's trade secrets to Desktop Metal and others, in direct violation of his express obligations to Markforged.

201.     As a direct and proximate result of Jonah Myerberg's and Boston Impact's misappropriation of Markforged trade secrets and other confidential and proprietary information, Markforged has suffered and will continue to suffer irreparable harm and other damages, including, but not limited to, loss of value of its trade secrets.  Markforged is therefore entitled to civil seizure of property, injunctive relief, monetary damages for its actual losses, and monetary damages for unjust enrichment where damages for its actual losses are not adequately addressed.

**COUNT III**
**(Violation of the Defend Trade Secrets Act of 2016 (18. U.S.C. § 1836))**
**(*Desktop Metal*)**

202.     The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

203.    Markforged is the owner of trade secrets that Desktop Metal, through Ric Fulop,
Jonah Myerberg, Boston Impact, and Myles Cooper, among others, misappropriated.  These trade
secrets relate to 3D printing high-strength parts on a desktop, which are used in, or intended for
use in, interstate or foreign commerce.

204.    Desktop Metal was aware of Ric Fulop's, Jonah Myerberg's, Boston Impact's, and
Myles Cooper's obligations to Markforged.  Markforged took reasonable measures to protect and
maintain the secrecy of its trade secrets and confidential and proprietary information, including
but not limited to, having its employees and any entities or individuals that performed work on its
behalf sign confidentiality and non-disclosure agreements prohibiting removal of any materials
containing confidential, proprietary information from its premises except in the pursuit of
Markforged's business, limiting access to its offices, limiting access to its computer systems, and
marking Board decks containing confidential, proprietary information with: "©MARKFORGED,
INC. STRICTLY PRIVATE AND CONFIDENTIAL."

205.    Markforged has expended significant resources to develop its trade secrets and
other confidential, proprietary information, to offer a unique and revolutionary way to 3D print
high-strength parts on a desktop.   Markforged's trade secrets and confidential proprietary
information derive independent economic value, actual or potential, from not being generally
known to, and not being readily ascertainable through proper means by, another person who can
obtain economic value from the disclosure or use of the information.  These Markforged trade
secrets and confidential and proprietary information are highly valuable to Markforged and to any
other person or entity that wants to enter the field of 3D printing high-strength parts in a desktop
environment.

206.    Desktop Metal knew, or had reason to know, that it acquired trade secrets from Markforged through improper means and used Markforged's trade secrets without Markforged's consent, knowing or having reason to know that the trade secrets were acquired by improper means.

207.    As a direct and proximate result of Desktop Metal's misappropriation of trade secrets and other confidential and proprietary information, Markforged has suffered and will continue to suffer irreparable harm and other damages, including, but not limited to, loss of value of its trade secrets.  Markforged is therefore entitled to civil seizure of property, injunctive relief, monetary damages for its actual losses, and monetary damages for unjust enrichment where damages for its actual losses are not adequately addressed.

**COUNT IV**
**(Misappropriation of Trade Secrets and Confidential Information (M.G.L. c. 93 § 42))**
**(*Ric Fulop*)**

208.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

209.    Ric Fulop was a partner of a founding investor of Markforged, and member of the Board of Directors at Markforged from June 2013 through September 2015.  As a partner of a founding investor and a Director of Markforged, Ric Fulop accessed numerous trade secrets and proprietary, confidential information at Markforged, including but not limited to customer lists, target customers, channel distributors, suppliers, key accounts, hiring strategies, testing and design information, financing rounds and financing schedules, investors and potential investors, plans and timing for product development, market share information, sales strategies, analysis of strengths and weaknesses of new product development and the market, and engineering specifications for Markforged's 3D printers.  This information was held in strict confidence and confidentiality by

Markforged and only made available to Fulop in his capacity as a director and partner of a founding investor.

210.    Markforged took reasonable measures to protect and maintain the secrecy of its trade secrets and confidential and proprietary information, including, but not limited to, having its employees and any entities or individuals that performed work on its behalf sign confidentiality and non-disclosure agreements prohibiting removal of any materials containing confidential, proprietary information from its premises except in the pursuit of Markforged's business, limiting access to its offices, limiting access to its computer systems, and marking Board decks containing confidential, proprietary information with: "©MARKFORGED, INC. STRICTLY PRIVATE AND CONFIDENTIAL."

211.    Markforged has expended significant resources to develop its trade secrets and other confidential, proprietary information, to offer a unique and revolutionary way to 3D print high-strength parts on a desktop.  Markforged's trade secrets and confidential proprietary information derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  These trade secrets and confidential, proprietary information are highly valuable to Markforged and to any other person or entity that wants to enter the field of 3D printing high-strength parts on a desktop.

212.    Ric Fulop stole or unlawfully took, carried away, concealed, and/or copied trade secrets and other confidential proprietary information from Markforged and disclosed Markforged's trade secrets and other confidential proprietary information to Desktop Metal, in direct violation of his fiduciary obligations to Markforged.

213.     As a direct and proximate result of Ric Fulop's misappropriation of trade secrets and other confidential and proprietary information, Markforged has suffered and will continue to suffer irreparable harm and other damages, including, but not limited to, loss of value of its trade secrets.  Markforged is entitled to injunctive relief and monetary damages in an amount twice its actual damages.

### COUNT V
### (Misappropriation of Trade Secrets and Confidential Information (M.G.L. c. 93 § 42))
### (*Jonah Myerberg, Boston Impact*)

214.     The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

215.     Jonah Myerberg, by and through his company Boston Impact, was a beta tester for Markforged in 2014, under a Non-Disclosure Agreement between Markforged and Boston Impact that continued in effect until June 2016.  As a beta tester, Myerberg accessed numerous trade secrets and proprietary, confidential information at Markforged including but not limited to product designs, roadmaps, techniques, schematics, and processes, and the engineering specifications for Markforged's 3D printers.  This information was held in strict confidence and confidentiality by Markforged and only made available to Myerberg in his capacity as a beta tester. Markforged took reasonable steps to maintain the confidentiality of this information, including by having Boston Impact enter a Non-Disclosure Agreement, limiting access to its offices, limiting access to its computer systems, and having its employees and entities or individuals that perform work on its behalf sign confidentiality or non-disclosure agreements prohibiting removal of any materials containing confidential, proprietary information from its premises except in the pursuit of Markforged's business.

216.    Markforged has expended significant resources to develop its trade secrets and other confidential, proprietary information, to offer a unique and revolutionary way to 3D print high-strength parts on a desktop.   Markforged's trade secrets and confidential proprietary information derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.   These trade secrets and confidential, proprietary information are highly valuable to Markforged and to any other person or entity that wants to enter the field of 3D printing high-strength parts on a desktop.

217.    Jonah Myerberg and Boston Impact stole or unlawfully took, carried away, concealed, and/or copied trade secrets and other confidential proprietary information from Markforged and disclosed Markforged's trade secrets and other confidential proprietary information to Desktop Metal, in direct violation of his express obligations to Markforged.

218.    As a direct and proximate result of Jonah Myerberg's and Boston Impact's misappropriation of trade secrets and other confidential and proprietary information, Markforged has suffered and will continue to suffer irreparable harm and other damages, including, but not limited to, loss of value of its trade secrets.  Markforged is entitled to injunctive relief and monetary damages in an amount twice its actual damages.

