# ATTACHMENT 1

```
 1                UNITED STATES DISTRICT COURT

 2                  DISTRICT OF MASSACHUSETTS

 3                              No. 1:18-cv-10524-WGY

 4

 5   DESKTOP METAL, INC.,
             Plaintiff
 6

 7   vs.

 8

 9   MARKFORGED, INC., et al,
             Defendants
10

11                        *********

12

13               For Hearing Before:
                 Judge William G. Young
14

15             Preliminary Injunction

16
                 United States District Court
17               District of Massachusetts (Boston.)
                 One Courthouse Way
18               Boston, Massachusetts 02210
                 Thursday, April 12, 2018
19

20                        *******

21

22           REPORTER: RICHARD H. ROMANOW, RPR
                   Official Court Reporter
23              United States District Court
       One Courthouse Way, Room 5510, Boston, MA 02210
24                bulldog@richromanow.com

25
```

```
 1                    A P P E A R A N C E S
 2
 3   CHARLES H. SANDERS, ESQ.
     WILLIAM J. TRACH, ESQ.
 4      Latham & Watkins, LLP
        John Hancock Tower, 27th Floor
 5      200 Clarendon Street
        Boston, Massachusetts 02116
 6      (617) 948-6022
        E-mail: Charles.sanders@lw.com
 7      For Plaintiff
 8
 9   STEVEN CHERNY, ESQ.
     HARVEY J. WOLKOFF, ESQ.
10   JEREMY BALDONI, ESQ.
     ALIKI SOFIS, ESQ.
11   PATRICK D. CURRAN, ESQ.
        Quinn Emanuel Urquhart & Sullivan, LLP
12      51 Madison Avenue, Floor 22
        New York, New York 10010
13      (212) 849-7000
        Email: Stevencherny@quinnemanuel.com
14      For Defendant Markforged, Inc.
15
16   ERIC G. J. KAVIAR, ESQ.
        Burns & Levinson, LLP
17      125 Summer Street
        Boston, Massachusetts 02110
18      (617) 345-3000
        Email: Ekaviar@burnslev.com
19      For Defendant Matiu Parangi
20
21
22
23
24
25
```

```
 1                 P R O C E E D I N G S
 2                 (Begins, 10:00 a.m.)
 3                 THE CLERK:  Civil Matter 18-10524, Desktop
 4    Metal, Inc. versus Markforged, Inc.
 5                 THE COURT:  Well good morning, counsel.  Would
 6    counsel identify themselves.
 7                 MR. SANDERS:  Good morning, your Honor,
 8    Charles Sanders on behalf of the plaintiff, Desktop
 9    Metal, and with me today is my partner, BJ Trach, and
10    with us is James Kahoe, General Counsel of Desktop
11    Metal.
12                 THE COURT:  And with the defense?
13                 MR. WOLKOFF:  Good morning, your Honor, Harvey
14    Wolkoff from Quinn Emanuel, and we're here on behalf of
15    the defendant, Markforged.
16                 MR. CHERNY:  Steve Cherny from Quinn Emanuel.
17                 MR. CURRAN:  Patrick Curran from Quinn
18    Emanuel.
19                 MS. SOFIS:  Aliki Sofis from Quinn Emanuel.
20    Good morning, your Honor.
21                 THE COURT:  Well good morning.
22                 MR. BALDONI:  Jeremy Baldoni from Quinn
23    Emanuel.
24                 THE COURT:  Well good morning.
25                 MR. KAVIAR:  And good morning, your Honor, my
```

1  name is Eric Kaviar, for the record, and I'm from Burns
2  & Levinson, and I'm representing the defendant,
3  Mr. Parangi.
4           THE COURT: Thank you.
5      Well, the matter is here on the plaintiff's motion
6  for a preliminary injunction. Let me ask the plaintiff
7  a question here.
8      Is this a jury case?
9           MR. SANDERS: Your Honor, we're familiar with
10 your practice of commonly collapsing this into a trial
11 and if we could get a faster trial, um, before the bench
12 we'd --
13          THE COURT: It really makes no -- understand
14 there's no tactical advantage, though you are familiar
15 with my practice, and I ask it simply for scheduling
16 reasons, that's all. I can impanel juries on Mondays.
17 That's how the Court has agreed. All I'm asking, um --
18 I don't see how it advantages or disadvantages, and it
19 is completely neutral, as far as I approach it. I'm not
20 looking favorably on the choice. So you make what you
21 think is the best choice for your client.
22     So is it?
23          MR. SANDERS: If it would get us a speedier
24 trial, your Honor, we'd be willing to, um --
25          THE COURT: Well, that depends. So let's

```
 1   talk.
 2          What do you folks say, jury or nonjury?
 3              MR. WOLKOFF:  Jury, your Honor.
 4              THE COURT:  Very well.  Well that decides that
 5   question.
 6          All right, he is familiar with my practice and I
 7   do combine further hearing on the motion for a
 8   preliminary injunction with trial on the merits under
 9   Federal Rule of Civil Procedure 65(a)(1).
10          When do you want to go to trial?
11              MR. SANDERS:  Your Honor, we'd like to go to
12   trial as quickly as we can.
13              THE COURT:  Monday?
14              MR. SANDERS:  Um, your Honor, um --
15              THE COURT:  You have no idea how happy it
16   makes me to say that.
17              (Laughter.)
18              THE COURT:  Though I can understand you.
19          Judge Wyzanski, who I hold in enormous high
20   regard, I've seen him say that, only he said, "Call your
21   first witness."
22              (Laughter.)
23              THE COURT:  All right.  Look, in the real
24   world, when do you want to go to trial?  Assuming I can
25   accommodate you and I'm going to try.
```

