# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DESKTOP METAL, INC., <br><br> *Plaintiff and* <br> *Counterclaim Defendant,* <br><br> v. <br><br> MARKFORGED, INC. AND MATIU PARANGI, <br><br> *Defendants and* <br> *Counterclaim Plaintiff* <br> *(Markforged, Inc.),* <br><br> v. <br><br> RICARDO FULOP, JONAH MYERBERG, BOSTON IMPACT LLC, and AMY BUNTEL, <br><br> *Third-Party Defendants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br>   **Civil Action No. 1:18-CV-10524-WGY** <br><br><br>   **FILED UNDER SEAL** |

**MARKFORGED, INC.'S OPPOSITION TO DESKTOP METAL'S MOTION TO STRIKE MARKFORGED, INC.'S TRADE SECRET DISCLOSURES**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND............................................................................................. 3

LEGAL STANDARD........................................................................................................ 4

ARGUMENT .................................................................................................................... 4

I.      Rule 12(f) Precludes Striking The Disclosures, Because They Are Neither Defenses Nor Redundant, Immaterial, Impertinent, Or Scandalous Pleadings ........................................ 5

II.     Markforged's Has Described Its Trade Secrets In The "Exquisite Detail Of A Patent Claim" ................................................................................................................................ 7

CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Assets Recovery Ctr. Invs., LLC v. Smith*,
   2014 WL 3525011 (E.D.N.Y. Mar. 12, 2014),
   *report and recommendation adopted*, 2014 WL 3528460 (E.D.N.Y. July 15, 2014) ............... 7

*Blake v. Professional Coin Grading Service*,
   898 F. Supp. 2d 365 (D. Mass. 2012) .................................................................................... 2

*Boreri v. Fiat S.p.A.*,
   763 F.2d 17 (1st Cir. 1985) ................................................................................................... 4

*Bose Corp. v. Lightspeed Aviation, Inc.*,
   691 F. Supp. 2d 275 (D. Mass. 2010) ............................................................................... 4, 6

*Bryan Corp v. Chemwerth, Inc.*,
   2013 WL 6489785 (D. Mass. Dec. 9, 2013) ......................................................................... 5

*CPI Card Grp.–Colo., Inc. v. Lehouck*,
   2014 WL 5025356 (D. Mass. Oct. 8, 2014) .......................................................................... 9

*DeVona v. Zeitels*,
   2014 WL 972145 (D. Mass. Mar. 12, 2014) ......................................................................... 4

*Drewett v. Aetna Cas. & Sur. Co.*,
   405 F. Supp. 877 (W.D. La. 1975) ....................................................................................... 5

*Iconics, Inc. v. Massaro*,
   266 F. Supp. 3d 449 (D. Mass. 2017) ................................................................................. 11

*IDX Sys. Corp. v. Epic Sys. Corp.*,
   285 F.3d 581 (7th Cir. 2002) .............................................................................................. 11

*J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*,
   260 N.E.2d 723 (Mass. 1970) .............................................................................................. 9

*Manning v. Bos. Med. Ctr. Corp.*,
   725 F.3d 34 (1st Cir. 2013) ................................................................................................... 4

*McCormick v. Festiva Dev. Grp., LLC*,
   269 F.R.D. 59 (D. Me. 2010) ............................................................................................... 7

*N. Atl. Instruments, Inc. v. Haber*,
   188 F.3d 38 (2d Cir. 1999) ................................................................................................... 9

*Palomar Med. Techs., Inc. v. Candela Corp.*,
    2011 WL 1576580 (D. Mass. Apr. 26, 2011) .......................................................... 2

*Staffbridge, Inc. v. Gary D. Nelson Assocs., Inc.*,
    2004 WL 1429935 (Mass. Super. June 11, 2004).................................................... 2

*United States v. Mendoza-Acevedo*,
    950 F.2d 1 (1st Cir. 1991)....................................................................................... 4

*Waymo LLC v. Uber Techs., Inc.*,
    2017 WL 5000352 (N.D. Cal. Nov. 2, 2017) .......................................................... 2

