# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DESKTOP METAL, INC., | ) | |
| | ) | |
| *Plaintiff and Counterclaim Defendant*, | ) | No. 1:18-cv-10524-WGY |
| | ) | |
| v. | ) | |
| | ) | |
| MARKFORGED, INC. and MATIU PARANGI, | ) | |
| | ) | |
| *Defendants and Counterclaim Plaintiff (Markforged, Inc.)* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICARDO FULOP, JONAH MYERBERG, BOSTON IMPACT LLC, and AMY BUNTEL, | ) | |
| | ) | |
| *Third-Party Defendants.* | ) | |
| | ) | |

## DESKTOP METAL, INC.'S CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND OF THE '118 AND '839 PATENTS.................................2

III. LEGAL STANDARDS .....................................................................................3

    A.  Claim Construction ....................................................................................3

    B.  Indefiniteness .............................................................................................4

IV.  CONSTRUCTION OF DISPUTED CLAIM TERMS ....................................4

    A.  Terms 1 and 2: "fabricating an interface layer" and "interface layer" ..................4

        1.  "fabricating an interface layer" does not require a "discrete layer [that] does not overlap with other layers"....................................6

        2.  "fabricating an interface layer" does not require a "non-sintering barrier" ...............................................................9

        3.  Markforged's other definition of "interface layer" is also incorrect..........10

    B.  Term 3: "resists bonding" ........................................................................11

    C.  Terms 4 and 5: "object" and "support structure"....................................13

        1.  A "support structure" is a type of "object" ................................13

        2.  Markforged's proposed construction of "support structure" is ambiguous and incorrect .................................................14

        3.  "the object" in claim 24 of the '118 patent is not indefinite....................15

    D.  Term 6: "structurally independent from"................................................15

    E.  Term 7: "mechanically related to".........................................................17

    F.  Term 8: "sintering" ..................................................................................19

V.   CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)..................................................................................6

*BASF Corp. v Johnson Matthey Inc.*,
875 F.3d 1360 (Fed. Cir. 2017)................................................................................12

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*,
838 F.3d 1224 (Fed. Cir. 2016)..................................................................................4

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)...................................................................................................3

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
520 F.3d 1367 (Fed. Cir. 2008)................................................................................15

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014)...............................................................................................4

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)..................................................................................6

*Oatey Co. v. IPS Corp.*,
514 F.3d 1271 (Fed. Cir. 2008)................................................................10, 16, 17, 18

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003)..................................................................................6

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc).......................................................... *passim*

*Sonix Tech. Co. v. Publications Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017)................................................................................12

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)........................................................................ *passim*

## STATUTES

35 U.S.C. §112................................................................................................................4

# I.      INTRODUCTION

Plaintiff Desktop Metal, Inc. asserts that defendant Markforged, Inc. infringes claims 1-4, 10-14, 17, and 24 of U.S. Patent No. 9,815,118 ("the '118 patent") and claims 1-3, 5, 10, 16-18, 20-21, and 23 of U.S. Patent No. 9,833,839 ("the '839 patent").  The ordinary meaning of the asserted claims is readily understood, and Desktop Metal proposes that the disputed claim terms be given their ordinary meaning.  By contrast, Markforged seeks to change the scope of the claims by construing claim terms at odds with their ordinary meaning.

Markforged seeks to rewrite the claims to add new requirements or substitute more narrow wording, and advocates strained and inconsistent constructions that would only confuse a jury.  For example, Markforged proposes to rewrite the term "sintering" to mean "sintering *and infiltration*."  As another example, in addressing the simple term "object," Markforged argues that a "support structure" is not an "object" and that "the object" is indefinite in another claim. Furthermore, Markforged proposes different definitions of the term "interface layer"—one in the context of the claim term "fabricating an interface layer" and another for the claim term "interface layer" itself.  This is improper, and would only confuse a jury.  In addition, Markforged insists that the word "resists" in "resists bonding" must be replaced with the more stringent term "prevents," contending that otherwise "resists bonding" is indefinite.  Applying Markforged's faulty logic, water-resistant must mean waterproof or else the term "water-resistant" would be incapable of being understood with reasonable certainty.  Not so; "resists bonding," like water-resistant, has a broader meaning that is readily understood.

Desktop Metal respectfully requests that the Court give the disputed claim terms their ordinary meaning, and reject Markforged's attempts to alter the scope of the claims by interpreting claim terms in conflict with their ordinary meaning.

## II.      BACKGROUND OF THE '118 AND '839 PATENTS

The asserted patents "relate to additive manufacturing,[1] and more specifically to techniques for fabricating support structures, breakaway layers, and the like suitable for use with sinterable[2] build materials." '839 patent at 1:30-33.[3]  When the patents were filed, "[s]upport structures [we]re commonly used in additive manufacturing," e.g., to "provid[e] underlying structural support for overhangs or lengthy bridges of otherwise unsupported material." *Id.* at 1:37-41.  A problem existed, however, that when additive manufacturing involved materials requiring "additional processing such as debinding[4] and sintering to form a final part," conventional support techniques would "fail on multiple fronts," e.g., by deforming or shrinking in ways that did not match the part or fusing with the part during sintering. *Id.* at 1:41-48.

