UNITED STATES DISTRICT COURT
OR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DESKTOP METAL, INC.,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>    v.<br><br>MARKFORGED, INC. AND MATIU PARANGI,<br><br>    Defendants and Counterclaim Plaintiff (Markforged, Inc.),<br><br>    v.<br><br>RICARDO FULOP,<br><br>    Third-Party Defendant. | No. 1:18-cv-10524-WGY |

**MARKFORGED, INC.'S MOTION TO STRIKE THE OPINION TESTIMONY OF CHARLES WHITEHEAD WITH INCORPORATED MEMORANDUM OF LAW**

Desktop Metal's opinion witness Charles Whitehead is nothing more than a lawyer masquerading as an expert offered to instruct the jury as to the law of fiduciary duty and to then provide the jury with his conclusions regarding fact determinations. He is attempting to usurp the role of both jury and judge. Mr. Whitehead's "opinion" is replete with determinations of fact, and interpretations of law, neither of which are appropriate for an expert witness to opine upon. Indeed, his penultimate conclusion is that "Mr. Fulop's actions relating to the Prospects (including pursuing them for himself and Desktop Metal) were appropriate for, and consistent with the norms of behavior of an outside Director of Markforged." (*See* Exhibit A, Report of Charles Whitehead (hereinafter "Report").) Mr. Whitehead's opinions should be struck, and he should not be permitted to testify at trial.

Mr. Whitehead is a professor of business law. He proposes to tell the jury (i) the law of fiduciary duty; and (ii) his conclusions that Ric Fulop did not breach his fiduciary duties under the law. Neither is needed here, and neither is appropriate opinion testimony. As detailed below, it is black letter law that the judge instructs the jury on the applicable law, and the jury makes factual determinations.

## I. Mr. Whitehead is Inappropriately Asserting Conclusions About Facts that are in the Purview of the Jury to Decide.

Mr. Whitehead's opinions should be struck because, at base, they relay improper conclusions about the facts that are for the jury to decide. For example, Mr. Whitehead draws conclusions about (contested) facts related to whether Mr. Fulop acted in breach of his fiduciary duties or otherwise improperly took corporate opportunities from Markforged while he was a Board Director. Mr. Whitehead conveniently concludes—without recourse to expertise or specialized knowledge—that the evidence purportedly supports Desktop Metal's version of the facts: that Mr. Fulop did not breach his fiduciary duties to Markforged. But that is for the jury to decide, not for Mr. Whitehead. For example, he opines that:

- "The record . . . fails to support a finding that Mr. Fulop became aware of any Funding Prospect 'expressly and solely' as a Markforged director. . . . Access to funding opportunities was based, in part, on North Bridge's and Mr. Fulop's reputation in the market" (Exhibit A, Report at 8);

- "As noted above, there is nothing in the record to indicate that Mr. Fulop became aware of any Prospect 'expressly and solely' as a Markforged director" (*id.* at 11).

- "Mr. Fulop was already aware of and interested in 3D metal printing prior to joining Markforged's board and through relationships and activities developed separately from Markforged" (*id.* at 8); and

- "Mr. Fulop offered the prospect of 3D metal printing to Markforged, and Markforged declined to pursue it" (*id.* at 10);

- "[B]efore and after joining the Markforged board, Mr. Fulop looked for investment opportunities in 3D printing, including 3D metal printing" (*id.* at 7).

Mr. Whitehead attempts to usurp the role of the jury by offering his personal opinions on the evidence, as opposed to opinions on issues requiring specialized knowledge. These are all determinations that are within the jury's own ordinary experience and common sense. His opinions therefore should be struck. *See, e.g.*, *Polidore v. McBride*, Nos. 07-433 and 09-81, 2010 WL 3666971, at *6-7 (D.R.I. Sept. 13, 2010) (excluding expert opinions that were "not . . . based on any unique knowledge or expertise"; the alleged expert "merely reviewed the materials provided to him . . . and based his conclusions entirely on his interpretation of the facts and statements contained in those materials"); *Hecht v. Waterville Dev. Corp.,* No. 05-cv-462, 2007 WL 542151, at *2 (D.N.H. Feb.16, 2007) (expert testimony improper where expert merely placed an "expert sheen on matters well within the jury's own ordinary experience and common sense").