## <u>COUNT VI</u>
### (Misappropriation of Trade Secrets and Confidential Information (M.G.L. c. 93 § 42))
### (*Desktop Metal*)

219.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

220.    Desktop Metal, through its Co-Founder and CEO Ric Fulop, its Co-Founder and CTO Jonah Myerberg, and its mechanical engineer Myles Cooper, among others, accessed

numerous trade secrets and proprietary, confidential information at Markforged, including but not limited to customer lists, target customers, channel distributors, suppliers, key accounts, hiring strategies, testing and design information, financing rounds and financing schedules, investors and potential investors, plans and timing for product development, market share information, sales strategies, analysis of strengths and weaknesses of new product development, the market, engineering specifications for Markforged's 3D printers, and technical know-how regarding how Markforged's 3D printers functions including roadmaps, techniques, schematics, and processes, and the engineering specifications.   This information was held in strict confidence and confidentiality by Markforged and only made available to Fulop in his capacity as a director and partner of a founding investor, Myerberg in his capacity as a beta tester for Markforged and subject to his executed Non-Disclosure Agreement, and Cooper in his capacity as engineer for Markforged and subject to his Non-Compete and Non-Solicitation Agreement.

221.   Markforged took reasonable measures to protect and maintain the secrecy of its trade secrets and confidential and proprietary information, including but not limited to, having its employees and any entities or individuals that performed work on its behalf sign confidentiality and non-disclosure agreements prohibiting removal of any materials containing confidential, proprietary information from its premises except in the pursuit of Markforged's business, limiting access to its offices, limiting access to its computer systems, and marking Board decks containing confidential, proprietary information with: "©MARKFORGED, INC. STRICTLY PRIVATE AND CONFIDENTIAL."

222.   Markforged has expended significant resources to develop its trade secrets and other confidential and proprietary information, to offer a unique and revolutionary way to 3D print high-strength parts on a desktop.   Markforged's trade secrets and confidential proprietary

information derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  These trade secrets and confidential, proprietary information are highly valuable to Markforged and to any other person or entity that wants to enter the field of 3D printing high-strength parts on a desktop.

223.    Desktop Metal, through Ric Fulop, Jonah Myerberg, Boston Impact, and Myles Cooper, among others, stole or unlawfully took, carried away, concealed, and/or copied trade secrets and other confidential proprietary information from Markforged and disclosed Markforged's trade secrets and other confidential proprietary information, in direct violation of their express or implied obligations to Markforged, to Desktop Metal, at the direction of Desktop Metal and to Desktop Metal's benefit.

224.    On information and belief, Desktop Metal knowingly received the benefits from the disclosure and/or use of Markforged's proprietary information.  Ric Fulop, Jonah Myerberg, Boston Impact, Myles Cooper, and Desktop Metal thus in concert used improper means, in breach of Ric Fulop's fiduciary duty to Markforged and Jonah Myerberg's, Boston Impact's, and Myles Cooper's confidential relationship with and contractual obligations to Markforged, to acquire Markforged's trade secrets and other confidential, proprietary information.

225.    As a direct and proximate result of Desktop Metal's misappropriation of trade secrets and other confidential and proprietary information, Markforged has suffered and will continue to suffer irreparable harm and other damages, including, but not limited to, loss of value of its trade secrets.  Markforged is entitled to injunctive relief and monetary damages in an amount twice its actual damages.

## COUNT VII
### (Breach of Fiduciary Duty)
### (*Ric Fulop*)

226.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

227.    As a partner of a founding investor of Markforged and member of Markforged's Board of Directors, Ric Fulop owed Markforged a fiduciary duty of loyalty to act in the best interests of Markforged.  Fulop breached that duty of loyalty.

228.    Fulop used his position as a Markforged Director and partner of a founding investor to benefit his own personal interests, and the interests of a competitor company, Desktop Metal, which he covertly founded while a Board member and partner of a founding investor of Markforged.  Fulop's actions in breach of his fiduciary duty include but are not limited to, taking Markforged's business opportunities, as well as its trade secret, proprietary and confidential information such as customer lists, potential investors, business strategies and other know-how, known to him only through his role as a Director and partner of a founding investor of Markforged, and using that information to Desktop Metal's advantage and Markforged's detriment, as well as by failing to disclose his conflict of interest in forming, and preparing to form, Desktop Metal to Markforged.

229.    While serving as a Board member of Markforged, Fulop also usurped corporate opportunities that should have benefitted Markforged.  Namely, Fulop, as a member of the Markforged Board and a partner of a founding investor of Markforged, should have brought the corporate opportunity of the 3D metal printers marketed by Desktop Metal to Markforged but failed to disclose that opportunity to Markforged.  Fulop knew that Markforged had planned, from the beginning, to introduce a series of composite printers to the market, starting with carbon fiber,

and expanding to metal and ceramic. Fulop acquired information about expanding into the metal 3D printing business as a Director and partner of a founding investor in Markforged, and used that information about that corporate opportunity to pursue that opportunity for himself through founding his own company, Desktop Metal, while stile a Markforged Board member, instead of aiding Markforged with the natural extension of its product offerings, and offering that opportunity to Markforged.

230.    Fulop also should have brought the corporate opportunity of additional investor funding to Markforged, but did not. This included almost a third of a billion dollars in investor funding to advance 3D metal printing. Not only did Fulop not provide the corporate opportunity of that funding to Markforged, he surreptitiously got out ahead of Markforged's Series B funding round, while still a Markforged Board member, in order to usurp those investor dollars for Desktop Metal before Markforged could even ask for them.

231.    Fulop should have brought the corporate opportunity of 3D metal printing-related patent applications to Markforged, but did not. Instead, Fulop used his knowledge about Markforged's planned patenting schedule to get out ahead of Markforged's patent applications, in a surreptitious race to the patent office.

232.    Fulop should have brought the corporate opportunity of partnering and collaborating with key engineers and professors in the 3D printing industry to Markforged, including but not limited to partnerships and collaborations with Jonah Myerberg, Rick Chin, Ely Sachs, Ph.D., Christopher Schuh, Ph.D., A. John Hart, Ph.D., and Yet-Ming Chiang, Sc.D. (all co-founders of Desktop Metal), but did not. Not only did Fulop not bring the corporate opportunity of those partnerships and collaborations to Markforged, in some instances he actively worked to ensure that Markforged lost access to working with these key individuals, including Rick Chin.

Fulop breached his fiduciary duty to Markforged by utilizing confidential information about Rick Chin's compensation requests and counteroffers to form his own offer to Rick Chin for Desktop Metal.