1           MR. SANDERS:  A trial date in May, your Honor,
2    would be great for us.
3           THE COURT:  In May.
4      What do you say?
5           MR. CHERNY:  Although we appreciate it --
6    Steve Cherny for the defendant.  We appreciate the
7    plaintiff's enthusiasm --
8           THE COURT:  It's not just enthusiasm, they
9    think that advantages them.
10     What do you say?
11          MR. CHERNY:  Well I think their enthusiasm is
12   for an advantage.
13          THE COURT:  But one can hardly fault that.
14          MR. CHERNY:  One could fault it.  But it's not
15   exactly, um, a --
16          THE COURT:  Well, how long do you need?
17          MR. CHERNY:  We'd like 6 months.  And the
18   reason is --
19          THE COURT:  No, you're not getting 6 months.
20          MR. CHERNY:  I --
21          THE COURT:  Well, I'll hear you, but it is
22   important that you understand my mindset.
23     They've come in here and they're seeking immediate
24   equitable relief, immediate relief, relief that
25   theoretically I could give today.  Now unlike the usual

```
 1   practice -- I know this is a patent case and I in no way
 2   intend to alight over the necessary complexities in a
 3   patent case, but it seems to me that courts exist to
 4   serve not the lawyers or the lawyers' convenience, but
 5   to serve the litigants.  The greatest cost driver of
 6   patent litigation -- indeed of all litigation in the
 7   United States is discovery, and if we get your joint
 8   cooperation on discovery, and I will enforce it, 6
 9   months seems -- these are not small firms.  You have
10   many associates and the great move is to involve these
11   associates in key roles.  So that's why I'm not happy
12   with 6 months.
13        What do you really want?
14            MR. CHERNY:  May I be heard a little bit about
15   some of the specifics of this case before we --
16            THE COURT:  Of course you may.
17            MR. CHERNY:  And, your Honor, I understand and
18   sympathize with what you're saying in terms of the
19   drivers of costs.
20        This case is a little bit different than the
21   average patent case.  First of all, you're starting off
22   that there are nine separate inventors on these two
23   patents, a little bit more than usual.  Also, much of
24   the prior art that we've been able to identify in the
25   short time this case has been pending deals with third
```

1   parties both inside and outside the United States.  And
2   so that complicates things.
3         Then we are going to be bringing our own claims
4   against the plaintiff relating to trade secret
5   misappropriation, perhaps breach of fiduciary duty,
6   because their CEO was on our board, and we've identified
7   a number of issues that we're going to raise separately
8   in our own claims.  And so we're not trying to just say,
9   "This is a patent infringement case, therefore we should
10  have the work," there are a lot of facts here and we're
11  just concerned about having time to develop the record.
12            THE COURT:  Well, of course you are, and
13  that's what they all say in every case.
14        Now let me tell you the alternative.
15            MR. CHERNY:  Okay.
16            THE COURT:  The alternative is -- though I've
17  made my ruling, the alternative -- I've looked at these
18  papers, is to entertain their motion for a preliminary
19  injunction.  Now I'm familiar with preliminary
20  injunctions, I know the four-part test, and here's how
21  we'll do it.  Since you wanted a jury, we'll start
22  Monday and they can start putting on evidence.
23            MR. CHERNY:  Understood, your Honor.
24            THE COURT:  I'll treat the jury as advisory
25  and we'll go as long as it takes for me to decide