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) .................................................................................. 6

### Statutes

18 U.S.C. § 1836................................................................................................................ 3

18 U.S.C. § 1839................................................................................................................ 9

### Rules

Fed. R. Civ. P. 7................................................................................................................ 1

Fed. R. Civ. P. 12.............................................................................................................. 4

### Treatises

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1380 (3d
    ed. 2011) ................................................................................................................. 4

### Additional Authorities

*Markforged Q&A: Power Consumption* (May 19, 2017)
    https://support.markforged.com/hc/en-us/articles/207304750-Power Consumption
    (last visited May 10, 2018) .................................................................................. 12

## **INTRODUCTION**

Desktop Metal brought the wrong motion, against the wrong pleading, based on misrepresentations of Markforged's Initial and Supplemental Identification of Trade Secrets (the "Disclosures").  Markforged filed its Initial Identification of Trade Secrets at the direction of the Court to describe in detail the full list of trade secrets that Markforged alleges to have been misappropriated.  Markforged then filed its Supplemental Identification of Trade Secrets in response to this Court's further order.  Between its 243-paragraph counterclaim and extensive Disclosures, Markforged has now pleaded its misappropriation claims and described the trade secrets at issue in the "exquisite detail" this Court ordered—indeed, in far greater detail than Desktop Metal has described its own alleged trade secrets.  Desktop Metal's motion to strike should be denied for several reasons.

First, the Court should deny the motion for the simple, threshold reason that Rule 12(f) does not permit the relief Desktop Metal seeks.  Rule 12(f)'s sole purpose is to allow, in rare circumstances, striking an "insufficient defense" or "redundant, immaterial, impertinent, or scandalous matter" in a ***pleading***.  The Disclosures at issue are not a pleading under Rule 7 and do not plead a legal defense at all:  they are court-ordered statements providing detail into the basis of Markforged's offensive counterclaim and third party claims.  The motion's arguments about the standard for sufficiency of pleading a defense are therefore irrelevant.  And Desktop Metal does not even argue that the Disclosures are in any way redundant, immaterial, impertinent, or scandalous.  Rule 12(f)'s inapplicability to the Disclosures here alone suffices to put an end to Desktop Metal's motion.

Second, Desktop Metal's criticisms of the Disclosures have no merit.  Indeed, all but one of the cases Desktop Metal relies on concern the admissibility and adequacy of evidence ***on summary judgment***, meaning that the trade secrets in those cases ***satisfied the relevant standard***

*and survived dismissal* at the pleading stage. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5000352, at *2 (N.D. Cal. Nov. 2, 2017) (ruling on summary judgment, after evidence was presented, that Waymo's trade secret was overbroad); *Staffbridge, Inc. v. Gary D. Nelson Assocs., Inc.*, 2004 WL 1429935, at *4 (Mass. Super. June 11, 2004) (ruling at summary judgment that trade secret disclosures were insufficient but allowing plaintiffs to submit "a second designation" describing them with the detail required by the court); *Palomar Med. Techs., Inc. v. Candela Corp.*, 2011 WL 1576580, at *4 (D. Mass. Apr. 26, 2011) (discussing the evidentiary question of whether an expert opinion lacks foundation, not the adequacy of a party's trade secret disclosure).  While the remaining case, *Blake v. Professional Coin Grading Service*, 898 F. Supp. 2d 365 (D. Mass. 2012), does provide the relevant standard for pleading a trade secret claim, that case confirms that Markforged has adequately pled its trade secret misappropriation claims, as explained in detail in Markforged's Opposition to Desktop Metal's Motion to Dismiss (Dkt. 132).