The patented inventions address the unmet "need for support techniques, materials and strategies suitable for use with additively manufactured, sinterable objects." *Id.* at 1:48-50.  The inventions meet this need through use of an interface layer between the part and the support structure that facilitates removing the support structure from the part after sintering.  Both patents present in Figure 8 a flow chart illustrating exemplary steps "for forming an interface layer for removable supports," *id.* at 43:31-32, which include "fabricat[ing a] support structure," "form[ing an] interface layer, "fabricat[ing an] object," and "debind[ing]" and "sinter[ing]," *see*

---

[1] "Additive manufacturing is a broad term used to refer to manufacturing processes that build up 3D objects by fabricating layer after layer of material until a desired object is produced." Declaration of Dr. Kenneth Gall ("Gall Decl.") at ¶ 27.

[2] "In general, sintering may include any process of densifying and forming a solid mass of material by heating without liquefaction." '839 patent at 10:61-64.

[3] Because the '118 and '839 patents share a common specification, only citations to the '839 patent are included for brevity; the same disclosure is present in the '118 patent.

[4] "In general, debinding may remove some or all of a binder or binder system that retains a build material containing a metal (or ceramic or other) powder in a net shape that was imparted by the printer." '839 patent at 9:29-32.

'839 patent at FIG. 8; Gall Decl. at ¶ 67 (reproducing same).  The "interface layer can usefully be fabricated between the object and support in order to inhibit bonding between adjacent surfaces of the support structure and the object during sintering."  *Id.* at 43:34-40.

## III.   LEGAL STANDARDS

### A.   Claim Construction

Claim construction is an issue of law for the Court.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 386 (1996).  Claim terms "are generally given their ordinary and customary meaning," which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (internal quotation marks and citation omitted).  Accordingly, "[t]he words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history."  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."  *Id.*

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Phillips*, 415 F.3d at 1314.  The intrinsic sources that inform a claim term's meaning include the claims, specification, and prosecution history.  *See id.* at 1314-17.  Courts may also "rely on extrinsic evidence," but view "extrinsic evidence in general as less reliable than the patent and its prosecution history."  *Id.* at 1317-18.

3

## B.      Indefiniteness

The Supreme Court explained that 35 U.S.C. §112, "require[s] that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty.  The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) (discussing former § 112 para. 2, which is now § 112(b)).  Indefiniteness is an issue of law, and "[a]ny fact critical to a holding on indefiniteness … must be proven by the challenger by clear and convincing evidence."  *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016) (internal quotation marks and citation omitted).

## IV.    CONSTRUCTION OF DISPUTED CLAIM TERMS

### A.      Terms 1 and 2:  "fabricating an interface layer" and "interface layer"

| Terms | Desktop Metal's Construction | Markforged's Construction[5] |
|-------|------------------------------|------------------------------|
| fabricating an interface layer ('839 patent, cl. 1) | Plain and ordinary meaning | fabricating a discrete layer of material between a support structure and an object that provides a non-sintering barrier between the two in subsequent processing, wherein the discrete layer does not overlap with other layers |
| interface layer ('118 patent, cls. 1, 17, 24; '839 patent, cls. 1, 23) | Plain and ordinary meaning | layer engineered to resist the formation of mechanical bonds between objects and supports or objects and objects, by preventing build material from sintering across the interface layer |

The terms "fabricating an interface layer" and "interface layer" do not need to be rewritten because these terms are readily understood by persons of ordinary skill in the art. Markforged agrees that the claim term "fabricating" needs no construction, repeating this term in

---

[5] Desktop Metal relies on Markforged's "[i]dentification and proposed construction of any terms where plain and ordinary meaning is not proposed" on April 30 (Ex. 18), per the scheduling order.  Unless otherwise noted, numbered exhibits are attached to the Gall Decl.

its proposed construction.  "Fabricating" has its plain and ordinary meaning in the claims, which is making, creating, or manufacturing.  *See* Oxford Dictionary of English 624 (2010) (defining "fabricate" as "construct or manufacture") (Ex. 19), Merriam-Webster 255 (2016) (defining "fabricate" as "construct, manufacture") (Ex. 19), American Heritage College Dictionary 497 (2010) (defining "fabricate" as "[t]o make, create") (Ex. 19).