## II.     The Report is Replete with Improper Opinions on the Credibility and State of Mind of Key Witnesses.

Mr. Whitehead should not be allowed to offer his "opinion" testimony for the independent reason that his conclusions are predicated on his assessing the credibility of key witnesses. Again, that is for the jury to evaluate. The First Circuit has made clear that "[i]t is the function of the jury alone to evaluate the credibility of a witness." *Hoult v. Hoult*, 57 F.3d 1, 7 (1st Cir. 1995). Despite this, Mr. Whitehead repeatedly comments on the credibility of Mr. Fulop, the CEO of Desktop Metal, and Greg Mark, the CEO of Markforged. For example, in addition to opining repeatedly that "[t]here is nothing in the record to support a finding" that Mr. Fulop did anything wrong while he was a Markforged Director (*see, e.g.*, Report at 6, 7, 8, 9), Mr. Whitehead takes his conclusions a step further and opines that, among other things:

- "[T]he 3D Metal Prospect and the Patent Prospect arose from Mr. Fulop's own relationships and knowledge of the 3D printing industry" (*id.* at 7);
- "Mr. Fulop offered the prospect of 3D metal printing to Markforged, and Markforged declined to pursue it" (*id.* at 10);

3

- Mr. Fulop "introduced Mr. Myerberg to Mr. Mark because he thought Mr. Myerberg would be a valuable addition to any one of North Bridge's portfolio companies" (*id.* at 9);

- "Mr. Fulop met with Rick Chin in an effort to convince him to join Markforged. Mr. Mark did not hire Mr. Chin . . . Mr. Chin [later] became interested in co-founding Desktop Metal" (*id.*)

Mr. Whitehead apparently arrives at these conclusions based upon Desktop Metal's and Mr. Fulop's version of events, while ignoring countervailing testimony and documents that support the contrary position. This is improper—a party may not use an opinion witness to "bolster the credibility of [its] fact witnesses by mirroring their version of events." *U.S. v. Montas*, 41 F.3d 775, 784 n.4 (1st Cir. 1994); *see, e.g.*, *S.E.C. v. Goldsworthy*, No. 06-10012, 2008 WL 2943398, at *4 (D. Mass. Jan. 3, 2008) (excluding expert testimony concerning "what other witnesses' testimony means, or which aspects of such other testimony should be credited by the jury") (citations omitted).

Additionally, Mr. Whitehead improperly opines on the state of mind and intent of Mr. Fulop, Mr. Mark, and Markforged. *See, e.g.*, *Holmes Grp., Inc. v. RPS Products, Inc.*, No. 03-40146, 2010 WL 7867756, at *5 (D. Mass. June 25, 2010) ("An expert witness may not testify as to another person's intent."). For example, Mr. Whitehead opines that:

- "It was due to his interest in 3D metal printing that Mr. Fulop urged Mr. Mark, on many occasions, to direct Markforged into that business, even though Mr. Mark was uninterested" (Report at 7);

- "Mr. Fulop sought to leverage his relationships in the 3D printing and VC communities to benefit Markforged. . . . For Mr. Fulop to be comfortable doing so required Markforged to disclaim any interest or expectancy in any Prospect that was not 'expressly or solely' presented to Mr. Fulop as a director of Markforged" (*id.* at 11);

- "[I]t was never intended—by Markforged or Mr. Fulop—that [Mr. Fulop's experience, connections, and reputation in the 3D printing and investment communities] could not be used to promote other businesses or opportunities in which Mr. Fulop was or would become involved" (*id.*).

For this independent reason, Mr. Whitehead's opinions should be struck, and he should not be permitted to testify at trial.  *See, e.g.*, *Bacchi v. Mass. Mutual Life Ins. Co.*, No. 12-cv-11280, 2016 WL 1170958, at *4 (D. Mass. March 23, 2016) (excluding expert testimony about defendant's intent); *United States ex rel. Dyer v. Raytheon Corp.*, No. 08-10341, 2013 WL 5348571, at *13 (D. Mass. Sept. 23, 2013) (excluding expert testimony about defendant's state of mind).

### III.   Mr. Whitehead Provides Improper Conclusions of Law and Seeks to Improperly Instruct the Jury on Fiduciary Duty Law.

Mr. Whitehead also seeks to improperly instruct the jury on the law.  This is inappropriate, and should not be permitted.  "It is black-letter law that 'it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'"  *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (quoting *United States v. Newman*, 49 F.3d 1, 7 (1st Cir. 1995)).  For example, Mr. Whitehead opines that:

- "Delaware's corporation law permits a corporation (typically, a start-up) to include a provision in its certificate of incorporation that disclaims any interest or expectancy in a class of business prospects.  The purpose of such a disclaimer is to eliminate the potential conflicts an outside director who wears 'multiple hats' might otherwise face."  (Exhibit A, Report at 5.)

Mr. Whitehead then opines on the *meaning* of such a purported disclaimer in Article 11 of Markforged's certificate of incorporation, stating:

- "What Markforged's disclaimer of "Excluded Opportunities" means is that, when a Markforged director wears "multiple hats"—when he learns of a business prospect generally or while wearing an "investor hat" or "other company hat," in addition to his "director's hat"—it is appropriate for the director to pursue the prospect on his own (or for another company) and not for the benefit of Markforged."  (*Id.* at 6.)[1]

---

[1] Article 11 states: "The Corporation renounces, to the fullest extent permitted by law, any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, any Excluded Opportunity. An "Excluded Opportunity" is any matter, transaction or interest that is presented to, or acquired, created or developed by, or which

5

These are improper legal conclusions and legal instructions that should be provided by the judge, and by the judge alone, to the jury—not by a witness law professor. *See, e.g.*, *Nieves*, 133 F.3d at 99-100; *Raytheon*, 2013 WL 5348571, at *13 (improper for expert to opine on "the state of the law, [or] interpretation of statutes or regulations"); *OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Canada*, 804 F. Supp. 2d 77, 85 (D. Mass. 2011).