233.    Fulop further breached his duty of loyalty to Markforged by obtaining confidential, proprietary, trade secret, and other know-how information from Markforged, and using it to perform due diligence for, and otherwise help to found, Desktop Metal, without disclosing his conflict of interest in forming Desktop Metal to Markforged, and by lying to Markforged in order to cover up his conflict of interest.  Markforged's Board decks, and other information made available to Ric Fulop in his capacity as a Board member, were replete with key information about the 3D printing market for strong, low-cost printers, including customer lists, customer requests and specification requirements, suppliers—including ranking of suppliers based on quality and price, key channel distributors, market and investment strategies, and intellectual property information and technical know-how.  Fulop used Markforged's customer lists—acquired through his confidential, director position at Markforged—to target Desktop Metal's marketing and customer outreach, breaching his duty of loyalty owed to Markforged.  Fulop used supplier information, including Markforged's confidential and proprietary ranking of suppliers, to set up Desktop Metal's supplier accounts, in direct violation of his duty of loyalty owed to Markforged. Fulop used Markforged's confidential and proprietary list of key distributors, and reached out to those distributors for Desktop Metal, breaching his duty of loyalty owed to Markforged.  Fulop also used information from confidential Markforged Board decks to approach Markforged's investors in advance of a Markforged funding round in order to divert funds to Desktop Metal, in direct violation of his fiduciary duty to Markforged.

234.    Fulop's unlawful conduct has injured Markforged's 3D printing business, and will continue to harm Markforged's business until Fulop's efforts are curtailed.

235.    Fulop's actions are the direct and proximate cause of Markforged's damages.

**COUNT VIII**
**(Aiding and Abetting Breach of Fiduciary Duty)**
**(*Desktop Metal*)**

236.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

237.    As a partner of a founding investor and member of Markforged's Board of Directors, Ric Fulop owed Markforged a fiduciary duty of loyalty to act in the best interest of Markforged.

238.    Desktop Metal knew at all relevant times that Ric Fulop, prior to his departure from Markforged, owed Markforged the fiduciary duty of loyalty.

239.    By soliciting Ric Fulop as an investor, founder, and CEO—all while Fulop was a member of Markforged's board of directors—Desktop Metal knowingly aided and abetted Fulop's breach of fiduciary duty owed to Markforged.  Desktop Metal willfully and knowingly made use of Markforged's trade secret, confidential, and proprietary information, and other know-how, by wrongfully acquiring such information from Ric Fulop.  Desktop Metal willfully and knowingly usurped corporate opportunities that it knew Ric Fulop should have offered and owed to Markforged, to Markforged's detriment and to its own advantage.

240.    Desktop Metal aided and abetted, and substantially assisted, Fulop's usurpation of corporate opportunities that should have benefitted Markforged.  Namely, Desktop Metal aided and abetted Fulop's breach of fiduciary duty by claiming for itself the corporate opportunity of the 3D metal printers now marketed by Desktop Metal, even though it knew that corporate opportunity should have been—but was not—offered to Markforged.  Desktop Metal knew that Markforged

had planned, from the beginning, to introduce a series of composite printers to the market, starting with carbon fiber, and expanding to metal and ceramic.  Desktop Metal used the information that Fulop acquired at Markforged about expanding into the metal 3D printing business to benefit itself.

241.    Desktop Metal aided and abetted, and substantially assisted Fulop's breach of fiduciary duty by claiming for itself the corporate opportunity of investor funding, even though it knew that opportunity should have been—but was not—offered to Markforged.  This included almost a third of a billion dollars in investor funding to advance 3D metal printing.

242.    Desktop Metal aided and abetted, and substantially assisted Fulop's breach of fiduciary duty by claiming for itself the corporate opportunity of 3D metal printing-related patent applications, even though it knew that opportunity should have been—but was not—offered to Markforged.

243.    Desktop Metal aided and abetted and substantially assisted Fulop's breach of fiduciary duty by claiming for itself the corporate opportunity of partnering and collaborating with key engineers and professors in the 3D printing industry, including but not limited to partnerships and collaborations with Jonah Myerberg, Rick Chin, Ely Sachs, Ph.D., Christopher Schuh, Ph.D., A. John Hart, Ph.D., and Yet-Ming Chiang, Sc.D., even though it knew that opportunity should have been—but was not—offered to Markforged.  Desktop Metal further aided and abetted Fulop's breach of fiduciary duty owed to Markforged by utilizing confidential proprietary information regarding Rick Chin's compensation requests and counteroffers with Markforged to make a highly competitive offer to Rick Chin at Desktop Metal.

244.    Desktop Metal aided and abetted Fulop's breach of fiduciary duty by using Fulop to obtain confidential, proprietary, trade secret, and other know-how information from Markforged for its own commercial benefit, and by encouraging Ric Fulop to cover up, and not disclose to

Markforged, his conflict of interest in forming, and preparing to form, Desktop Metal. Markforged's Board decks, and other information made available to Ric Fulop in his capacity as a board member, were replete with key information about the 3D printing market for strong, low-cost printers, including customer lists, customer requests and specification requirements, suppliers—including ranking of suppliers based on quality and price, key channel distributors, and market and investment strategies.  Desktop Metal used the information Fulop received as a member of Markforged's Board about customer lists to target its own marketing and customer outreach. Desktop Metal used the information Fulop received as a member of Markforged's Board about suppliers, including Markforged's confidential and proprietary ranking of suppliers, to set up its own supplier accounts.  Desktop Metal used the information Fulop received as a member of Markforged's Board about key distributors, and reached out to all of those distributors for Desktop Metal.  Desktop Metal used the information Fulop received as a member of Markforged's Board about the timing and targets of Markforged's Series B fundraising round in order to jump ahead of Markforged's fundraising and divert funds to Desktop Metal.

245.    Desktop Metal's unlawful conduct has injured Markforged's 3D printing business, including but not limited to by the loss or potential loss of investors, customers, and hires, and will continue to harm Markforged's business until Desktop Metal's efforts are curtailed.

246.    Desktop Metal's actions are the direct and proximate cause of Markforged's damages.

## COUNT IX
### (Unfair Business Methods (M.G.L. c. 93A § 11))
### (*Ric Fulop*)

247.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

248.   At all times relevant to this action, Markforged has been engaged in trade or commerce within the meaning of M.G.L. c. 93A, § 11.

249.   Ric Fulop engaged in a course of conduct designed to unfairly harm Markforged, to Desktop Metal's advantage, through his business transactions with Markforged.  Ric Fulop's unfair conduct included, but is not limited to the following: (a) usurping Markforged's corporate business opportunities in breach of his fiduciary duty owed to Markforged, including but not limited to approaching Markforged's "dream hire" Rick Chin with an offer that Desktop Metal knew would be competitive; approaching potential partners and collaborators for Markforged and offering them co-founding positions with Desktop Metal; and approaching Markforged's investors in advance of a funding round in order to divert funds to Desktop Metal; (b) Ric Fulop's breach of fiduciary duty owed to Markforged, including by taking trade secret, proprietary and confidential information such as customer lists, potential investors, business strategies and other know-how, covertly founding a competitor firm while a member of Markforged's Board, and lying to Markforged's CEO about his new venture; (c) inducing Boston Impact's breach of the Non-Disclosure Agreement with Markforged in order to obtain confidential, proprietary, and trade secret information about how Markforged's printers functioned, Markforged's manufacturers, and Markforged's customer requirements; (d) conspiring with Jonah Myerberg and Boston Impact to surreptitiously and unfairly obtain confidential, proprietary, trade secret, and other technical know-how information from Markforged; (e) inducing Myles Cooper to work for Desktop Metal in violation of his Non-Competition and Non-Solicitation Agreement with Markforged in order to obtain confidential, proprietary, and trade secret information from Markforged; (f) tortious interference with advantageous contractual relations, and potential advantageous contractual relations, including use of Markforged's confidential, proprietary customer lists and potential

investor lists to solicit customers and investors away from Markforged to Desktop Metal's advantage; (g) directing Desktop Metal's Amy Buntel to covertly order a Markforged 3D printer for use inconsistent with, and in violation of Markforged's Terms of Service Agreement so that Desktop Metal could disassemble, reverse engineer, analyze and use it in order to copy more completely Markforged's proprietary engineering methodologies and print metal, and which in fact they did; and (h) unjustly enriching Desktop Metal, Ric Fulop, Jonah Myerberg, and Boston Impact at the direct expense of Markforged by unlawfully acquiring trade secret, and other confidential, proprietary information and know-how from Markforged.