1    whether to give a preliminary injunction, and I will get
2    the advice of the jury on the merits.  We will
3    entertain -- you're talking about prior art.  I see.  In
4    addition to your potential counterclaims, I take it that
5    you will challenge the validity of these --
6              MR. CHERNY:  Correct, your Honor.
7              THE COURT:  And of course you have that right.
8    My practice is to make you go first as to that, because
9    that's by clear and convincing evidence --
10             MR. CHERNY:  Understand, your Honor.
11             THE COURT:  -- and then we do --
12        So what I need the jury for is only on the
13   reasonably likelihood of success, but we're going to
14   have a trial on that because I don't trust affidavits, I
15   don't trust theirs, I won't trust yours.  I have written
16   elsewhere that "Affidavits are the Potemkin Villages of
17   American litigation, all lawyer-created flash and no
18   interior architecture."
19             MR. CHERNY:  Can I --
20             THE COURT:  I'm interested in -- I'm
21   interested in cross-examination.  I'm interested in
22   people under oath.  I'm interested in evidence.
23        Now is that what you prefer?  Because I can't just
24   say "I'm shutting the courthouse doors, come back in 6
25   months, and then we'll see," having collapsed their

```
 1    arguable right to immediate relief.
 2          Which do you prefer?
 3             MR. CHERNY:  Your Honor, we prefer a trial
 4    over the PI and the, um, Potemkin Village of
 5    declarations, we'd much rather have a trial with
 6    witnesses and get the whole thing resolved.
 7         We also -- I understand your view about 6 months
 8    being too long and --
 9             THE COURT:  I'll tell you what I'm thinking,
10    I'm thinking July.
11             MR. CHERNY:  Would it be possible in August,
12    your Honor?
13             THE COURT:  No.
14             MR. CHERNY:  Well then July it is.
15             THE COURT:  July it is.
16             MR. SANDERS:  Your Honor, we do have some
17    conflicts in July, we were hoping that we could get a
18    trial sooner than June.
19             THE COURT:  You can't possibly have conflicts
20    in July, you are an enormous firm, there will be
21    battalions of lawyers deployed on this, and of course
22    your clients who claim that they are being irreparably
23    injured by this misconduct, they will make them
24    available whenever either the Court or the other side
25    wants them.
```

```
 1         Sir?
 2              MR. KAVIAR:  Your Honor, um, I'm not at a firm
 3   currently where there's an army of associates I can
 4   employ in this case, you're looking at an army of one
 5   for my individual claim, Mr. Parangi.
 6              THE COURT:  All right.
 7              MR. KAVIAR:  And frankly, your Honor, I'm not
 8   prepared to go to trial on this case in three months.
 9              THE COURT:  Look, recognizing that you're
10   representing an individual, um, they'll help you out.
11              MR. KAVIAR:  I'm not sure, your Honor.
12   There's seven claims aimed against him, three of which
13   are not aimed against a corporation.  We're not a part
14   of the patent case, your Honor --
15              THE COURT:  I can -- I'll have to sort that
16   out at the time of the final pretrial conference.
17              MR. KAVIAR:  If your Honor will --
18              THE COURT:  It's on the running trial list for
19   July.
20              Now let's talk about preliminary matters.  First
21   of all, the complete discovery by agreement, both sides
22   -- I'm fascinated that there may be a trade secret
23   counterclaim here, and if there is, um, I want the trade
24   secrets, if they can be described in a sealed ruling --
25   a sealed filing, but I want them described to the level
```

of the exquisite detail of a patent claim.  Now I'm not going anywhere between now and July, so I will ride herd on this, but I expect complete agreement in working this case up to trial.  I expect you, by the end of next week -- I'm looking at the defense now, to have a responsive pleading here, and we'll go from there.  It's on the running trial list for July.

If there are parts of it that it makes sense -- well, I don't want to invite this, but makes sense to spin off, I will consider that, but of course the entire goal here is, as Rule 1 says, the "just, speedy, and inexpensive resolution of every claim."  So that's what we're going to try to do.

Is there something else I should do this morning?  We'll start with the plaintiff.

MR. SANDERS:  Your Honor, just a question about -- on the July trial list, due to the July 4th holiday, when does that start?

THE COURT:  Um, well the earliest that, um -- well, we obviously don't sit on the 4th.  I don't know my own schedule in July.  Let me -- that's a very good question.  Let me talk to the Clerk a minute.

(Pause.)

THE COURT:  All right, that's an excellent question.

1     We would not start before the 9th.  Where there's
2  one criminal case, as we look at it now, um, in front of
3  you, the great likelihood, since over 90 percent will
4  plead out, is that it won't be there.  I have one
5  criminal case set at the end of the month.  But I would
6  not call you before the 9th.
7          MR. SANDERS:  Thank you, your Honor.
8          MR. CHERNY:  Thank you, your Honor.
9          THE COURT:  Other questions?  Those practical
10 questions are most helpful.
11     Any other questions?  Yes, sir.
12         MR. KAVIAR:  Your Honor, I'm appearing here
13 because we had notice of a complaint.  I don't think we
14 were officially served.  There's been no return notice.
15 I'm a little confused in how this would fit into my
16 client's, um, sort of situation in dealing with when to
17 answer and respond, as everything else is moving on an
18 expedited pace.  I've noted two issues in looking at the
19 complaint that I'd like to call out for attention and
20 perhaps get agreement from counsel here and if not your
21 advice.
22     The first I think is pretty minor.  There's no NDA
23 attached to the complaint.  We'd request, in this
24 expedited procedure, to immediately receive a copy of
25 the NDA that you alleged to be breached.