Here, Desktop Metal faults Markforged's Disclosures on the ground that Markforged "does not know" with certainty exactly what "information [the counterclaim-defendants] were exposed to, when, and how." But that is not the standard that Markforged must meet at this stage of the case.  As is the case with most trade secret plaintiffs, Markforged does not (and cannot) know the specific details of Desktop Metal and the Third Party Defendant's misappropriation at the beginning of the case for the simple reason that Desktop Metal and the Third Party Defendants went to great lengths to hide their misdeeds.  It is now for discovery and trial to uncover exactly what was taken and how the theft occurred.  At this stage of the case, before discovery is complete, Markforged only need disclose a full list of its trade secrets in "exquisite detail," as instructed by the Court.  Markforged has done this, and the Court should deny Desktop Metal's motion to strike.

## **FACTUAL BACKGROUND**

On April 12, 2018, at a hearing on Desktop Metal's request for preliminary injunction, Markforged notified this Court, Desktop Metal, and the Third-Party Defendants that it would be filing counterclaims "relating to trade secret misappropriation."  Ex. D (April 12, 2018 Hr'g Tr.) at 8:3–5.  The Court stated that it was "fascinated that there may be a trade secret counterclaim" and instructed Markforged to describe its trade secrets in "a sealed filing" and "to the level of the exquisite detail of a patent claim."  *Id.* at 11:22–12:1.  The Court set trial for July.  *Id.* at 12:1–7.

Markforged filed counterclaims and a third-party complaint (Dkt. No. 45, "Counterclaims") against Desktop Metal.  Markforged alleges that Desktop Metal, Ricardo Fulop, Jonah Myerberg, and Boston Impact misappropriated Markforged's trade secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, and Massachusetts law.  (*Id.* ¶¶ 186–225.)  Markforged alleged that "[a]s a founding investor through his firm and one of only three members of Markforged's Board of Directors, Fulop was entrusted with full and unfettered access to Markforged's confidential and proprietary information," (*id.* ¶ 147), and that "[o]ne of the important steps that Fulop took to surreptitiously obtain key technical know-how from Markforged was to introduce one of his long-time friends and business partners, Jonah Myerberg, to Markforged, and to secure a position for Myerberg as a 'beta tester' where he would have access to Markforged's technical know-how and other proprietary information," (*id.* ¶ 157).  Markforged alleged that, "Desktop Metal used Markforged proprietary information when filing patent applications for Desktop Metal."  (*Id.* ¶ 166.)

On April 25, 2018, Markforged provided a list identifying the information to which it claimed trade secret protection.  *See* Ex. A.  On May 3, 2018, Judge Young explained to the parties that their trade secret disclosures should not "just list[] a technique for this, a technique for that, a technique for something else," but should "lay[] out as to metes and bounds with the exquisite

3

detail of a patent claim" their trade secrets.  Ex. E (May 3, 2018 Hr'g Tr.) at 9:2–3, 10-12.  On

May 9, 2018, Markforged supplemented its disclosures in accordance with the Court's instruction.

*Id.* at 9:10–12; *see* Ex. E.

## **LEGAL STANDARD**

Motions to strike under Rule 12(f) "are narrow in scope, disfavored in practice, and not

calculated readily to invoke the court's discretion."  *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir.

1985).  The rule allows that "[t]he court may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  However,

"striking a portion of the pleading is a drastic remedy" and "is often sought by the movant simply

as a dilatory or harassing tactic."  *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)

(quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380 (3d

ed. 2011)); *see also DeVona v. Zeitels*, 2014 WL 972145, at *3 (D. Mass. Mar. 12, 2014) (striking

a counterclaim pleading is an "extraordinary remedy"); *Bose Corp. v. Lightspeed Aviation, Inc.*,

691 F. Supp. 2d 275, 278 (D. Mass. 2010) (J. Young) (motions to strike should be granted only

"when it is beyond cavil that the defendant could not prevail on [their defenses]" (internal

quotations omitted) (alteration in original)).  "[R]elief under 12(f) should be granted only upon

showing of cause and prejudice."  *United States v. Mendoza-Acevedo*, 950 F.2d 1, 3 (1st Cir. 1991).