Accordingly, the disputed term is "interface layer."  Consistent with its plain and ordinary meaning, an "interface layer" is simply a layer of material at an interface.  The claims of both patents and their specification support this plain meaning, describing the interface layer as formed between the object that becomes the final part and the support structure and disclosing many possible materials that can serve as the interface layer.  *See, e.g.*, '839 patent, cl. 1; '118 patent, cl. 1; '839 patent at 19:6-9 ("An interface layer may also be fabricated or otherwise formed between the support structure 313 and the object 312 to facilitate separation of the two structures after sintering or other processing."), cls. 24, 25, 27 (interface layers of finishing material, alloying metal, and titanium); 42:15-17 ("[a] wide range of materials and material systems may usefully be employed as the interface layer"); '118 patent, cl. 11 (powdered ceramic interface layer).  Other language in all the independent claims, both asserted and unasserted, specifies what the claimed "interface layer" does—it "resists bonding" of the surface of the object that will become the final part to the surface of the support structure "during sintering."  '839 patent, cl. 1; '118 patent, cls. 1, 24, 26-29.

Markforged improperly proposes one definition of "interface layer" in the context of "fabricating an interface layer"—"a discrete layer of material between a support structure and an object that provides a non-sintering barrier between the two in subsequent processing, wherein the discrete layer does not overlap with other layers"—and a markedly different definition for

"interface layer" itself—"layer engineered to resist the formation of mechanical bonds between objects and supports or objects and objects, by preventing build material from sintering across the interface layer."  Markforged's disparate constructions of the same term are hopelessly confusing, and nothing compels injecting such confusion.  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."). Both of Markforged's constructions are wrong.

Markforged not only improperly attempts to read into the term "interface layer" itself what the claim elsewhere specifies it does—"resists bonding"—but also more problematically adds several other requirements.  *See* Ex. 18 (construing an "interface layer" not only to require a "layer engineered to resist the formation of mechanical bonds" but further imposing a requirement on how this must be done—"by preventing build material from sintering across the interface layer"—and construing "fabricating an interface layer" to impose requirements of "a discrete layer … that provides a non-sintering barrier" and "does not overlap with other layers"). The intrinsic record does not support Markforged's attempt to deviate from the ordinary meaning of interface layer by reading in these additional requirements through its competing constructions.  *See Thorner*, 669 F.3d at 1365; *see also ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012) (refusing to "erroneously read[] limitations into the claims" and affirming the district court's decision to adopt "plain meanings that do not require additional construction") (*citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1363 (Fed. Cir. 2008)).

### 1.   "fabricating an interface layer" does not require a "discrete layer [that] does not overlap with other layers"

Markforged relies on two disclosures for its proposed construction of "fabricating an

interface layer." *See* Ex. 18 at Appx. A (citing '839 patent 40:47-41:8; 44:6-45).  The first

passage (44:6-45) distinguishes "fabricating" an interface layer from "forming" an interface

layer."  The passage explains that, consistent with the difference in the ordinary meaning of the

terms, "fabricating" involves making interface material (e.g., using additive manufacturing

techniques) whereas "forming" is a broader term that includes penetrating existing material:

> Thus, as used herein, references to "fabricating an interface layer" are intended to refer to a step of fabricating a discrete layer of material between a support structure and an object that provides a non-sintering barrier between the two in subsequent processing.  For example, fabricating the interface layer (or the support structure or the object) may include additively manufacturing the interface layer (or the support structure or the object) using at least one of fused filament fabrication, binder jetting, and optical curing of a powder-loaded resin. The phrase "forming an interface layer," as used herein, is intended to refer more broadly to any technique for forming a material system that resists bonding of the support structure to the object through the interface layer during sintering. …

> Numerous examples of both techniques ("forming" and "fabricating") are provided below.  By way of introductory, non-limiting examples, ***fabricating an interface layer may include depositing a layer of ceramic particles with an extruder of a fused filament fabrication system*** between an object and a support structure formed of sinterable, powdered metal in a binder system.  On the other hand, forming an interface layer may include this technique, or other techniques that do not involve the fabrication of a discrete material layer such as inkjetting a colloidal suspension of fine ceramic particles or some other sintering inhibitor into a layer of a support structure (or an object) so that the inkjetted material penetrates into the structure to create a material system on the surface of the structure that resists sintering ….

*Id.* at 44:12-45 (emphasis added).

Markforged relies on the first sentence in the block quote above for its proposed

construction, but there are two problems with Markforged's heavy reliance on this statement.

First, Markforged treats the statement as a definition of "interface layer" rather than an

explanation of how "fabricating" differs from "forming."  Indeed, Markforged seeks to argue to

the jury that even though it uses a technique for "fabricating an interface layer" expressly

disclosed in this passage—"depositing a layer of ceramic particles with an extruder of a fused

filament fabrication system"—its interface layer is not sufficiently "discrete" to have been

fabricated.[6]  Markforged's construction thus constitutes an attempt to confuse, rather than clarify,

the meaning of "fabricating an interface layer" for the jury.