Mr. Whitehead then improperly opines on the ultimate issue here, concluding that Markforged has no "claims against Desktop Metal based on Mr. Fulop's conduct" because "[a]s noted above, there is nothing in the record to indicate that Mr. Fulop became aware of any Prospect 'expressly and solely' as a Markforged Director. Consequently, as its certificate of incorporation states, Markforged had no interest or expectancy in them." (Exhibit A, Report at 10-11.) This opinion on the ultimate issue before the factfinder is impermissible and must be struck. *See, e.g.*, *Adams v. New England Scaffolding, Inc.*, No. 13-12629, 2015 WL 9412518, at *7 (D. Mass. Dec. 22, 2015) ("[A]n expert witness normally should not be permitted to testify as to an ultimate legal conclusion, such as an opinion that a defendant was 'negligent.'") (citation omitted); *Raytheon*, 2013 WL 5348571, at *13 ("Opinions regarding . . . the ultimate application of the facts to the law fall far outside the purview of expert testimony."); *see also* 4 *Weinstein's Federal Evidence*, § 704.04 (2018) (expert testimony is not helpful "when it supplies the jury with no information other than the witness's view of how the verdict should read").

In sum, it is for the jury, and the jury alone, to decide whether or not Mr. Fulop breached his fiduciary duty owed to Markforged, based on the facts as presented at trial and the law as

---

otherwise comes into the possession of, (i) any director of the Corporation who is not an employee of the Corporation or any of its subsidiaries, or (ii) any holder of Preferred Stock or any partner, member, director, stockholder, employee or agent of any such holder, other than someone who is an employee of the Corporation or any of its subsidiaries (collectively, "Covered Persons"), unless such matter, transaction or interest is presented to, or acquired, created or developed by, or otherwise comes into the possession of, a Covered Person expressly and solely in such Covered Person's capacity as a director of the Corporation." (Report at 6.)

instructed by the Judge. Mr. Whitehead offers nothing beyond this, and he therefore should not be permitted to testify at trial.

## **CONCLUSION**

For the foregoing reasons, Markforged's Motion to Strike Mr. Whitehead's Opinion Testimony should be granted in its entirety.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: September 10, 2018 | /s/ *Harvey J. Wolkoff* <br> Harvey J. Wolkoff (BBO# 532880) <br> William Weinreb (BBO# 557826) <br> Patrick D. Curran (BBO# 568701) <br> Aliki Sofis (BBO# 675777) <br> Kaitlyn M. O'Connor (BBO# 687527) <br> QUINN EMANUEL URQUHART & SULLIVAN, LLP <br> 111 Huntington Avenue, Suite 520 <br> Boston, MA 02199 <br> Tel: (617) 712-7100 <br> harveywolkoff@quinnemanuel.com <br> williamweinreb@quinnemanuel.com <br> patrickcurran@quinnemanuel.com <br> alikisofis@quinnemanuel.com <br> kaitlynoconnor@quinnemanuel.com <br><br> Steven Cherny (*pro hac vice*) <br> Ed DeFranco (*pro hac vice*) <br> James Baker (*pro hac vice*) <br> Elinor Sutton (*pro hac vice*) <br> Brian F. Shaughnessy (*pro hac vice*) <br> Jeremy Baldoni (*pro hac vice*) <br> QUINN EMANUEL URQUHART & SULLIVAN, LLP <br> 51 Madison Avenue, 22nd Floor <br> New York, NY 10010 <br> Tel: (212) 849-7000 <br> stevencherny@quinnemanuel.com <br> eddefranco@quinnemanuel.com <br> jamesbaker@quinnemanuel.com <br> elinorsutton@quinnemanuel.com <br> brianshaugnessy@quinnemanuel.com <br> jeremybaldoni@quinnemanuel.com <br><br> *Attorneys for Defendant and Counterclaim Plaintiff Markforged, Inc.* |

## LOCAL RULE 7.1 CERTIFICATION

I certify that Markforged, Inc. has complied with the provisions of Local Rule 7.1 by conferring with counsel for Desktop Metal on or about September 9, 2018. The parties were unable to agree with respect to the issues raised in the Motion and are thus at an impasse and require the Court's assistance to resolve the dispute.

/s/ *Aliki Sofis*
Aliki Sofis

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon attorneys of record by ECF on September 10, 2018.

/s/ *Aliki Sofis*
Aliki Sofis