250.    These acts and practices of Ric Fulop constitute unfair methods of competition or unfair or deceptive acts and practices and business transactions that occurred primarily and substantially within Massachusetts within the meaning of M.G.L. c. 93A § 2.

251.    These unfair methods of competition or unfair or deceptive acts or practices were intentional, willful, and knowing.

252.    As a direct and proximate result of Ric Fulop's unfair and deceptive acts and conduct as aforesaid, Markforged has suffered and will continue to suffer substantial and irreparable harm and other damages, including, but not limited to, loss of value of trade secrets, loss of customers, loss of investors, and loss of key hires or potential key hires.  Markforged is entitled to three times its actual damages and its reasonable attorneys' fees and costs incurred in this action.

### COUNT X
### (Unfair Business Methods (M.G.L. c. 93A § 11))
### (*Jonah Myerberg, Boston Impact*)

253.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

254.   At all times relevant to this action, Markforged has been engaged in trade or commerce within the meaning of M.G.L. c. 93A, § 11.

255.   Jonah Myerberg and Boston Impact engaged in a course of conduct designed to unfairly harm Markforged, through his business transactions with Markforged, including but not limited to his independent contractor engagement with Markforged as a beta tester.   Jonah Myerberg's and Boston Impact's unfair conduct included, but is not limited to the following: (a) Boston Impact's breach of the Non-Disclosure Agreement with Markforged in order to obtain confidential, proprietary, and trade secret information about how Markforged's printers functioned, Markforged's manufacturers, and Markforged's customer requirements; (b) conspiring with Ric Fulop to surreptitiously and unfairly obtain confidential, proprietary, trade secret, and other technical know-how information from Markforged; and (c) unjustly enriching Boston Impact and Myerberg at the direct expense of Markforged by unlawfully acquiring trade secret, and other confidential, proprietary information and know-how from Markforged.

256.   These acts and practices of Jonah Myerberg and Boston Impact constitute unfair methods of competition or unfair or deceptive acts and practices and business transactions that occurred primarily and substantially within Massachusetts within the meaning of M.G.L. c. 93A § 2.

257.   These unfair methods of competition or unfair or deceptive acts or practices were intentional, willful, and knowing.

258.   As a direct and proximate result of Jonah Myerberg's and Boston Impact's unfair and deceptive acts and conduct as aforesaid, Markforged has suffered and will continue to suffer substantial and irreparable harm and other damages, including, but not limited to, loss of value of trade secrets, loss of customers, loss of investors, and loss of key hires or potential key hires.

Markforged is entitled to three times its actual damages and its reasonable attorneys' fees and costs incurred in this action.

**COUNT XI**
**(Unfair Business Methods (M.G.L. c. 93A § 11))**
**(*Amy Buntel*)**

259.     The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

260.     At all times relevant to this action, Markforged has been engaged in trade or commerce within the meaning of M.G.L. c. 93A, § 11.

261.     Amy Buntel engaged in a course of conduct designed to unfairly harm Markforged, through her business transactions with Markforged, including but not limited to her entering into a Terms of Service Agreement with Markforged and her purchase of a Markforged 3D printer. Amy Buntel's unfair conduct included, but is not limited to the following: covertly ordering a Markforged 3D printer for use inconsistent with, and in violation of Markforged's Terms of Service Agreement so that Desktop Metal could disassemble, reverse engineer, analyze and use it in order to copy more completely Markforged's proprietary engineering methodologies and print metal, and which in fact they did.

262.     These acts and practices of Amy Buntel constitute unfair methods of competition or unfair or deceptive acts and practices and business transactions that occurred primarily and substantially within Massachusetts within the meaning of M.G.L. c. 93A § 2.

263.     These unfair methods of competition or unfair or deceptive acts or practices were intentional, willful, and knowing.

264.     As a direct and proximate result of Amy Buntel's unfair and deceptive acts and conduct as aforesaid, Markforged has suffered and will continue to suffer substantial and

irreparable harm and other damages, including, but not limited to, loss of value of trade secrets, loss of customers, loss of investors, and loss of key hires or potential key hires. Markforged is entitled to three times its actual damages and its reasonable attorneys' fees and costs incurred in this action.

**COUNT XII**
**(Unfair Business Methods (M.G.L. c. 93A § 11))**
**(*Desktop Metal*)**

265.     The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

266.     At all times relevant to this action, Markforged has been engaged in trade or commerce within the meaning of M.G.L. c. 93A, § 11.

267.     Desktop Metal engaged in a course of conduct designed to unfairly harm Markforged through its business transactions with Markforged. Desktop Metal's unfair conduct included, but is not limited to the following: (a) Desktop Metal's aiding and abetting Ric Fulop's breach of fiduciary duty owed to Markforged in order to obtain Markforged's trade secret, confidential and proprietary information such as customer lists, potential investors, business strategies and other know-how; (b) inducing Boston Impact's breach of his Non-Disclosure Agreement with Markforged in order to obtain confidential, proprietary, and trade secret information about how Markforged's printers functioned, Markforged's manufacturers, and Markforged's customer requirements; (c) inducing Myles Cooper to work for Desktop Metal in violation of his Non-Competition and Non-Solicitation Agreement with Markforged in order to obtain confidential, proprietary, and trade secret information from Markforged; (d) tortious interference with advantageous contractual relations, and potential advantageous contractual relations, including use of Markforged's confidential, proprietary customer lists and potential

investor lists to solicit customers and investors away from Markforged to Desktop Metal's advantage; (e) directing Desktop Metal's Amy Buntel to covertly order a Markforged 3D printer in violation of Markforged's Terms of Service agreement so that Desktop Metal could disassemble, reverse engineer, analyze and use it in order to copy more completely Markforged's proprietary engineering methodologies and print metal, and which in fact they did; and (f) unjustly enriching Desktop Metal, Ric Fulop, Jonah Myerberg, and Boston Impact at the direct expense of Markforged by unlawfully acquiring trade secret, and other confidential, proprietary information and know-how from Markforged.

268.    These acts and practices of Desktop Metal constitute unfair methods of competition or unfair or deceptive acts and practices and business transactions that occurred primarily and substantially within Massachusetts within the meaning of M.G.L. c. 93A § 2.

269.    These unfair methods of competition or unfair or deceptive acts or practices were intentional, willful, and knowing.