1        The second that strikes me is there's absolutely
2   no allegation in here of how the trade secret was
3   actually stolen, it was merely alleged that it was
4   downloaded during an ordinary course of work activities
5   on a computer.  So under normal circumstances I may --
6   and I haven't even had a chance to talk to my client
7   about this, but under normal circumstances I would
8   consider at least a motion for a more definite
9   statement, if not a motion to dismiss on that basis.
10  And so I would request an amended pleading on that
11  point.
12       And secondly, your Honor, I've also noticed
13  there's absolutely no allegation that supports they took
14  any reasonable measures to protect the trade secrets.  I
15  am familiar with startups in Cambridge, some of them
16  have been clients of mine, sometimes they have open
17  doors where people can just walk in and grab a cup of
18  coffee and --
19            THE COURT:  You're slipping into argument now.
20            MR. KAVIAR:  My apologies, your Honor.
21            THE COURT:  And that's quite all right, and,
22  believe me, I respect your position.
23       Here's -- I'm not in the -- I have to deal with
24  cases and controversies, so advice is not my strong
25  suit.

1    None of the Rules of Civil Procedure are suspended
2    and of course I expect, if they're suing on a
3    nondisclosure agreement, that you will get a copy of
4    that agreement, they will have it to you forthwith, that
5    means by the close of business today.
6         With respect to the particulars, I'm certainly not
7    giving -- making orders from the bench.  You make a
8    motion and I will act on it.  Any motions to dismiss,
9    for more definite statement, for summary judgment --
10   anything, the Court -- in engaging in this expedited
11   approach I am at least sincere, I'm trying to keep your
12   costs down and get to a fair resolution.  It isn't a
13   trick.  I'm not trying to avoid discharging the judicial
14   obligation.  And I'm not going anywhere.  So I'll act on
15   these things promptly.
16        Naturally if the case were to settle, in whole or
17   in part, um, because of the threat of trial, that's a
18   good thing, that's, um -- so long as it's a fair
19   settlement.
20        So there's my answer.
21             MR. KAVIAR:  Your Honor, my apologies if in
22   any way I suggested --
23             THE COURT:  No apology's necessary.
24             MR. KAVIAR:  -- I of course do not doubt your
25   sincerity and I'm well familiar with your practices,

1   your Honor.
2           I guess the only question I have that remains is,
3   due to the nature of this, do I still get to sort of
4   agree with them on a date for an answer and/or a
5   response to the complaint or will you be setting a date
6   for that?
7               THE COURT:  No, I try -- the more you can do
8   by agreement, the better.
9               MR. KAVIAR:  Okay, thank you, your Honor.
10              THE COURT:  All right.
11              MR. WOLKOFF:  Will your Honor be setting a
12  date for the final pretrial conference?
13              THE COURT:  It will be approximately one month
14  before the trial, so it would be early June.  We'll give
15  you notice.
16              MR. WOLKOFF:  You'll give us notice of that?
17              THE COURT:  Right, and we'll give you
18  sufficient notice so you can make the preparation that
19  needs to be made.
20              MR. WOLKOFF:  Your Honor will have dates in
21  there about proposed jury instructions and voir dire and
22  things of that nature?
23              THE COURT:  Correct, we're -- I'm glad to hear
24  you think about the trial.
25          You understand -- again you're all familiar with

1  my practices.  We'll impanel 12.  I enjoy receiving
2  motions in limine.  I rarely rule on them unless it's
3  necessary to govern the openings.  It may be that you
4  people will want to work out some of this jury and some
5  of it jury-waived.  It does not affect the schedule, but
6  of course under *Dairy Queen* it affects the order in
7  which we address things.  You people know more about
8  this litigation than I, so I will be somewhat dependent
9  on you, as in any case.  But that's a good question.
10          Anything else?
11              (Silence.)
12              THE COURT:  All right, that's the order of the
13 Court.  And we'll recess.
14              THE CLERK:  All rise.
15              (Ends, 10:20 a.m.)

```
 1                    C E R T I F I C A T E

 2

 3

 4        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

 5   hereby certify that the forgoing transcript of the

 6   record is a true and accurate transcription of my

 7   stenographic notes, before Judge William G. Young, on

 8   Thursday, April 12, 2018, to the best of my skill and

 9   ability.

10

11

12

13
     /s/ Richard H. Romanow 04-12-18
14   _____
     RICHARD H. ROMANOW   Date
15

16

17

18

19

20

21

22

23

24

25
```