## **ARGUMENT**

Desktop Metal's motion to strike Markforged's trade secret Disclosures must be denied as

procedurally deficient, as Rule 12(f) is not a valid mechanism to challenge either the pleading

adequacy of a counterclaim or the sufficiency of a trade secret disclosure.  Even if it were,

Markforged's trade secret Disclosures are more than sufficient to state a misappropriation claim

and satisfy the standard set forth by the Court at the recent hearings.

I.      **Rule 12(f) Precludes Striking The Disclosures, Because They Are Neither Defenses Nor Redundant, Immaterial, Impertinent, Or Scandalous Pleadings**

Where a Rule 12(f) motion "is directed toward a specific allegation in the complaint" that is "neither an insufficient defense nor a redundant, immaterial, impertinent or scandalous allegation, … that particular procedural device is inappropriate." *Drewett v. Aetna Cas. & Sur. Co.*, 405 F. Supp. 877, 878 (W.D. La. 1975). Desktop Metal fails—indeed, does not even try—to meet the requirements for a motion to strike under Rule 12(f) or to show the prejudice required to prevail. This deficiency alone requires denial of its motion.

Desktop Metal's motion does not challenge a defense in a pleading, but trade secret disclosures filed in relation to Markforged's asserted counterclaims. To see this, one need look no further than the first page of the initial challenged Disclosure, which states that they identify "categories of information to which [Markforged] *claims* trade secret protection." Ex. A at 1 (emphasis added). The Court is well aware that that the Disclosures relate to counterclaims, not defenses, because it ordered Markforged to file the Disclosures in support of those counterclaims. *See* Ex. D (April 12, 2018 Hr'g Tr.) at 11:22–24. ("I'm fascinated that there may be a trade secret counterclaim here[.]… I want the trade secrets … described."). Rule 12(f)'s pleading-sufficiency standard applies solely to challenges to a *defense*, not a counterclaim or supporting pleadings.[1]

Desktop Metal's motion also fails to challenge the disclosures under any of the four remaining grounds for striking under Rule 12(f)—if the pleading is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P 12(f). Its memorandum of law does not even use any of those four words ***except*** in reciting the legal standard Desktop Metal is required (and fails) to

---

[1]     Desktop Metal's reliance (Mem. at 2) on the *Twombly/Iqbal* pleading standard is thus misguided. The sole case Desktop Metal cites on this is *Bryan Corp v. Chemwerth, Inc.*, an inapposite case concerning a Rule 12(f) motion "to strike [an] Affirmative Defense." 2013 WL 6489785, at *1 (D. Mass. Dec. 9, 2013). Desktop Metal does not move to strike any defense here.

meet.  (Dkt. 106, at 2, "Mem.").  Desktop Metal's arguments as to whether the Disclosures "suffice under the case law" on the merits do nothing to show redundancy, immateriality, impertinence, or scandal.  *Id.* at 3.  Notably, every case cited by Desktop Metal against the Disclosures (*id.*) arises from dismissal (*Blake*) and for summary judgment (*Waymo*, *Staffbriedge*, *Palomar*) motions, not Rule 12(f) motions.

This motion is indistinguishable from *Whittlestone, Inc. v. Handi-Craft Co.*, in which the Court of Appeals held that a Rule 12(f) motion must be denied if the challenged pleading was "clearly not an insufficient defense," was not "redundant, as it [did] not appear anywhere else in the complaint," was "not immaterial, because whether the[] damages [were] recoverable relate[d] directly to plaintiff's underlying claim for relief," and was "not impertinent because whether the[] damages [were] recoverable pertain[ed] directly to the harm being alleged," and was "not scandalous."  618 F.3d 970, 974 (9th Cir. 2010) (reversing grant of Rule 12(f) motion).  Markforged's trade secret allegations and Disclosures do not fall into any of the five categories listed under Rule 12(f)—they are not defenses, and they are not redundant, immaterial, impertinent, or scandalous.  That alone dooms this motion.[2]

Further, Desktop Metal can show no prejudice from Markforged's trade secret Disclosures, and a Rule 12(f) motion is "not granted in the absence of a showing of prejudice."  *Bose Corp.*,