Second, although there is no mention of "overlap" in the statement Markforged seeks to

treat as definitional, Markforged improperly appends a further requirement to its construction

that "the discrete layer does not overlap with other layers."  *See Thorner*, 669 F.3d at 1365 ("To

act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim

term' other than its plain and ordinary meaning.").  Markforged's attempt to forbid overlap is

inconsistent with the distinction between "fabricating" and "forming."  As stated in the passage

above, an example of the distinction is that "fabricating an interface layer" involves "depositing

a layer of ceramic particles" whereas "forming an interface layer" can include inserting an

interface layer via inkjetting "into a layer of a support structure (or an object) so that the

inkjetted material penetrates into the structure to create a material system." *Id.* at 44:31-45.  The

distinction between "fabricating" material by "depositing" it and "forming" material, which may

include penetrating existing material, merely reflects the difference between the terms' ordinary

meanings.  It does not support Markforged's attempt to preclude "overlap," which conflicts with

the express disclosure that "filament fabrication, binder jetting, and optical curing of a powder-

loaded resin" are ways of "fabricating an interface layer."  Gall Decl. at ¶ 101.

The second passage on which Markforged relies likewise does not support its attempt to

forbid overlap.  In discussing the exemplary interface layer of the Figure 7 embodiment, the

---

[6] Markforged's CEO testified: "Q. Does the Markforged Metal X 3D print system use fused
filament fabrication? A. In the context that you would say it's an extrusion printer. So again, if
you were to categorize this general type of printing, it's extrusion-based printing, and a general
category for extrusion-based printing would be fused filament fabrication."  Ex. 28 at 57:4-11.

patent merely discloses that, "while illustrated as a discrete layer, it will be understood that the interface layer 706 may overlap with the support structure 704 and/or the object 702 without departing from the scope of this description." '839 patent at 40:67-41:3.  This statement that the schematic in Figure 7 below should *not* be interpreted to preclude overlap does not support Markforged's attempt to further restrict the meaning of "fabricating an interface layer."



### 2.    "fabricating an interface layer" does not require a "non-sintering barrier"

Markforged also seeks to narrow the "interface layer" to require a "non-sintering barrier," relying on the single sentence quoted and discussed above ('839 patent at 44:12-17), but Markforged ignores the patents' contrary disclosures.  The specification expressly states that "an interface layer *may also or instead be fabricated* to provide a non-sinterable interface or similar release layer or structure between a support structure (or a substrate such as a raft, setter, or print bed) and an object." *Id.* at 8:59-66 (emphasis added).  Accordingly, the patents contemplate an interface layer that need not provide a "non-sinterable interface" or, as Markforged proposes, "a non-sintering barrier."  Furthermore, the patents disclose interface layers made of "sinter-resistant material" and "selective embrittlement material," as opposed to "non-sintering" material.  *See id.* at 37:50-55, 41:62-66.

The patents teach that, where a "non-sintering" "interface layer" is used, it may be preferable for it to contain "gaps."  *See id.* at 43:7-12 ("[W]hile the interface layer 706 is depicted as a uniform layer, it will be appreciated that in some instances …, the use of *non-sintering*, and thus non-shrinking, ceramic particles may cause substantial stresses and

9

deformation.  To mitigate this, the interface layer 706 *may contain gaps* or the like ….")
(emphasis added).[7]  The patents also disclose that some "inter-layer fusion" can occur between
an interface layer and the layer on which it is fabricated, *see* '839 patent at 46:6-19, and one may
"fabricat[e] an interface layer between the object and a support structure" that "*retain[s] a bond*
between the object and the support structure during a first portion of a sintering process," *id.* at
48:56-67 (emphasis added).  Accordingly, Markforged's attempt to limit the "interface layer" to
a "non-sintering barrier," and thus exclude these embodiments, should be rejected.  *See, e.g.*,
*Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We normally do not interpret
claim terms in a way that excludes embodiments disclosed in the specification.").

### 3.      Markforged's other definition of "interface layer" is also incorrect

Markforged's other construction of "interface layer" (which Markforged contends applies
across both patents as opposed to the '839 patent's "fabricating an interface layer" term)—"a
layer engineered to resist the formation of mechanical bonds between objects and supports or
objects and objects, by preventing build material from sintering across the interface layer"—also
should be rejected.  Markforged improperly reads in a particular embodiment.  *See Phillips*, 415
F.3d at 1323 ("although the specification often describes very specific embodiments of the
invention, we have repeatedly warned against confining the claims to those embodiments").

The patents mention "mechanical bonds" only in the following statement, which
addresses a particular embodiment "where infiltrable build material is used":  "It should also be
understood that, *where an infiltrable build material is used*, the corresponding interface layer
should be engineered to resist any infiltration that might result in the formation of a mechanical

---

[7] *See also id.* at 29:53-67 ("the interface material may be deposited in an intermittent pattern
such as an array of non-touching hexagons … to create a corresponding pattern of gaps," which
"may usefully weaken a mechanical coupling between the support structure 420 and the object
416"); *see also id.* at 63:42-63.

bond across the barrier created by the interface layer."[8] '839 patent at 5:58-62 (emphasis added).