270.    As a direct and proximate result of Desktop Metal's bad faith violations, and because of Desktop Metal's knowing receipt of Markforged's confidential, proprietary, and trade secret information, Markforged has suffered and will continue to suffer substantial and irreparable harm and other damages, including, but not limited to, loss of value of trade secrets, loss of customers, loss of investors, and loss of key hires or potential key hires.  Markforged is entitled to three times its actual damages and its reasonable attorneys' fees and costs incurred in this action.

## COUNT XIII
### (Breach of Contract (NDA))
#### (*Boston Impact*)

271.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

272.     In July 2014, Markforged engaged Jonah Myerberg, by and through his company Boston Impact, to beta test their 3D printers and perform work on behalf of Markforged.

273.     As part of this engagement, Markforged and Boston Impact entered into a valid, enforceable, Non-Disclosure Agreement in July 2014, with a term of two years, and governed by Massachusetts law.

274.     Under the Non-Disclosure Agreement, Boston Impact agreed, among other things, that it would not use any of the confidential information gained through his work at Markforged for any purpose, other than for the benefit of Markforged.

275.     In 2014, Myerberg, as an agent of Boston Impact, beta tested Markforged's 3D printers and otherwise performed work on behalf of Markforged, gaining access to confidential and trade secret information, including but not limited to how the Markforged printers functioned, customer requirements, manufacturers, product strengths and weaknesses, and technical know-how.  This information was guarded and protected by Markforged, including by limiting access to its offices, password protecting its computers, and through execution of Non-Disclosure Agreements like the one with Myerberg's company Boston Impact.

276.     Markforged has expended significant resources to develop its trade secrets and other confidential, proprietary information, to offer a unique and revolutionary way to 3D print high-strength parts on a desktop.  Markforged's trade secrets and confidential proprietary information derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.  These trade secrets and confidential, proprietary information are highly valuable to Markforged and to any other person or entity that wants to enter the field of 3D printing high-strength parts on a desktop.

277.    In 2015, while the terms of the Markforged Non-Disclosure Agreement were still in effect, Myerberg became a Co-Founder and Chief Technology Officer for Desktop Metal.

278.    On information and belief, Boston Impact used the information gained from beta testing Markforged's 3D printers and the work it otherwise performed on behalf of Markforged to develop the technology and business plan for Desktop Metal, and to develop and design Desktop Metal's 3D printers.

279.    Markforged has fully performed all of its obligations under the Non-Disclosure Agreement.

280.    Because of Boston Impact's breach of its contractual obligations under the Non-Disclosure Agreement, Markforged has been and will continue to be irreparably harmed.

281.    Boston Impact's actions are the direct and proximate cause of Markforged's damages.

282.    Markforged is entitled to injunctive relief and damages.

## COUNT XIV
### (Breach of Contract (Terms of Service Agreement))
### (*Amy Buntel, Desktop Metal*)

283.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

284.    In or about January 2016 Desktop Metal's "Start-Up Office Facilitator," Amy Buntel ordered a Markforged Mark One 3D printer sent to her home.  At all relevant times, Buntel was an employee and agent of Desktop Metal.  Buntel did not disclose her affiliation with Desktop Metal, instead using her own personal information and the email address "AmyBsPrinter@gmail.com" to place the order.

285.    Pursuant to the provisions of the Terms of Service Agreement to which Buntel agreed, those Terms bind and apply to Buntel <u>and</u> her "Organization,"—i.e., Desktop Metal.

286.    Markforged's Terms of Service—to which Buntel agreed in order to make the purchase—prohibit jeopardizing, encumbering, limiting, or interfering in any manner with Markforged's ownership of the printer's technology and software , as well as any direct or indirect modification, adaptation, disassembly, or analysis of the machine.   The Terms of Service is governed by Massachusetts law.

287.    Buntel and Desktop Metal violated Markforged's Terms of Service by using, and allowing Desktop Metal to use, the Markforged 3D printer that she ordered to disassemble, reverse engineer, analyze and copy more completely Markforged's proprietary engineering methodologies and to print metal so as to advance Desktop Metal's own 3D printer design.  Buntel and Desktop Metal further violated Markforged's Terms of Service by failing to deliver a license to Markforged for all Desktop Metal patents that incorporate, are derived from and/or improve upon the Intellectual Property of MarkForged; were developed using Markforged's services, products, or software; and are directed to 3D printing equipment or software, uses thereof, or printing materials thereof.

288.    Markforged has fully performed all of its obligations under the Terms of Service Agreement.

289.    Because of Buntel's and Desktop Metal's breach of their contractual obligations under the Terms of Service Agreement, Markforged has been and will continue to be irreparably harmed.

290.    Buntel's and Desktop Metal's actions are the direct and proximate cause of Markforged's damages.

291.    Markforged is entitled to injunctive relief; damages; a license to any patents and copyrights that incorporate, are derived from, and/or improve upon the Intellectual Property of Markforged, developed using the Service(s), Products or Software, and directed to 3D printing equipment or software, uses thereof, or printing materials thereof; and all losses, liabilities, and expenses (including reasonable attorneys' fees) suffered or incurred as a result of this claim, suit or proceeding.

## COUNT XV
### (Aiding and Abetting Breach of Contract)
### (*Ric Fulop*)

292.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

293.    Pursuant to the Non-Disclosure Agreement, Boston Impact owed Markforged a duty to maintain confidentiality over its trade secret and proprietary information, and a duty to use such trade secret and proprietary information exclusively in Markforged's interest.  At all relevant times, Myerberg was the Owner and President of Boston Impact.

294.    Ric Fulop knew at all relevant times that Boston Impact owed Markforged a duty to maintain confidentiality over all trade secret and proprietary information from July 2014 through July 2016.

295.    By soliciting Jonah Myerberg as a Co-Founder and Chief Technology Officer of Desktop Metal, and soliciting the confidential information Boston Impact acquired based on the work it performed on behalf of Markforged—all while Boston Impact was bound by a Non-Disclosure Agreement with competitor firm Markforged—Ric Fulop knowingly aided and abetted Boston Impact's breach of its Non-Disclosure Agreement with Markforged.

296.    As a purchaser of Markforged's 3D printer, Amy Buntel and her Organization Desktop Metal were subject to Markforged's Terms of Service Agreement which prohibits, among other things, jeopardizing, encumbering, limiting, or interfering in any manner with Markforged's ownership of the printer's technology and software, as well as any direct or indirect modification, adaptation, disassembly, or analysis of the machine.

297.    By directing Amy Buntel to purchase the Markforged 3D printer in order to obscure Markforged's ownership of the printer, and in order to modify, adapt, disassemble, and analyze the Markforged printer, and to otherwise use the Markforged printer for Desktop Metal's advancement of its own technologies without licensing any such advancements to Markforged, Ric Fulop aided and abetted Buntel's and her Organization Desktop Metal's breach of the Terms of Service Agreement.

298.    As a Director of Markforged, Fulop was intimately familiar with Markforged's Terms of Service and the Markforged Board's decision to include these restrictions in the Terms.

299.    Ric Fulop's unlawful conduct has injured Markforged's 3D printing business, including but not limited to by the loss or potential loss of investors, customers, and hires, and will continue to harm Markforged's business until Desktop Metal's efforts are curtailed.