---

[2]  Rule 12(f) may not be used to challenge the sufficiency of pleadings outside its narrow scope of applicability for the important reason that Rule 12(f) orders to strike are reviewed for "abuse of discretion," whereas "12(b)(6) motions are reviewed *de novo*," so "if a party … seek[s] dismissal of a pleading under Rule 12(f), the district court's action would be subject to a different standard of review than if the district court had adjudicated the same substantive action under Rule 12(b)(6)," a result that "does not make sense."  *Whittlestone*, 618 F.3d at 975.  Further, allowing parties to challenge pleading adequacy under Rule 12(f), as Desktop Metal seeks to do here, "would … creat[e] redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose."  *Id.*  This Court should not entertain this improper motion.

691 F. Supp. 2d at 278.  Desktop Metal merely laments that, in its view, it should not have "[t]he burden" of evaluating the "trade secrets it will be accused at trial of having misappropriated." (Mem. at 3).  Bemoaning the burden of litigating a lawsuit (brought at Desktop Metal's own instigation) and defending properly pleaded claims is not legally cognizable prejudice.  *See McCormick v. Festiva Dev. Grp., LLC*, 269 F.R.D. 59, 67 (D. Me. 2010).  As a counterclaim defendant, Desktop Metal should, like Markforged, develop its case as any litigant must.

Desktop Metal has already moved to dismiss certain of Markforged's counterclaims and can make what arguments it will regarding pleading sufficiency there, as "Rule 12(b)(6) is the appropriate Rule when moving to dismiss a claim or counterclaim."  *Assets Recovery Ctr. Invs., LLC v. Smith*, 2014 WL 3525011, at *10 (E.D.N.Y. Mar. 12, 2014), *report and recommendation adopted*, 2014 WL 3528460 (E.D.N.Y. July 15, 2014).  Its attempt instead to strike Disclosures filed at this Court's own instruction, based on arguments over the merits of Markforged's counterclaims, is unsupportable under Rule 12(f)'s standards and should be denied.

## II.   Markforged's Has Described Its Trade Secrets In The "Exquisite Detail Of A Patent Claim"

Unlike Desktop Metal, Markforged took this Court's direction to describe the misappropriated trade secrets in "exquisite detail" seriously, serving revised trade secret Disclosures on May 9, 2018 that give Desktop Metal precisely what this Court has instructed—a detailed roadmap to identify, and defend against, Markforged's claims of trade secret misappropriation.  For example:

- Trade Secret 8 describes "Markforged's design of a print head assembly with a **pre**-crimping configuration" and includes an image giving precise details of the Markforged's print head design:



Ex. B at 2.  It is difficult to lay out the metes and bounds of a trade secret with more detail than a schematic drawing.

• Trade Secret 23 is defined as "Markforged's use of urethane with a Shore A hardness of 50A, 60A, or 70A as the compliant material on the exterior circumference of the drive wheels."  Once again, this description gives this Court and Desktop Metal precise guidance on the secret claimed by defining the material used, the specifications of the material, and the portion of Markforged's 3D printer where the material is used.  *Id.* at 3.

• Trade Secret 52 claims "Markforged's use of 100 watts as the maximum power consumption ('power budget') for all printer components, excluding the heating elements.  The maximum power consumption of individual components within the device is designed to ensure the device will operate as intended with a given amount of power supplied to the device.  The budget reflects internal testing and development conducted to ensure that the printer could use a cost-effective external 24-volt DC power supply (approximately 150 watts) and draw power from a standard 120-volt outlet."  This entry not only describes the claimed secret in detail, it also explains precisely why it is economically useful—because designing a professional-grade 3D printer that can nonetheless work on a standard outlet is technologically challenging and economically advantageous.  *Id.* at 7.

• Trade Secret 58 is defined as Markforged's customers, and incorporates a list of 60 specific companies and individuals that purchased Markforged 3D printers.  *Id.* at 7, 12–13.  Customer lists are a quintessential trade secret, and Markforged has defined this list in exquisite detail.  *See Bruno Int'l*, 2015 WL 5447652, at *12 ("[S]pecific customer lists and pricing information at issue here can constitute trade secrets where the information provides its holder with a competitive advantage.").