Markforged improperly uses this description of an embodiment to limit the "interface layer,"

dropping the reference to infiltration and modifying the statement as follows to generate its

construction:  "~~the corresponding~~ interface layer ~~should be~~ engineered to resist ~~any infiltration~~

~~that might result in the~~ formation of a mechanical bond[s between objects and supports or objects

and objects by preventing build material from sintering] across ~~the barrier created by~~ the

interface layer."  *Id.* at 5:58-62 (modified per Markforged's construction).  Reading in an

embodiment is improper, *see Phillips*, 415 F.3d at 1323, and Markforged's modifying a

description of a particular embodiment to read it into the claims is highly improper.

### B.    Term 3:  "resists bonding"

| Term | Desktop Metal's Construction | Markforged's Construction |
|------|------------------------------|---------------------------|
| resists bonding ('118 patent, cls. 1, 24; '839 patent, cl. 1) | Plain and ordinary meaning | prevents the build material from sintering across the interface layer |

The term "resists bonding" does not need to be rewritten.  The claims reciting this term

are clear on their face—"the interface layer resists bonding of the support structure to the object

during sintering" ('839 patent) and "the interface layer resists bonding of the first surface [of the

first object] to the second surface [of the second object] during sintering" ('118 patent).  *See*

*Phillips*, 415 F.3d at 1314.  Indeed, Markforged effectively concedes that a jury can readily

understand what it means to "resist[] bonding" by including the phrase "resist the formation of

mechanical bonds" as part of its construction of "interface layer."

---

[8] The other disclosures Markforged cites in support of its construction of "interface layer" similarly relate to specific embodiments.  *See, e.g., id.* at 29:39-67 ("In another aspect…"); *id.* at 38:3-18, 36:36-47, 39:40-48, 42:33-39 (discussing the interface layer of the Figure 7 embodiment); *id.* at 40:47-41:8 ("In one aspect…"); *id.* at 43:7-17 ("In another aspect").

Markforged incorrectly insists that the Court must rewrite "resists" as "prevents" or else the claim limitation is indefinite.  "Resists" has a well-understood meaning that is different from "prevents";[9] one may resist arrest without preventing arrest.  The Court should not narrow or change the claimed function "resists bonding" because a relevant skilled artisan [would understand] with reasonable certainty what compositions perform [this] particular function." *BASF Corp. v Johnson Matthey Inc.*, 875 F.3d 1360, 1366 (Fed. Cir. 2017) (reversing the district court's indefiniteness ruling).  In *BASF*, disclosure of "exemplary material compositions" for performing the claimed function of being "effective" to catalyze demonstrated that the claims were definite.  875 F.3d at 1367.  Here, disclosure of exemplary compositions of the interface layer that resist bonding, e.g., "ceramic powder," likewise evidence that this claimed function is definite.[10]  *See* '839 patent at 40:24-31 ("[t]he interface layer 706 may contain a composition that resists bonding," including "[f]or example" "a ceramic powder having a sintering temperature higher than the build material"), 60:39-44 ("the interface layer may be formed of an interface material including a ceramic powder, or any other interface material that resists bonding").

Markforged again improperly seeks to read in descriptions of specific exemplary embodiments.  *See* Ex. 18 at Appx. A-B (citing Col. 39:34-48; 40:47-41:8); '839 patent at 39:40-43 ("*For example*, the second material may be the build material, where the use of the interface layer 706 prevents the build material from sintering across the interface layer") (emphasis

---

[9] *Compare* Ex. 20, Oxford Dictionary of English 1512 (2010) (defining "resist" as "try to prevent by action or argument") *with id.* at 1407 (defining "prevent" as "keep (something) from happening"); *compare* Ex. 21, American Heritage College Dictionary 1183 (2010) (defining "resist" as "[t]o strive to fend off or offset the actions, effects, or force of") *with id.* at 1104 (defining "prevent" as "to keep from happening"); *see also* Gall Decl. at ¶ 117.

[10]  *See also Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (reversing district court's ruling that "visually negligible" was indefinite—"*we have rejected the proposition that claims involving terms of degree are inherently indefinite*") (emphasis added).

added); *id.* at 40:47-64 ("*In one aspect*, the interface layer 706 … form[s] a physically separate

barrier…. *For example*, the interface layer 706 may be formed of a ceramic powder that has a

substantially greater mean particle size than the sinterable powdered material of the object 702,

… , *e.g.*, to prevent mixing or physical contact …. *In another aspect*…th[e] interface layer 706

may generally resist bonding…") (emphasis added); *see also Phillips*, 415 F.3d at 1323.

Moreover, as discussed, the asserted patents allow for some sintering across an interface layer to

have weak mechanical coupling, *see supra* n.7, and contemplate application of force to overcome

such coupling, *see* '839 patent at 48:19-22.