300.    Ric Fulop's actions are the direct and proximate cause of Markforged's damages.

### COUNT XVI
### (Aiding and Abetting Breach of Contract)
### (*Desktop Metal*)

301.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

302.    As a signatory to a Non-Disclosure Agreement Boston Impact owed Markforged a duty to maintain confidentiality over Markforged's trade secret and confidential and proprietary

information, and a duty to use such trade secret and confidential and proprietary information exclusively in Markforged's interest.

303. Desktop Metal knew at all relevant times that Boston Impact owed Markforged a duty to maintain confidentiality over all trade secret and confidential and proprietary information from July 2014 through July 2016.

304. By soliciting Jonah Myerberg as a Co-Founder and Chief Technology Officer of Desktop Metal, and soliciting the confidential information Myerberg and Boston Impact acquired based on the work it performed on behalf of Markforged—all while Boston Impact was bound by a Non-Disclosure Agreement with competitor firm Markforged—Desktop Metal knowingly aided and abetted Boston Impact's breach of his Non-Disclosure Agreement with Markforged.

305. As a purchaser of Markforged's 3D printer, Amy Buntel and her Organization Desktop Metal were subject to Markforged's Terms of Service Agreement which prohibits jeopardizing, encumbering, limiting, or interfering in any manner with Markforged's ownership of the printer's technology and software, as well as any direct or indirect modification, adaptation, disassembly, or analysis of the machine.

306. By directing Amy Buntel to purchase the Markforged 3D printer in order to obscure Markforged's ownership of the printer, and in order to modify, adapt, disassemble, and analyze the Markforged printer, and to otherwise use the Markforged printer for Desktop Metal's advancement of its own technologies without licensing any such advancements to Markforged, Ric Fulop aided and abetted Buntel's and her Organization Desktop Metal's breach of the Terms of Service Agreement.

307. Desktop Metal was aware of Markforged's Terms of Service Agreement.

308.     Desktop Metal's unlawful conduct has injured Markforged's 3D printing business, and upon information and belief, will continue to harm Markforged's business until Desktop Metal's efforts are curtailed.

309.     Desktop Metal's actions are the direct and proximate cause of Markforged's damages.

## COUNT XVII
### (Breach of the Covenant of Good Faith and Fair Dealing)
### (*Boston Impact*)

310.     The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

311.     Markforged and Boston Impact entered into valid, enforceable contracts.

312.     On information and belief, Boston Impact has, through improper means and in bad faith, used and/or disclosed Markforged's confidential and proprietary information in an effort to benefit the company Myerberg went on to co-found and serve as Chief Technology Officer of, Desktop Metal, in direct violation of the express obligations of the Non-Disclosure Agreement with Markforged.  Myerberg did not reveal that he was starting up a 3D printing company to Markforged when he worked as a beta tester there in the fall of 2014, even though he has since admitted that he was working on founding Desktop Metal since that time.  By acting through improper means and in bad faith, Jonah Myerberg and Boston Impact has deprived Markforged of the benefits owed to it under the contracts.

313.     Because of Boston Impact's breaches of its contractual obligations and its improper use and/or disclosure of Markforged's confidential and proprietary information, Markforged has suffered and will continue to suffer substantial and irreparable harm and other damages, including,

but not limited to, loss of value of trade secrets.  Markforged is entitled to injunctive relief and damages.

**COUNT XVIII**
**(Tortious Interference with Advantageous Contractual Relations)**
**(*Ric Fulop*)**

314.   The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

315.   Markforged, Boston Impact, and Myles Cooper are parties to certain Non-Disclosure and Non-Competition Agreements.  Specifically, Markforged and Boston Impact entered into a valid, enforceable Non-Disclosure Agreement in July 2014, with a term of two years, and governed by Massachusetts law, under which Boston Impact agreed that it would not use any of the confidential information gained through its work on behalf of Markforged for any purpose, other than for the benefit of Markforged.  Similarly, on June 1, 2016, Myles Cooper and Markforged entered into a valid, enforceable, Non-Competition and Non-Solicitation Agreement governed by Massachusetts law, which remained in effect for one year after Cooper's cessation of employment with Markforged.

316.   Ric Fulop willfully interfered with Markforged's contractual relations with Boston Impact and Myles Cooper by soliciting them and information from them for Desktop Metal before the expiration of the contractual period governing their respective Non-Disclosure and Non-Competition agreements, and by seeking disclosure of Markforged's trade secrets, and other confidential and proprietary information including key customer account information, key distributors, key manufacturers, and technical know-how.

317.   This solicitation constitutes tortious interference with Boston Impact's and Myles Cooper's respective agreements with Markforged.

318.    Ric Fulop was aware of Boston Impact's and Myles Cooper's Non-Disclosure and Non-Competition obligations to Markforged at the time of his solicitation.

319.    Despite Ric Fulop's knowledge of the Markforged agreements, and without privilege and in violation of the law, Ric Fulop nevertheless intentionally, with malice, and with improper motive and means, Boston Impact and Myles Cooper to breach their Non-Disclosure and Non-Competition Agreements by joining Desktop Metal and disclosing aforementioned confidential information to Markforged's competitor.

320.    As a direct and proximate cause of Ric Fulop's and Desktop Metal's actions, Markforged's 3D printing business has suffered and continues to suffer actual legal damages.

**COUNT XIX**
**(Tortious Interference with Advantageous Contractual Relations)**
**(*Desktop Metal*)**

321.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

322.    Markforged, Boston Impact, and Myles Cooper are parties to certain Non-Disclosure and Non-Competition Agreements.  Specifically, Markforged and Boston Impact entered into a valid, enforceable Non-Disclosure Agreement in July 2014, with a term of two years, and governed by Massachusetts law, under which Boston Impact agreed that it would not use any of the confidential information gained through its work performed on behalf of Markforged for any purpose, other than for the benefit of Markforged.  Similarly, on June 1, 2016, Myles Cooper and Markforged entered into a valid, enforceable, Non-Competition and Non-Solicitation Agreement governed by Massachusetts law, which remained in effect for one year after Cooper's cessation of employment with Markforged.

323.    Desktop Metal willfully interfered with Markforged's contractual relations with Boston Impact and Myles Cooper by soliciting them and information from them for Desktop Metal, before the expiration of the contractual period governing their respective Non-Disclosure and Non-Competition Agreements, and by seeking disclosure of Markforged's trade secrets, and other confidential and proprietary information including key customer account information, key distributors, key manufacturers, and technical know-how.

324.    This solicitation constitutes tortious interference with Boston Impact's and Myles Cooper's respective agreements with Markforged.

325.    Desktop Metal was aware of Boston Impact's and Myles Cooper's Non-Disclosure and Non-Competition obligations to Markforged at the time of its solicitation.

326.    Despite Desktop Metal's knowledge of the Markforged agreements, and without privilege and in violation of the law, Desktop Metal nevertheless intentionally, with malice, and with improper motive and means induced Boston Impact and Myles Cooper to breach their Non-Disclosure and Non-Competition Agreements by joining Desktop Metal and disclosing aforementioned confidential information to Markforged's competitor.

327.    As a direct and proximate cause of Desktop Metal's actions, Markforged's 3D printing business has suffered and continues to suffer actual legal damages.