These are just four examples of the exquisite detail provided in the Disclosures.  Each and

every other trade secret disclosed by Markforged is explained in exquisite detail, indeed with far

more precision than the trade secret in *Blake* that this Court allowed to proceed past a motion to dismiss.  The surviving trade secret in *Blake* was a "marketing plan to test the market and implement the plus (+) symbol to grade a coin's eye appeal."  *Blake*, 898 F. Supp. 2d at 394. Markforged's trade secret Disclosures go an extra mile by giving the specific parts of the Markforged 3D printers that are claimed, the specific materials, and the specific methods that Markforged uses.  Markforged's revised disclosures thus give the Court and Desktop Metal clarity on precisely which portions of Markforged's technology and know-how are trade secrets and which portions are not.

Desktop Metal aims to mischaracterize the Disclosures to its advantage but to no avail.  For example, it argues that the Disclosures make a "far-reaching allegation" that "essentially *all* of its customers and vendors are protected trade secrets that Desktop Metal apparently misappropriated or interfered with," thereby lacking specificity.  (Mem. at 5).  But the trade secrets actually identified relating to customers and vendors are not the entities themselves, but the confidential *lists* of customers and vendors maintained for Markforged's business—a classic protectable trade secret.  *See, e.g.*, *Blake*, 898 F. Supp. 2d at 393 ("A trade secret may consist of any … compilation of information which is used in one's business, and which [provides] an opportunity to obtain an advantage over competitors who do not know or use it.") (quoting *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 260 N.E.2d 723, 729 (Mass. 1970)); *see also N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44–47 (2d Cir. 1999); *CPI Card Grp.–Colo., Inc. v. Lehouck*, 2014 WL 5025356, at *6 (D. Mass. Oct. 8, 2014); 18 U.S.C. § 1839(3) (defining "trade secret"). The Disclosures describe those lists, which were even appended as exhibits to the Supplemental Disclosure.  *See* Ex. B at 12–14.  It defies credulity that Desktop Metal would struggle to understand what documents are described as the relevant lists, when it has the lists themselves.

Desktop Metal's argument that it should not bear the "burden" of reviewing "72 items" in the Disclosures' list of trade secrets to "determine what of those trade secrets it will be accused at trial of having misappropriated" disregards the very purpose of discovery.  (Mem. at 3.)  The Disclosures list each trade secret that Markforged alleges on information and belief to be misappropriated.  Desktop Metal argues that Markforged cannot state a claim because it has "no ability to identify those trade secrets, because it does not know whether any such misappropriation occurred."  (Mem. at 5).  But that is precisely why litigants are allowed to engage in discovery, which will continue to inform both sides' claims and defenses in this case.  At the beginning of a case, a trade secret plaintiff cannot know exactly which trade secrets were misappropriated or exactly how the misappropriation occurred because, of course, the trade secret defendant tries to cover its tracks to prevent the plaintiff from uncovering the misdeeds.[3]  What the claimant can do – and what Markforged had done here – is plead its claims in a plausible, non-speculative fashion as required by *Twombly* and *Iqbal*, and disclose its full list of trade secrets in detail so that the Court and the defendant have notice of the trade secrets that are potentially in play.[4]

Desktop Metal's argument that the Disclosures must be stricken because they make "no attempt to distinguish protectable trade secrets from non-protectable information" (Mem. at 3–4) also rings hollow.  Tellingly, Desktop Metal does not identify a single trade secret in the

---

[3]   Remarkably, while Desktop Metal faults Markforged for purportedly failing to identify every specific misappropriation and use at issue because, as of May 3, it had not had an opportunity to inspect Desktop Metal's printer  (Mem. 5; Dkt. 82 at 10), at deposition Desktop Metal's 30(b)(6) witness admitted that, prior to filing suit, Desktop Metal had not inspected the Metal X printer, either, before it filed this lawsuit in the first place.  *See* Ex. H 243:12–14 ("Q. Desktop Metal had not used a Metal X printer prior to filing this lawsuit?  A. Not that I'm aware of.).