### C.      Terms 4 and 5:  "object" and "support structure"

| Term | Desktop Metal's Construction | Markforged's Construction |
|---|---|---|
| object ('118 patent, cls. 1, 4, 12-14, 24; '839 patent, cls. 1, 16-18, 20, 23) | Plain and ordinary meaning | structure to be processed into a final part |
| support structure ('839 patent, cls. 1, 23) | Plain and ordinary meaning | structure providing support for a portion of an object in certain fabrication processes |

The terms "object" and "support structure" do not need to be construed, as the plain

meanings of these terms are readily understood.  *See Phillips*, 415 F.3d at 1312-14.

### 1.      A "support structure" is a type of "object"

Markforged's proposal to construe "object" as a "structure to be processed into a final

part" excludes a "support structure" from being an "object" and thus conflicts with both the

claims and the specification.  Claim 1 of the '118 patent recites both "a first object" and "a

second object," and only requires "processing of the first object into a final part."  Markforged

would improperly impose the same requirement on the "second object," even though the plain

language of the claim imposes no such requirement.  Just as the Federal Circuit noted that use of

the term "steel baffles" "strongly implies that the term 'baffles' does not inherently mean objects

made of steel," here the claim language requiring only "processing of the first object into a final part" strongly implies that there is no such requirement for the second object.  *See Phillips*, 415 F.3d at 1314.  In other words, the plain language of the claims instructs that it is not a general requirement that objects be processed into final parts.  *See id.*  Furthermore, the specification expressly discloses that "a support" is an example of an "object":

> ***The materials of the <u>first object</u> and the <u>second object</u>, <u>e.g., an object and a</u> <u>support for the object</u>***, or an object and a complementary mechanical part such as a mating gear, may have generally complementary properties***. The first material (of the support) and the second material (of the object)*** may be supplied from a single source of build material, such as an extruder of a fused filament fabrication system or a container of stereolithography resin…

'118 patent at 57:44-55 (emphasis added).

Accordingly, Markforged's proposed construction of "object" must be rejected. Markforged once again cannot point to anywhere the inventors "clearly set forth a definition of" the claim term "object" that disclaims its broad "plain and ordinary meaning," under which a support structure, for example, is an "object."  *See Thorner*, 669 F.3d at 1365 (internal quotation marks omitted).

### 2.     Markforged's proposed construction of "support structure" is ambiguous and incorrect

Markforged's proposed construction of "support structure"—"structure providing support for a portion of an object in certain fabrication processes"—is ambiguous in at least two respects. First, Markforged's proposed construction implies incorrectly that a structure supporting an entire object (rather than only "a portion of an object") may not qualify as a support structure.  A support structure supporting the entire part does not cease to be a support structure, so Markforged's construction is wrong to the extent it seeks to exclude such a structure.  Second, Markforged's use of the words "certain fabrication processes" injects greater uncertainty and appears to be an attempt to exclude some unidentified fabrication processes.  Nothing about the

term "support structure" requires a particular fabrication process, so Markforged's attempt to include "certain fabrication processes," and not others, is improper.  In sum, Markforged's construction is both wrong and unhelpful.

### 3.     "the object" in claim 24 of the '118 patent is not indefinite

Markforged contends that the term "the object" in claim 24 of the '118 patent is indefinite, asserting that it is unclear whether the phrase "to form the object into a final part" refers to the claimed first or second object.  Not so.  The "first object" is clearly "the object" that is processed into a final part because claim 24 specifies that (a) the first object is made of a "first material" and (b) "the first material [is processed] into a final part":

> receiving an article including a *first object from a first material, wherein the first material includes a powdered material and a binder system*, the binder system including one or more binders that resist deformation of a net shape of the *first material during* <u>*processing of the first material into a final part*</u>, … the article further including a second surface of a second object from a second material at a location adjacent to the interface layer and opposing the first surface of the first object … and *processing the article to form the object into a final part* ….

'118 patent, cl. 24 (emphasis added); *see also* Gall Decl. at ¶¶ 123-131 .  Thus, Markforged cannot show by clear and convincing evidence that a skilled person would be unable to reasonably ascertain claim 24's scope.  *See, e.g.*, *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 n.5 (Fed. Cir. 2008) ("[D]espite the absence of explicit antecedent basis, [i]f the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite.'").

### D.     Term 6:  "structurally independent from"

| Term | Desktop Metal's Construction | Markforged's Construction |
|---|---|---|
| structurally independent from ('118 patent, cls. 1, 24) | Plain and ordinary meaning | physically separated from |

The Court should not rewrite the term "structurally independent from," as a person of

ordinary skill would readily understand this term.  Claims 1 and 24 of the '118 patent recite "the second object is structurally independent from and mechanically related to the first object, [and] wherein the interface layer resists bonding of the first surface [of the first object] to the second surface [of the second object] during sintering."  Thus, the claim language is instructive that the "first object" and "second object" are "structurally independent" because the "interface layer" "resists" their "bonding" together "during sintering."  *See Phillips*, 415 F.3d at 1314.