## COUNT XX
### (Tortious Interference with Prospective Contractual Relations)
### (*Ric Fulop*)

328.   The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

329.   Due to Markforged's efforts to market and sell its 3D composite and metal printers, designed to fit on desktops, it had a reasonable expectation of economic advantage, and commercial and investor relationships.

330.   Upon information and belief, Ric Fulop unlawfully interfered with these prospective relationships by using confidential information gained from Ric Fulop's service on Markforged's board, and other unfair methods, to undermine Markforged's fundraising and customer targeting plans.

331.   Specifically, while still a Director at Markforged in 2015, after obtaining information about the timing and targets of Markforged's imminent fundraising round from a confidential Markforged Board deck and as a founding investor through his firm, Ric Fulop approached Markforged's list of potential investors in an attempt to divert investor funding to his competitor company, Desktop Metal.  Similarly, Ric Fulop usurped Markforged's confidential customer list and targeted those same customers at Desktop Metal.

332.   As a result of Ric Fulop's unlawful conduct, Markforged lost investments and sales. On information and belief, those lost investments and sales were directly linked to Ric Fulop's unlawful conduct.

333.   Ric Fulop's conduct was intentional, with malice, with improper motive and means, without legal justification, and designed to injure Markforged.

334.    As a direct and proximate cause of Ric Fulop's malicious and tortious conduct, Markforged continues to suffer loss, harm and irreparable damage.

### COUNT XXI
**(Tortious Interference with Prospective Contractual Relations)**
***(Desktop Metal)***

335.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

336.    Due to Markforged's efforts to market and sell its 3D composite and metal printers, designed to fit on desktops, it had a reasonable expectation of economic advantage, and commercial and investor relationships.

337.    Upon information and belief, Desktop Metal unlawfully interfered with these prospective relationships by using confidential information gained from Ric Fulop's service on Markforged's board, and other unfair methods, to undermine Markforged's fundraising and customer targeting plans.

338.    Specifically, while still a Director at Markforged in 2015, and after obtaining information about the timing and targets of Markforged's imminent fundraising round from a confidential Markforged Board deck, Ric Fulop approached Markforged's potential investors in an attempt to divert investor funding to his competitor company, Desktop Metal.  Similarly, Ric Fulop usurped Markforged's confidential customer list and targeted those same customers at Desktop Metal.

339.    As a result of Desktop Metal's unlawful conduct, Markforged lost investments and sales.  On information and belief, those lost investments and sales were directly linked to Desktop Metal's unlawful conduct.

340.    Desktop Metal's conduct was intentional, with malice, with improper motive and means, and without legal justification, and designed to injure Markforged.

341.    As a direct and proximate cause of Desktop Metal's malicious and tortious conduct, Markforged continues to suffer loss, harm and irreparable damage.

### COUNT XXII
### (Civil Conspiracy)
### (*Desktop Metal, Ric Fulop, Jonah Myerberg*)

342.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

343.    On information and belief, on or before June 2014 Ric Fulop and Jonah Myerberg agreed, developed and worked together to co-found what would become Desktop Metal, and to use confidential, proprietary, and trade secret information obtained through their respective positions at Markforged—in violation of their fiduciary duty and confidentiality agreements respectively—to advance their interest in co-founding the competitor firm Desktop Metal.

344.    Desktop Metal, Ric Fulop, and Jonah Myerberg engaged in overt actions to further this conspiracy, including but not limited to Ric Fulop using confidential information about Markforged's key potential hires to poach and recruit those individuals for Desktop Metal, and Jonah Myerberg, by and through his company Boston Impact, accepting a position as a beta tester at Markforged in order to gain access to confidential, proprietary and trade secret information about Markforged's 3D printing products, and to use that information to advance Desktop Metal's 3D printing products.

345.    On information and belief, on or about August 2015, Desktop Metal joined the agreement and work between Ric Fulop and Jonah Myerberg to continue to use and to seek to

obtain additional confidential, proprietary, and trade secret information from Markforged, in order to benefit Desktop Metal.

346.    Desktop Metal, Ric Fulop and Jonah Myerberg continued to take overt actions to advance the conspiracy by (a) obtaining information about Markforged through Ric Fulop's position as Director and investor of Markforged through September 2015; (b) soliciting Myles Cooper from Markforged to work at Desktop Metal in contravention of Cooper's Non-Competition and Non-Solicitation Agreement in order to obtain confidential, proprietary and trade secret information; (c) directing Desktop Metal's Amy Buntel, to covertly order a Markforged 3D printer for use inconsistent with, and in violation of, the terms and conditions of purchase; and (d) Ric Fulop requesting advance access to board of director presentation decks at Markforged in order to approach investors for Desktop Metal in advance of Markforged's fundraising round.

347.    Markforged was harmed as a direct and proximate result of Ric Fulop's, Jonah Myerberg's, Boston Impact's, and Desktop Metal's actions to form and advance this conspiracy, and is entitled to damages as a result of this misconduct.

## COUNT XXIII
### (Unjust Enrichment)
### (*Ric Fulop*)

348.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

349.    Based on the conduct alleged in this Complaint, Ric Fulop unjustly and knowingly enriched himself at the direct expense of Markforged.

350.    Ric Fulop's economic benefit is a direct and proximate result of his unjust and unconscionable conduct by (a) Ric Fulop using confidential, proprietary, and trade secret information from Markforged obtained through their status as director and partner of a founding

investor or beta tester of Markforged respectively, to harm Markforged and benefit Desktop Metal; (b) Ric Fulop using confidential, proprietary, and trade secret information about Markforged's planned investor funding rounds, obtained through his status as a director and investor of Markforged, to ensure that Desktop Metal approached those same investors for funding in advance of Markforged; (c) Ric Fulop using confidential, proprietary, and trade secret information about manufacturers obtained through his status as director and partner of a founding investor in Markforged, to ensure that Desktop Metal used the best manufacturers for their 3D printing models; (d) Ric Fulop using confidential, proprietary, and trade secret information about Markforged's customers and target customers obtained through his status as a director of Markforged, to target and usurp those same customers at Desktop Metal; (e) Ric Fulop's covert acquisition of a Markforged 3D printer through a Desktop Metal administrative assistant Amy Buntel for use inconsistent with, and in violation of the Terms of Service Agreement; (f) Ric Fulop inducing Markforged engineer, Myles Cooper, to work at Desktop Metal in violation of his Non-Competition, Non-Solicitation Agreement; and (g) Ric Fulop, while a member of Markforged's board, usurping Markforged's "dream hire" Rick Chin, by offering him higher compensation and a better job title at Desktop Metal.  Fulop's unjust and inequitable conduct lacked justification.

351.    But for Ric Fulop's unjust and inequitable conduct, Markforged would have obtained additional investor funding, maintained additional 3D printer customers, maintained its trade secret and confidential proprietary information, and maintained its position as the only 3D printing company offering a printer that can produce high-strength parts on a desktop, and at an accessible price point.

352.    Equity and good conscience require restitution from Ric Fulop.  Moreover, to protect Markforged's right to recover damages and to prevent the unjust enrichment of Ric Fulop,

a constructive trust should be imposed on all sums unlawfully and inequitably received by the Ric

Fulop traceable to this misconduct, including Ric Fulop's shares of Desktop Metal.