[4]   Further, Desktop Metal's suggestion that dismissal may be based on the number of trade secrets identified in what it calls a "laundry list" of 72 identified in the Disclosures (Mem. at 5) is without merit.  A party can not fairly avoid allegations of misappropriation by virtue of the shear volume of trade secrets that have been misappropriated.

Disclosures that is itself public.  Instead, it relies on mischaracterizations of the trade secrets claimed in the Disclosures.  This case is nothing like *IDX Sys. Corp. v. Epic Sys. Corp.*, where Judge Easterbrook held that a the plaintiffs "mysterious exactly which pieces of information are the trade secrets."  285 F.3d 581, 584 (7th Cir. 2002).  Here, Markforged has listed 72 specific trade secrets ***all*** of which it alleges were protectable and were misappropriated by Markforged.

For example, Desktop Metal takes issue in particular with Trade Secrets 58 and 61, containing information involving "the identity of Markforged's customers" and "Markforged's list of channel resellers."  *See* Ex. B.  Desktop Metal argues (Mem. at 4) that because some individual customers and resellers were listed on Markforged's website, Markforged's lists were publically disclosed.  However, that customers or resellers on a confidential list may be publicly known hardly makes the full list, which itself is the relevant trade secret, non-confidential.  For example, its motion compares trade secret 61, identified as "Markforged's list of channel resellers, including 3 HTI [and others]," Ex. B at 8, to a 2015 article stating that HTI entered a deal with MarkForged. Mem. at 4 n.1.  But that the identity of some of a company's customers is publicly known does not make its customer list known.  If anything, it heightens the importance of retaining confidentiality of the customer list so that competitors do not know the other customers on it.

Worse, Desktop Metal relies on articles dating to 2015, even though it admits on its own website that it began development in 2013—long before the purported disclosures Desktop Metal highlights.  (*See* Counterclaims ¶ 156.)  Markforged can still recover damages for trade secret misappropriation, even if the secrets are publicly disclosed after they are stolen.  *See Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 449, 453 (D. Mass. 2017) (denying defendant's motion for summary judgment where plaintiff asserted misappropriation "during the brief window of time between [defendant's] departure from [plaintiff] in January 2009 and the public disclosure on April 9,

2009").  Desktop Metal's argument goes at most to the quantum of damages, not to the validity of Markforged's claim.

Further, Desktop Metal disputes the confidentiality of  Trade Secret 52, claiming as a trade secret "Markforged's use of 100 watts as the maximum power consumption ("power budget") for all printer components, excluding the heating elements."   Mem. at 5 n.2.   It argues that "Markforged identifies information related to 'power consumption' as a protected trade secret, yet aspects of this 'trade secret' are displayed on its very own website."  (*Id.* at 4–5.)  This argument again mischaracterizes the Disclosures.  Markforged's website, cited by Desktop Metal (*id.* at 5 n.2), states "[t]he printer's power supply is 150 Watts," and that "[a]t idle the printer consumes less than 10 Watts," while "[d]uring use it consumes about 100 Watts."  *Markforged Q&A: Power Consumption* (May 19, 2017) https://support.markforged.com/hc/en-us/articles/207304750-Power-Consumption (last visited May 10, 2018).  Markforged's power-related trade secret, however, is not the overall current draw of the printer as explained on the website, but rather the power budget of the "internal components" of  the printer "***excluding the heating elements***"—information which Markforged never disclosed on its website.  Ex. B (emphasis added).  Indeed, precisely because Markforged kept this information secret, Fulop had to ask Mark directly how many watts the Mark 1 printer consumed "excluding the heating element."  Ex. F (July 24, 2015 email from Ric Fulop).  When Mark inquired as to why Fulop needed this information, Fulop lied, stating he was "[j]ust personally curious…."  *Id.*   As Markforged has learned since filing its counterclaims, Fulop immediately shared this information with Myerberg for use in developing what would become Desktop Metal's competing printer.  *See* Ex. G (July 24, 2015 email from Ric Fulop) ("I spoke to Greg and his robotics consume less that 100W excluding hea[t]ing…."); (*see also* Counterclaims

¶ 163).  Fulop lied to Markforged to obtain this information ***because*** it is not public, and he then tried to cover his tracks.