Markforged incorrectly argues that the '118 patent defines "structurally independent from" as "physically separated from," contrary to the specification's teachings.  First, the specification teaches that the interface layer can, *but need not*, physically separate the support structure from the object that will become the final part during sintering.  The specification discloses both an interface layer that does not provide physical separation because its ceramic particles are "sized to infiltrate the sinterable powder in a surface of the support structure" and "[i]n another aspect" "an interface layer physically separating the support structure from the object after debind and into a thermal sintering cycle."  '118 patent at 29:25-59; *see also id.* at 40:47-41:8 (disclosing "one aspect" where "the interface layer … form[s] a physically separate barrier" and "another aspect" where "the interface layer" may be formed "within a surface of the object").  Markforged would improperly exclude the interface layer embodiments that do not physically separate the support structure from the object that will become the final part.  *See Oatey*, 514 F.3d at 1277 ("[W]here claims can reasonably to [sic] interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary.").

Second, Markforged's proposed construction conflicts with the specification's teaching that physical separation need not occur until *after* the claimed sintering step—for example, in a

16

subsequent (and unclaimed) removal step when relatively weaker coupling between the object

and the support may be overcome through application of force:

> As shown in step 816, the method 800 may include sintering the object. …
>
> As shown in step 818, *the method 800 may include removing the support
> structure from the object, e.g., by physically separating the support structure and
> the object along the interface layer*.  Depending upon the structure and materials
> of the interface layer, this may be a simple manual process of picking up the
> object, and potentially rinsing or otherwise cleaning the object to remove any
> powder residue.  In another aspect, this may require the application of substantial
> mechanical force to break the interface layer which, although weaker than the
> object and/or support, may nonetheless have substantial strength.

'118 patent at 48:8-22; *see also id.* at 50:25-40 (similar for Figure 9 embodiment).  Accordingly,

the patents expressly contemplate that the support structure and object are *not* physically

separated at the time of sintering, and Markforged's construction would improperly exclude such

embodiments.  *See, e.g.*, *Oatey*, 514 F.3d at 1276-77; *see also* Gall Decl. at ¶¶ 139-142.

Markforged contends that it can ignore all these embodiments on the basis that claims 1

and 24 of the '118 patent are restricted to the multi-part mechanical assemblies of the Figure 15-

16 embodiments, and therefore all support structure-related embodiments are irrelevant.  *See* Ex.

18 at 14-16, Appx. B.  But the express disclosure that "a support" is an "object" (discussed

above) appears in the description of Figure 15.  Thus, the patents' teachings discussed above of

how supports can be separated from objects are relevant to the proper construction.  Moreover,

because claims 1 and 24 include methods where the second object is a support, Markforged's

contention that these claims are restricted to multi-part mechanical assemblies is incorrect.

Dispensing with Markforged's incorrect premise, there is no basis to ignore the embodiments

Markforged seeks to exclude via its construction.

### E.     Term 7:  "mechanically related to"

| Term | Desktop Metal's Construction | Markforged's Construction |
|---|---|---|

| mechanically related to ('118 patent, cls. 1, 24) | Plain and ordinary meaning | physically interrelated parts that can be used to form a mechanical assembly |

There is no reason to rewrite the term "mechanically related to" in other words because this term is readily understood by persons of ordinary skill in the art, and can be readily understood by the jury.  Through its construction, Markforged again improperly seeks to exclude the second object from being a support structure by requiring "physically interrelated parts that can be used to form a mechanical assembly."  This construction also does not make sense when inserted into the claim:  "the second object is structurally independent from and *physically interrelated parts that can be used to form a mechanical assembly* to the first object."[11]

The '118 patent does not clearly define the term "mechanically related to" to mean what Markforged proposes, as would be required to deviate from the term's ordinary meaning.  *See Thorner*, 669 F.3d at 1365.  The patents teach that "[t]he first and second object may be mechanically or structurally related in a number of different ways," and merely disclose that "*[f]or example*, the first object and second object may form a multi-part mechanical assembly." '118 patent at 57:56-60 (emphasis added).  The patents also teach that the "support structure" can "*provide mechanical support* during processing of the object [] into a final part."  *Id.* at 39:28-31 (emphasis added).  Such a support structure is "mechanically related to" the object it supports, *see* Gall Decl. ¶ 145, and Markforged improperly excludes such mechanical relationships through its construction.  *See, e.g.*, *Oatey*, 514 F.3d at 1276-77.