## COUNT XXIV
### (Unjust Enrichment)
### (*Jonah Myerberg, Boston Impact*)

353.    The allegations contained in the above paragraphs are hereby incorporated by

reference as if fully set forth herein.

354.    Based on the conduct alleged in this Complaint, Jonah Myerberg and his company

Boston Impact were unjustly and knowingly enriched at the direct expense of Markforged.

355.    Jonah Myerberg's and Boston Impact's economic benefit is a direct and proximate

result of their unjust and unconscionable conduct by (a) Jonah Myerberg and Boston Impact using

confidential, proprietary, and trade secret information from Markforged obtained by improper

means to harm Markforged and benefit Desktop Metal; and (b) Jonah Myerberg and Boston Impact

using confidential, proprietary, and trade secret information about manufacturers obtained through

the work performed on behalf of Markforged for the benefit of Desktop Metal and its business.

Myerberg's and Boston Impact's unjust and inequitable conduct lacked justification.

356.    But for Jonah Myerberg's and Boston Impact's unjust and inequitable conduct,

Markforged would have obtained additional investor funding, maintained additional 3D printer

customers, maintained its trade secret and confidential proprietary information, and maintained its

position as the only 3D printing company offering a printer that can produce high-strength parts

on a desktop, and at an accessible price point.

357.    Equity and good conscience require restitution from Jonah Myerberg and Boston

Impact.  Moreover, to protect Markforged's right to recover damages and to prevent the unjust

enrichment of Jonah Myerberg and Boston Impact, a constructive trust should be imposed on all

sums unlawfully and inequitably received by Jonah Myerberg traceable to this misconduct, including all his shares of Desktop Metal.

**COUNT XXV**
**(Unjust Enrichment)**
**(*Desktop Metal*)**

358.    The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

359.    Based on the conduct alleged in this Complaint, Desktop Metal unjustly and knowingly enriched itself at the direct expense of Markforged.

360.    Desktop Metal's economic benefit is a direct and proximate result of unjust and unconscionable conduct by, among other things, (a) Ric Fulop, Jonah Myerberg, Boston Impact and others using confidential, proprietary, and trade secret information from Markforged obtained through their status as Director or confidential relationships and work performed on behalf of Markforged, to harm Markforged and benefit Desktop Metal; (b) Ric Fulop using confidential, proprietary, and trade secret information about Markforged's planned investor funding rounds, obtained through his status as a director and investor of Markforged, to ensure that Desktop Metal approached those same investors for funding in advance of Markforged; (c) Ric Fulop, Jonah Myerberg, Boston Impact and others using confidential, proprietary, and trade secret information about manufacturers obtained through their status as director and investor or beta tester of Markforged respectively, to ensure that Desktop Metal used the best manufacturers for their 3D printing models; (d) Ric Fulop using confidential, proprietary, and trade secret information about Markforged's customers and target customers obtained through his status as a director of Markforged, to target and usurp those same customers at Desktop Metal; (e) Desktop Metal's covert acquisition of a Markforged 3D printer through a Desktop Metal administrative assistant

Amy Buntel for use inconsistent with, and in violation of the Terms of Service Agreement; (f) Ric Fulop's and Desktop Metal's inducing Markforged engineer, Myles Cooper, to work at Desktop Metal in violation of his Non-Competition Agreement; and (g) Ric Fulop, while a member of Markforged's Board, usurping Markforged's "dream hire" Rick Chin, by offering him higher compensation and a better job title at Desktop Metal.  Desktop Metal's unjust and inequitable conduct lacked justification.

361.    But for Desktop Metal's unjust and inequitable conduct, Markforged would have obtained additional investor funding, maintained and obtained additional 3D printer customers, maintained its trade secret and confidential proprietary information, and maintained its position as the only 3D printing company offering a printer that can produce high-strength parts on a desktop, and at an accessible price point.

362.    Equity and good conscience require restitution from Desktop Metal.  Moreover, to protect Markforged's right to recover damages and to prevent the unjust enrichment of Desktop Metal, a constructive trust should be imposed on all sums unlawfully and inequitably received by the Desktop Metal traceable to this misconduct, including all shares of Desktop Metal.

## PRAYER FOR RELIEF

**WHEREFORE**, Markforged respectfully request that this Court enter judgment in its favor and against Desktop Metal, Ric Fulop, Jonah Myerberg, Boston Impact, and Amy Buntel, as follows:

A.     A declaration in favor of Markforged and against Desktop Metal on each Counterclaim contained herein and a final judgment incorporating the same;

B.     A declaration in favor of Markforged and against Ric Fulop, Jonah Myerberg, Boston Impact, and Amy Buntel on each respective Third-Party Claim contained herein and a final judgment incorporating the same;

C.     An award of actual damages to Markforged and Mr. Parangi in an amount to be proven at trial;

D.     An award of restitution and disgorgement of ill-begotten profits;

E.     An award of three times Markforged's actual damages for Desktop Metal's, Ric Fulop's, Jonah Myerberg's, and Boston Impact's, and Amy Buntel's respective unfair trade practices;

F.     An award of punitive damages to Markforged and Mr. Parangi;

G.     The costs and expenses of the suit incurred herein;

H.     Markforged's and Mr. Parangi's attorneys' fees reasonably expended in this action;

I.     Seizure of property incorporating Markforged's trade secrets;

J.     A constructive trust over the assets and shares of Desktop Metal, including any and all shares owned by Ric Fulop, Jonah Myerberg, Boston Impact, and Amy Buntel;

K.     A license to any patents and copyrights that incorporate, are derived from, and/or improve upon the Intellectual Property of Markforged, developed using the Service(s), Products

or Software of Markforged as defined in the Terms of Service, and directed to 3D printing equipment or software, uses thereof, or printing materials thereof.

       L.     Such other and further relief as the Court deems just and appropriate under the circumstances.

<u>**JURY TRIAL DEMANDED**</u>

       Pursuant to Federal Rule of Civil Procedure 38(b), Markforged demands a trial by jury of all issues so triable.

Dated: April 20, 2018     /s/ *Harvey J. Wolkoff*
              Harvey J. Wolkoff (BBO# 532880)
              Patrick D. Curran (BBO# 568701)
              Aliki Sofis (BBO# 675777)
              Kaitlyn M. O'Connor (BBO# 687527)
              QUINN EMANUEL URQUHART &
              SULLIVAN, LLP
              111 Huntington Avenue, Suite 520
              Boston, MA 02199
              Tel: (617) 712-7100
              harveywolkoff@quinnemanuel.com
              patrickcurran@quinnemanuel.com
              alikisofis@quinnemanuel.com
              kaitlynoconnor@quinnemanuel.com

              Steven Cherny (*pro hac vice*)
              Jeremy Baldoni (*pro hac vice*)
              Brendan Cooper (*pro hac vice*)
              QUINN EMANUEL URQUHART &
              SULLIVAN, LLP
              51 Madison Avenue, 22nd Floor
              New York, NY 10010
              Tel: (212) 849-7000
              stevencherny@quinnemanuel.com
              jeremybaldoni@quinnemanuel.com
              brendancooper@quinnemanuel.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on this 20th day of

April, 2018.

/s/ *Harvey J. Wolkoff*
Harvey J. Wolkoff