Ultimately, Desktop Metal's criticism of the specificity of the Disclosures does not pass a red face test, because Desktop Metal itself describes its own intellectual property in even less detail. Desktop Metal rests its claim on descriptions of trade secrets consisting of broad categories of information derived from a single Desktop Metal action items document entitled "Engineer Status and Goals—106912."  *See* Ex. C at 2.  At deposition, Desktop Metal's 30(b)(6) witness expressly conceded that its disclosure of alleged trade secret 1 ("Desktop Metal's research regarding use of microwave technology as a potential sintering process for 3D printing," Ex. C at 2) was not a specific trade secret at all, but a "large kind of section" of types of trade secrets.  *See* Ex. H at 289 ("Q.  So number 1, this is the trade secret, this is as specific as you can be about the trade secret…? A.  That bullet number 1 represents a – a large kind of section of – of trade secrets and IP that we were researching and developing….").  Markforged's Disclosures, by contrast, provide specific details about the techniques and design of its confidential proprietary products and processes, while Desktop Metal's trade secrets contain broad descriptions of information, which Desktop Metal itself has described as "non-limiting."  Ex. C at 2.  Desktop Metal cannot reasonably argue that its trade secrets satisfy this Court's standards, yet Markforged's disclosures do not.

## <u>CONCLUSION</u>

For the foregoing reasons, Markforged hereby respectfully requests that this Court deny Desktop Metal's Motion to Strike the Disclosures of Markforged's Trade Secrets.

Dated: May 25, 2018                         *Respectfully submitted*,


                                            */s/ Harvey J. Wolkoff*
                                            Harvey J. Wolkoff (BBO# 532880)
                                            Patrick D. Curran (BBO# 568701)
                                            Aliki Sofis (BBO# 675777)
                                            Kaitlyn M. O'Connor (BBO# 687527)
                                            QUINN EMANUEL URQUHART & SULLIVAN,
                                            LLP
                                            111 Huntington Avenue, Suite 520
                                            Boston, MA 02199
                                            Tel: (617) 712-7100
                                            harveywolkoff@quinnemanuel.com
                                            patrickcurran@quinnemanuel.com
                                            alikisofis@quinnemanuel.com
                                            kaitoconnor@quinnemanuel.com


                                            Steven Cherny (*pro hac vice*)
                                            Elinor Sutton (p*ro hac vice*)
                                            Jeremy Baldoni (*pro hac vice*)
                                            Brendan Carroll (*pro hac vice*)
                                            QUINN EMANUEL URQUHART & SULLIVAN,
                                            LLP
                                            51 Madison Avenue, 22nd Floor
                                            New York, NY 10010
                                            Tel: (212) 849-7000
                                            stevencherny@quinnemanuel.com
                                            elinorsutton@quinnemanuel.com
                                            jeremybaldoni@quinnemanuel.com
                                            brendancarroll@quinnemanuel.com


                                            *Attorneys for Markforged, Inc.*

                                            */s/ Eric G. J. Kaviar*
                                            Howard J. Susser (BBO# 636183)
                                            hsusser@burnslev.com
                                            Eric G. J. Kaviar (BBO# 670833)
                                            ekaviar@burnslev.com
                                            Laura Carrol (BBO# 076180)
                                            lcarroll@burnslev.com
                                            BURNS & LEVINSON LLP
                                            125 Summer Street, Boston, MA 02110
                                            (617) 345-3000


                                            *Attorneys for Mr. Matiu Parangi*

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon attorneys of record on May 25, 2018.

/s/ *Aliki Sofis*
Aliki Sofis