---

[11] Dependent claim 4 requires that "the first object and the second object form a multi-part assembly," and Markforged improperly seeks to read this requirement into independent claim 1 through multiple proposed constructions including its construction of "mechanically related to." *See Phillips*, 415 F.3d at 1315 ("[A] dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

F.      Term 8: "sintering"

| Term | Desktop Metal's Construction | Markforged's Construction |
|------|------------------------------|----------------------------|
| Sintering ('118 patent, cls. 1, 3, 13, 24; '839 patent, cls. 1, 10, 16) | Plain and ordinary meaning | a sintering and infiltration process in which pores of a partially sintered part are filled, e.g., through contact and capillary action, with some other material to increase hardness, increase tensile strength, or otherwise alter or improve properties of a final part |

The term "sintering" is well-understood by persons skilled in the art, and there is no reason to rewrite it in different words.  As the '839 and '118 patents explain, "sintering may include any process of densifying and forming a solid mass of material by heating without liquefaction."  '839 patent at 9:62-64.  The experts agree that this term was well-understood when the applications for the asserted patents were filed.[12]  *See* Ex. 25 at ¶ 217 ("[s]intering had a well-understood meaning in the art"); Gall Decl. at ¶¶ 54-62.

Markforged nevertheless improperly proposes to transform "sintering" into sintering *plus infiltration* (and infiltration-related details):  "a sintering ***and infiltration*** process in which pores of a partially sintered part are filled, e.g., through contact and capillary action, with some other material to increase hardness, increase tensile strength, or otherwise alter or improve properties of a final part."  Ex. 18, Appx. A-B (emphasis added).  Nothing in the intrinsic record supports redefining "sintering" in this manner.  Even Markforged's expert concedes that "sintering" "would not be understood to include the process of infiltration."  Ex. 25 at ¶ 214.

---

[12] Intrinsic art of record also demonstrates that "sintering" had a well-understood meaning. *See, e.g.*, Exs. 22-24, U.S. Pat. App. Pub. No. 2015/0080495 at ¶ 14 ("Sintering is the process whereby particles bond together typically below the melting point by atomic transport events."), U.S. Pat. No. 5,204,055 at 2:4-7 ("The term 'sintering' refers to the process by which particulates, such as powdered plastics, are caused to adhere into a solid mass by means of external applied energy."), U.S. Pat. No. 5,387,380 at 2:12-15 (same); *see also Phillips*, 415 F.3d at 1317-18 ("prior art cited during the examination of the patent" is "intrinsic evidence").

Rather than clearly redefine "sintering" as "sintering and infiltration," as would be required to justify Markforged's construction, *see Thorner*, 669 F.3d at 1365, the patents explain that "[n]umerous sintering techniques are known in the art," '839 patent at 10:4, and disclose partial sintering with infiltration as one of those techniques, *see id.* at 10:29-31.  Markforged relies on the passage below as support for its construction, but this passage expressly discloses *both* sintering without infiltration and partial sintering with infiltration, and merely instructs that the term "sintering" in the patents encompasses both approaches:

> *In the context of this description,* it will be appreciated that *sintering may usefully include different types of sintering.  For example, sintering may include the application of heat to sinter an object to full density or nearly full density.  In another aspect, sintering may include partial sintering, e.g., for a sintering and infiltration process* in which pores of a partially sintered part are filled, e.g., through contact and capillary action, with some other material such as a low melting point metal to increase hardness, increase tensile strength, or otherwise alter or improve properties of a final part.  Thus, any references herein to sintering should be understood to contemplate sintering and infiltration unless a different meaning is expressly stated or otherwise clear from the context.

*Id.* at 5:41-54 (emphasis added).  Markforged errs in interpreting the phrase "sintering should be understood to contemplate sintering and infiltration" to mean that sintering *is restricted to* sintering and infiltration, rather than that sintering *should be understood to include* sintering and infiltration.  Only the latter meaning is consistent with the entirety of the passage, which expressly states that, "[i]n the context of this description," "sintering may usefully include different types of sintering" including "[f]or example" "application of heat" to densify and object, without infiltration.

## V.     CONCLUSION

Desktop Metal respectfully requests that the Court give the disputed claim terms their ordinary meaning, and reject Markforged's attempts to alter the scope of the claims by interpreting claim terms in conflict with their ordinary meaning and the patent specifications.

Dated:  June 19, 2018

Respectfully submitted,

/s/ *Charles H. Sanders*
Charles H. Sanders, Bar No. 646740
William J. Trach, Bar No. 661401
Christopher Henry, Bar No. 676033
Nathanial J. McPherson, Bar No. 697666
LATHAM & WATKINS LLP
200 Clarendon Street, Floor 27
Boston, MA  02116
T: (617) 948-6000; F: (617) 948-6001
charles.sanders@lw.com
william.trach@lw.com
christopher.henry@lw.com
nathaniel.mcpherson@lw.com

Adam M. Greenfield (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
T: (202) 637-2200; F: (202) 637-2201
adam.greenfield@lw.com

Elizabeth R. Marks (*pro hac vice*)
Matthew Salerno (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022
T: (212) 906-1200; F: (212) 751-4864
betsy.marks@lw.com
matthew.salerno@lw.com

ATTORNEYS FOR PLAINTIFF AND
COUNTERCLAIM DEFENDANT DESKTOP
METAL, INC.

## <u>LOCAL RULE 5.2(b) CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on this 19th day of

June 2018.

*/s/ Charles H Sanders*
Charles H. Sanders
